**JUDGE MARRERO**  **11 CV  0804**



FEB 04 2011

S.D. OF N.Y.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL MCINTIRE, Individually and On Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>vs.<br><br>CHINA MEDIAEXPRESS HOLDINGS, INC.,<br><br>                Defendant. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff has alleged the following based upon the investigation of plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by China MediaExpress Holdings, Inc. ("China MediaExpress" or the "Company"), as well as regulatory filings and reports, securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, media reports about the Company, and plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.  This is a federal class action on behalf of purchasers of the securities of China MediaExpress between November 8, 2010 and February 3, 2011, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.  The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC") [17 C.F.R. §240.10b-5].

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and Section 27 of the Exchange Act [15 U.S.C. §78aa].

4.  Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b), as many of the acts and practices complained of herein occurred in substantial part in this District.

5.  In connection with the acts alleged in this complaint, defendant, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.  Plaintiff Daniel McIntire, as set forth in the accompanying certification, incorporated by reference herein, purchased the securities of China MediaExpress at artificially inflated prices during the Class Period and has been damaged thereby.

7.  Defendant China MediaExpress provides television advertising network on inter-city express buses in China.

8.  Defendant's fraudulent scheme: (i) deceived the investing public regarding China MediaExpress's business, operations, management and the intrinsic value of China MediaExpress common stock; and (ii) caused plaintiff and other members of the Class to purchase China MediaExpress securities at artificially inflated prices.

## CLASS ACTION ALLEGATIONS

9.  Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the securities of China MediaExpress during the Class Period, inclusive (the "Class") and who were damaged thereby. Excluded from the Class are the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

10. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, China MediaExpress securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by China MediaExpress or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

11. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

12. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

13. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by defendant acts as alleged herein;

(b) whether statements made by defendant to the investing public during the Class Period misrepresented material facts about the business, operations and management of China MediaExpress; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

14. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

15. Defendant China MediaExpress provides television advertising network on inter-city express buses in China.

16. The Class Period commences on November 8, 2010. On that date, China MediaExpress issued a press release announcing its financial results for its third quarter of 2010, the

period ending September 30, 2010. With respect to the Company's results and operations, the press release stated in pertinent part as follows:

> Zheng Cheng, CME's Founder and CEO, commented, "As expected, revenue and net income maintained very strong growth in the third quarter. The growth was primarily attributed to the power from our largest inter-city buses network in China where our advertising time sold, average advertising rates, number of our advertising customers, and a greater proportion of direct sales to agency sales increased substantially compared to last year.
>
> "In addition, embedded advertising continued to generate a significant portion of our revenue as we have packaged and sold it separately to our clients since Q3 2009. The embedded advertising, which is displayed during the broadcasting of the content, has relatively low production cost, generates high margins and accounts for approximately 23% of our revenue for the nine months ended September 30, 2010.
>
> "Furthermore, our year-to-date results reflect the success of our airport express bus business. Since the first launch of this new business line at the beginning of 2010, the advertising packages sold for airport express buses have been at premium prices, because of the demographics of airport express bus travelers, exclusivity for all the buses from the airports and the unique captive environment. As a result, the expansion of this business has generated significant revenue and has produced higher gross margins overall. For the nine months ended September 30, 2010, the revenue generated from airport express buses was approximately $35.1 million, of which approximately $15.0 million was generated in the third quarter. Our network today covers six large and important airports in China: Beijing, Fuzhou, Guangzhou, Qingdao, Changsha and Chongqing."
>
> Mr. Cheng continued, "We continue to grow our bus network through new contracts with bus operators in regions we already serve and by expanding into new regions in this highly fragmented niche market. Since the start of this year, we have grown our network by more than 4,000 express buses and have expanded into five new regions: Zhejiang, Hunan, Jianxi, Henan and Inner Mongolia. We have long-term contracts in place, ranging from three to eight years with 63 bus operators."
>
> Jacky Lam, CME's Chief Financial Officer stated, "As of September 30, 2010, we had approximately $170 million in cash up from $139 million as of June 30, 2010. Cash generated from operating activities for the first nine months of 2010 was $69.0 million (of which $30.8 million was generated in the third quarter), compared to $29.9 million generated in the same period of 2009. Net cash used in investing activities during the current nine month period was $3.6 million. Our cash resources continue to be sufficient to meet both our short-term and long-term liquidity needs, capital expenditure requirements to achieve our expansion plans, including internal growth initiatives as well as potential acquisitions."

17.     Following the issuance of the earnings release, representatives of China MediaExpress held a conference call to discuss the Company's earnings release and operations.

During the call, the representatives made numerous positive statements about the Company's business and operations.

18. On December 9, 2010, China MediaExpress issued a press release announcing that that Starr International Company, Inc. ("Starr International"), through its wholly-owned subsidiary Starr Investments Cayman II, Inc. ("Starr Cayman"), has completed the exercise of 1,545,455 of China MediaExpress common stock purchase warrants, held since January 2010. According to the press release, the Company raised $10 million through the exercise of warrants.

19. On December 16, 2010, China MediaExpress issued a press release announcing that its Board of Directors has approved the implementation of a dividend policy. The press release stated in pertinent part as follows:

> CME's Founder & CEO, Zheng Cheng, commented, "Consistent with our commitment to continuously maximize value to our investors, our Board of Directors agreed that with the Company's exceptional balance sheet and solid free cash flow generation, it is time to recognize the ongoing support of our shareholders. With this payout ratio, we will continue to have the financial flexibility to invest in our high-return, high-growth projects."

20. The statements referenced above in ¶¶16-19 were each materially false and misleading because they misrepresented and overstated the financial condition of the Company.

21. On January 30, 2011, Citron Research issued a report on China MediaExpress entitled "The China Reverse Merger stock that is 'Too Good to be True'". The report raised serious issues with the quality of the Company's earnings reports and operations.

22. In response to the report, on January 31, 2011, the price of China MediaExpress securities declined substantially falling from $20.86 per share to $17.84 per share on extremely heavy trading volume.

23. Then, on February 3, 2011, Muddy Waters Research initiated coverage on China MediaExpress with a strong sell rating on China MediaExpress stock. In its report, Muddy Waters questioned the accuracy of many of the Company's statements and the quality of the Company's earnings.

24. In response to the report, the price of China MediaExpress securities declined substantially falling from $16.61 per share to $11.09 per share on extremely heavy trading volume.

25. The market for China MediaExpress's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and failures to disclose, China MediaExpress's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired China MediaExpress securities relying upon the integrity of the market price of China MediaExpress's securities and market information relating to China MediaExpress, and have been damaged thereby.

26. During the Class Period, Defendant materially misled the investing public, thereby inflating the price of China MediaExpress's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make Defendant's statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

27. At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiff and other members of the Class. As described herein, during the Class Period, Defendant made or caused to be made a series of materially false or misleading statements about China MediaExpress's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of China MediaExpress and its business, prospects and operations, thus causing the Company's common stock to be overvalued and artificially inflated at all relevant times. Defendant's materially false and misleading statements during the Class Period resulted in plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

### Applicability of Presumption of Reliance:
### Fraud on the Market Doctrine

28. At all relevant times, the market for China MediaExpress stock was an efficient market for the following reasons, among others:

(a) China MediaExpress stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, China MediaExpress filed periodic public reports with the SEC and the NASDAQ; and

(c) China MediaExpress regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

29. As a result of the foregoing, the market for China MediaExpress common stock promptly digested current information regarding China MediaExpress from all publicly available sources and reflected such information in China MediaExpress stock price. Under these circumstances, all purchasers of China MediaExpress stock during the Class Period suffered similar injury through their purchase of China MediaExpress stock at artificially inflated prices and a presumption of reliance applies.

### NO SAFE HARBOR

30. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are

- 7 -

liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of China MediaExpress who knew that those statements were false when made.

## COUNT I

### Violation of Section 10(b) of
### the Exchange Act Against and Rule 10b-5
### Promulgated Thereunder Against All Defendants

31. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

32. During the Class Period, Defendant disseminated or approved the materially false and misleading statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

33. Defendant: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's stock during the Class Period.

34. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for China MediaExpress stock. Plaintiff and the Class would not have purchased China MediaExpress stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendant's misleading statements.

had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

35.     As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of China MediaExpress common stock during the Class Period.

WHEREFORE, plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

(b)     Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: February 4, 2011                ROBBINS GELLER RUDMAN
                                       & DOWD LLP
                                       SAMUEL H. RUDMAN

                                       /s/ Samuel H. Rudman
                                       _____
                                       SAMUEL H. RUDMAN

                                       58 South Service Road, Suite 200
                                       Melville, NY 11747
                                       Telephone: 631/367-7100
                                       631/367-1173 (fax)
                                       srudman@rgrdlaw.com

HOLZER HOLZER & FISTEL, LLC
MICHAEL I. FISTEL, JR.
MARSHALL DEES
200 Ashford Center North, Suite 300
Atlanta, Georgia 30338
Telephone: 770/392-0090
770/392-0029 (fax)
mfistel@holzerlaw.com

LAW OFFICE OF JEFFREY A. BERENS, LLC
JEFFREY A. BERENS, ESQ.
8691 East 26th Avenue
Denver, CO 80238-2549
Telephone: 303/378-8332
303/395-0393 (fax)

Attorneys for Plaintiffs

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

The undersigned declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not purchase and/or acquire the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Plaintiff Certification.

4. Plaintiff's transactions in the security that is the subject of this action during the Class Period are as follows:

Purchases:

| Name of Company | Date(s) Purchased | # Shares Purchased | Cost |
|---|---|---|---|
| CCME | 01/05/2011 | 100 | $1664.89 |
| CCME (a) | 02/01/2011 | 39 | $ 672.99 |
| CCME | 02/01/2011 | 106 | $1811.99 |
| CCME (b) | 02/03/2011 | 39 | $ 509.19 |

Sales:

| Name of Company | Date(s) Sold | # Shares Sold | Proceeds |
|---|---|---|---|
| CCME | 01/06/2011 | 100 | $1611.99 |
| CCME (a) | 02/03/2011 | 39 | $ 504.43 |
| CCME | 02/03/2011 | 106 | $1336.18 |
| CCME (b) | 02/03/2011 | 39 | $ 450.20 |

5. During the three (3) years prior to the date of this certification, Plaintiff has not sought to serve or served as a class representative in an action filed under the federal securities laws except for the following (if any):

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this *04* day of *February*, 2011 in *Germantown, Wisconsin*.

                                         City              State

(Signature) X  *Daniel O. McIntire* (signed)