**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DANIEL MCINTIRE, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHINA MEDIAEXPRESS HOLDINGS, INC.,<br><br>Defendants. | Civil Action No. 11-CV-0804-VM |
| WALTER RUBIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHINA MEDIAEXPRESS HOLDINGS, INC., and ZHENG CHENG,<br><br>Defendants. | Civil Action No. 11-cv-0833-PGG |
| GARY MANDEL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff, | |

| | | |
|---|---|---|
| v.<br><br>CHINA MEDIA EXPRESS HOLDINGS, INC., and ZHENG CHENG,<br><br>Defendants. | ) | Civil Action No. 11-cv-0916-PGG |
| TUHIN CHAUDHURI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHINA MEDIAEXPRESS HOLDINGS, INC., and ZHENG CHENG,<br><br>Defendants. | ) | Civil Action No. 11-cv-1985-VM |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF CME INVESTORS GROUP TO CONSOLIDATE RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

**PRELIMINARY STATEMENT**

The CME Investors Group ("CIG" or "Movant") – comprised of Leadership En Action and Da Le and Stacy Decker-Le – hereby moves to consolidate various related securities fraud class actions filed against China MediaExpress Holdings, Inc.[1] ("CME" or the "Company") and Zheng Cheng ("Zheng"), to be appointed Lead Plaintiff in this action pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and for approval of the selection of the law firm of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel for Lead Plaintiff and the Class in this case.

As described in the Certifications and loss chart attached to the Declaration of Kim E. Miller ("Miller Decl.") at Exhibit A and Exhibit C, CIG has suffered losses of $140,730.60 due to purchases of CME securities between May 14, 2010 and March 11, 2011[2], inclusive (the "Class Period"). To the best of its knowledge, CIG has sustained the largest loss of any investor seeking to be appointed as lead plaintiff.

In addition to evidencing the largest financial interest in the outcome of this litigation, CIG's Certifications also demonstrate the intent to serve as lead plaintiff in this litigation, including cognizance of the duties of serving in that role[3]. CIG fully understands the duties and responsibilities to the Class, and is willing and able to oversee the vigorous prosecution of this

---

[1]The related securities fraud actions include the following cases: *Daniel McIntire v. China MediaExpress Holdings, Inc.*, 11-CV-0804-VM (filed on February 4, 2011); *Walter Rubin v. China MediaExpress Holdings, Inc., et al.*, 11-CV-0833-PGG (filed on February 7, 2011); *Gary Mandel v. China MediaExpress Holdings, Inc., et al.*, 11-cv-0916-PGG (filed on February 9, 2011); *Tuhin Chaudhuri v. China MediaExpress Holdings, Inc., et al.*, 11-CV-1895-VM (filed on March 18, 2011).

[2] The class period alleged in the *Chaudhuri* complaint is the most inclusive class period and therefore is the one utilized for purposes of this motion.

[3] The relevant federal securities laws specifically authorize any Class Member seeking to be appointed Lead Plaintiff to either file a complaint or move for appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). A copy of CIG's Certifications of its transactions in CME securities during the class period is attached as Exhibit A to the Miller Declaration that has been filed in support of this motion.

action, and to oversee counsel. As a result, CIG satisfies both the applicable requirements of the PSLRA, as well as Rule 23 of the Federal Rules of Civil Procedure. CIG should thus to be accorded the presumption as the "most adequate plaintiff."

Accordingly, CIG respectfully submits this memorandum of law in support of its motion, pursuant to section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(B), as amended by the PSLRA, for an order: (1) consolidating all related actions concerning the subject matters of these actions pursuant to Fed. R. Civ. P. 42(a); (2) appointing CIG as Lead Plaintiff in this action pursuant to the Exchange Act; and (3) approving CIG's selection of the law firm of KSF as Lead Counsel for the Class.

## PROCEDURAL BACKGROUND

The first lawsuit against Defendants, *Daniel McIntire v. China MediaExpress Holdings, Inc.*, 11-CV-0804-VM, was filed on February 4, 2011 against Defendant China MediaExpress Holdings, Inc. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on February 4, 2011, the first notice that a class action had been initiated against Defendants was published on Business Wire, a widely circulated national business-oriented service, advising members of the proposed class of their right to move the Court to serve as Lead Plaintiff no later than April 5, 2011.

CIG is composed of Class Members (*see* Miller Decl. at Exhibit A) who have timely filed this motion within the 60 day period following publication of the February 4, 2011 notice.

## STATEMENT OF FACTS[4]

Defendant CME is a Delaware Corporation that, through its subsidiary, purports to operate the largest television advertising network on inter-city and airport express buses in China. Defendant Zheng is the founder of CME and has served as Chairman of the Board of

[4] These facts are derived from the allegations contained in the complaint of *McIntire v. China MediaExpress Holdings, Inc.*, 11-CV-0804-VM (filed on February 4, 2011) and the complaint of *Chaudhuri v. China MediaExpress Holdings, Inc.*, 11-CV-1895-VM (filed on March 18, 2011).

Directors and as CME's Chief Executive Officer since its incorporation in 2002. The Company generates revenue by selling advertisements on a network of television displays installed on express buses in various regions in China. CME shares trade on the NASDAQ stock exchange.

During the Class Period, Defendants engaged in a scheme to deceive the market, and a course of conduct that artificially inflated CME's stock price and operated as a fraud or deceit on Class Period purchasers of CME's securities by misrepresenting the Company's financial results. On May 14, 2010, the Company filed a Form 10-Q with the Securities and Exchange Commission ("SEC") that announced gross profits of $26.6 million and net income of $18.1 million for the three months ending March 31, 2010. On August 13, 2010, the Company filed a Form 10-Q with the SEC announcing gross profits of $42.1 million and net income of $28.5 million for the three months ending June 30, 2010. On November 8, 2010, the Company issued a press release announcing net income of $15.5 million for the third quarter 2010.

By improperly characterizing the Company's financial results and misrepresenting its profits, Defendants presented a misleading image of CME's business and future growth prospects. These material misstatements caused and maintained an artificial inflation in CME's stock price throughout the Class Period until the truth about the Company was revealed to investors.

On January 31, 2011, Citron Research published a report questioning CME's financial statements from 2010 and citing discrepancies between the company's Chinese financial statements and the SEC filings. In response to the report, on January 31, 2011, the price of CME shares dropped from $20.86 to $17.84 per share in very heavy trading. On February 3, 2011, Muddy Waters Research also published a report questioning CME's financial statements,

business model, and accounting practices. In response to the news, on February 3, 2011, CME shares fell again, from $16.61 to $11.09 per share on very heavy trading.

The decline in CME's stock price at the end of the Class Period was a direct result of the nature and extent of the Defendants' fraud being revealed to investors and to the market. The timing and magnitude of CME's stock price decline negates any inference that the losses suffered by Plaintiff and other members of the Class were caused by changed market conditions, macroeconomic or industry factors or even Company-specific facts unrelated to Defendant's fraudulent conduct. During the same period in which CME's stock price fell over 46% as a result of Defendants' fraud being revealed, the NASDAQ index was relatively unchanged. The economic loss suffered by CIG and other Members of the Class was a direct result of Defendants' fraudulent scheme to artificially inflate the price of CME securities and the subsequent decline in the price of CME securities when Defendants' prior misrepresentations and fraudulent conduct was revealed to the public.

## ARGUMENT

### I. THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS

Consolidation pursuant to Rule 42(a) is appropriate where, as here, the actions involve common questions of law and fact.[5] Courts have recognized that securities class actions, in particular, are ideally suited for consolidation pursuant to Rule 42(a) because their unification expedites pretrial proceedings, reduces case duplication, avoids contacting of the parties and

[5] Rule 42(a) of the Federal Rules of Civil Procedure allows this Court to order consolidation of separate actions:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all of the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs of delay.

witnesses for inquiries in multiple proceedings, and minimizes the expenditure of time and money by all persons concerned. *See, e.g.*, *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Moreover, the PSLRA calls for consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188 (S.D.N.Y. 2008). Consolidating shareholder class actions streamlines and simplifies pre-trial and discovery proceedings, including motions, class action issues, clerical and administrative duties, and generally reduces the confusion and delay that result from prosecuting related actions separately before two or more judges. *See In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286 (E.D.N.Y. 1998).

The related actions are perfectly suited for consolidation. The class actions contain similar allegations charging the Company and Zheng with making false and misleading statements concerning the financial strength of the Company during the Class Period. The class actions involve common legal issues, common allegations about fraudulent Form 10-Q filings with the SEC, and assert identical claims under Sections 10(b) and 20(a) of the Exchange Act. "While district courts have 'broad discretion' in determining the propriety of consolidation, this Court has recognized that consolidation is particularly appropriate in the context of securities class actions if the complaints are 'based on the same public statements and reports.'" *Glauser v. EVCI Career Colleges Holding Corp.*, No. 05-cv-10240, 2006 WL 1302265, at *3 (S.D.N.Y. May 9, 2006). Accordingly, this Court should consolidate the related actions.

## II. CIG SHOULD BE APPOINTED LEAD PLAINTIFF

### A. The Procedural Requirements of the PSLRA

Section 21D(a)(3)(B) PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the Class informing Class Members of their right to file a motion for appointment as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(A).

Next, according to the PSLRA, within 90 days after publication of the initial notice of pendency of the action, the Court shall appoint as Lead Plaintiff the movant or movants that the Court determines to be the most capable of adequately representing the interests of Class Members. 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining who is the "most adequate plaintiff," the act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that—
>
> (aa) has either filed the complaint or made a motion in response to a notice…
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii).

Only by a showing that a Lead Plaintiff will not fairly and adequately represent the Class or is subject to unique defenses, that will render such plaintiff incapable of adequately representing the Class, will this presumption be overcome. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

## B. CIG is "The Most Adequate Plaintiff"

### 1. *CIG Has Complied With the PLSRA and Should Be Appointed Lead Plaintiff*

CIG seeks to be appointed Lead Plaintiff and has timely filed the instant motion to be appointed Lead Plaintiff within the 60-day time period requirement. On February 4, 2011, counsel for plaintiff Daniel McIntire, caused notice to be published on *Business Wire*, pursuant to 15 U.S.C. §78u-4(a)(3)(A)(i)(I-II), advising class members that any member of the putative class may move the Court to serve as lead plaintiff no later than April 5, 2011. *See* Miller Decl. at Exhibit B. CIG is comprised of Class Members (*see* Miller Decl. at Exhibit A) who have timely filed this motion within the 60 day period following publication of the February 4, 2011 notice. Accordingly, CIG meets the requirement of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa) by timely filing its motion on April 5, 2011.

Moreover, CIG has sustained a substantial loss from its investment in CME securities and has shown its willingness to represent the Class by signing a Certification detailing its CME securities transactions during the Class Period. *See* Miller Decl. Exhibit A. As demonstrated by its Certification, CIG is prepared to consult with counsel on a regular basis, prior to every major litigation event, and direct the course of litigation, with the benefit of counsel's advice. In addition, CIG has selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the Class. The firm biography of proposed Lead Counsel, KSF, is attached as Exhibit D to the Miller Declaration.

*2. CIG Has the Largest Financial Interest*

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as Lead Plaintiff the movant or movants who have the largest financial interest in the relief sought by the action. *See Sofran v. LaBranche & Co., Inc.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004); *see also, In re General Elec. Sec. Litig.,* No. 09 Civ.1951(DC), 2009 WL 2259502, at *4 (S.D.N.Y. July 29, 2009). As

demonstrated herein, CIG, with losses of $140,730.60, has the largest known financial interest in the relief sought by the Class. *See* Miller Decl. Exhibit C.

*3. CIG Satisfies the Requirements of Rule 23*

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two — typicality and adequacy — directly address the personal characteristics of the class representative. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("[t]ypicality and adequacy of representation are the only provisions [of Rule 23] relevant to a determination of lead plaintiff under the PSLRA."). Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See id.*; *See also Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) (citing *In re Party City Sec. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999) ("In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.")). As detailed below, CIG satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as

Lead Plaintiff, as CIG has claims that are typical of those of other Class Members and can adequately serve as Lead Plaintiff.

i. CIG's Claims Are Typical of the Claims of All the Class Members

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiff's claims arise from the same event or course of conduct that gives rise to claims of other Class Members, and when the claims are based on the same legal theory. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). The requirement that the proposed class representatives' claims be typical of the claims of the Class does not mean, however, that the claims must be identical. *See Daniels v. City of N.Y.*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001); *see also Ferrari v. Impath*, No. 03-cv-5667, U.S. Dist. LEXIS 13898, at *18 (S.D.N.Y. July 15, 2004).

In this case, the typicality requirement is met because CIG's claims are typical, non-competing, and non-conflicting with the claims of the other Class Members. CIG, like all other Class Members: (1) purchased CME securities during the Class Period; (2) purchased CME securities at artificially-inflated prices as a result of Defendants' misrepresentations; and (3) suffered damages thereby. Thus, CIG's claims and injuries "arise from the same conduct from which the other class members' claims and injuries arise." *Oxford Health*, 182 F.R.D. at 50. Moreover, CIG is not subject to any unique or special defenses. Thus, CIG meets the typicality requirement of Fed. R. Civ. P. Rule 23 because its claims are the same as the claims of the other Class Members.

ii. CIG Will Adequately Represent the Class

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the Movant to: (1) whether there are any conflicts between the interests of the Movant and the members of the Class; (2) whether the Movant is an adequate representative of the Class; (3) whether the interests of the Movant are clearly aligned with the members of the putative Class; and (4) whether there is evidence of any antagonism between their respective interests. 15 U.S.C. § 78u-4(a)(3)(B).

CIG's interests are clearly aligned with the members of the Class because its claims are identical to the claims of other Class Members. There is no evidence of antagonism between its interests and those of the proposed Class Members. Furthermore, CIG has a significant, compelling interest in prosecuting this action to a successful conclusion based upon the very large financial loss incurred as a result of the wrongful conduct alleged herein. This motivation, combined with CIG's identical interest with the members of the Class, clearly shows that CIG will adequately and vigorously pursue the interests of the Class. In addition, CIG has selected a law firm that is highly experienced in prosecuting securities class actions and complex litigation as Proposed Lead Counsel.

In sum, because of CIG's common interests with the Class Members, its clear motivation and ability to vigorously pursue this action, and its selection of competent counsel, the adequacy requirement of Fed. R. Civ. P. Rule 23(a) is met. Therefore, since CIG meets both the typicality and adequacy requirements of Fed. R. Civ. P. Rule 23(a), and has sustained the largest amount of losses at the hands of the Defendants, CIG is, in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), presumptively the most adequate plaintiff to lead this action.

## III. THE COURT SHOULD APPROVE CIG'S CHOICE OF LEAD COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

CIG has selected KSF to serve as Lead Counsel for the Class. KSF has successfully prosecuted complex securities fraud actions and has successfully prosecuted many other types of complex class actions. *See* Miller Decl. Exhibit D. Furthermore, CIG's counsel has continually invested time and resources in carefully investigating and prosecuting this case. This Court may be assured that in the event this motion is granted, the members of the Class will receive the highest caliber of legal representation.

## **CONCLUSION**

For all of the foregoing reasons, CIG respectfully requests that this Court: (1) consolidate all future related actions, (2) appoint CIG to serve as Lead Plaintiff in this consolidated action; (3) approve CIG's selection of Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

Dated: April 5, 2011

Respectfully submitted,

KAHN SWICK & FOTI, LLC

/s/ Kim E. Miller
Kim E. Miller
500 Fifth Ave., Suite 1810
New York, NY 10110
Telephone: (212) 696-3730
Facsimile: (504) 455-1498

And

Lewis S. Kahn
206 Covington Street
Madisonville, Louisiana 70447

Telephone (504) 455-1400
Facsimile: (504) 455-1498

*Counsel for CIG and Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that this Motion was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on April 6, 2011.

/s/ Kim E. Miller____
Kim E. Miller