## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL MCINTIRE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CHINA MEDIAEXPRESS HOLDINGS, INC., and ZHENG CHENG, <br><br> Defendants. | ) **CASE NO. 1:11-CV-0804** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| WALTER RUBIN, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CHINA MEDIAEXPRESS HOLDINGS, INC., and ZHENG CHENG, <br><br> Defendants. | ) **CASE NO. 1:11-CV-0833** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| GARY MANDEL, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CHINA MEDIAEXPRESS HOLDINGS, INC., and ZHENG CHENG, <br><br> Defendants. | ) **CASE NO. 1:11-CV-0916** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

TUHIN CHAUDHURI, Individually and On Behalf of All Others Similarly Situated,

Plaintiff,

vs.

CHINA MEDIAEXPRESS HOLDINGS, INC., and ZHENG CHENG,

Defendants.

) **CASE NO. 1:11-CV-1895**
)
)
)
)
)
)
)
)
)
)
)

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE CHINA MEDIAEXPRESS INVESTOR GROUP FOR: (I) CONSOLIDATION, (II) APPOINTMENT AS LEAD PLAINTIFF, AND (III) APPROVAL OF ITS SELECTION OF COUNSEL**

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ............................................................................ 1

II.  STATEMENT OF FACTS ................................................................................... 4

III. ARGUMENT ........................................................................................................ 5

   A.   THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS ................... 5

   B.   MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF ........................................ 6

     a.   The Procedural Requirements Pursuant To The PSLRA ............................. 6

     b.   Movant Is "The Most Adequate Plaintiff" ............................................. 8

       i.    Movant Has Submitted a Motion for Its Appointment As Lead Plaintiff ............. 8

       ii.   Movant Has the Largest Financial Interest Sought by the Class ............................ 8

       iii.  Movant Is Otherwise Qualified Under Rule 23 ............................................. 9

         a.   Movant's Claims are Typical of the Claims of the Class ................................. 10

         b.   Movant Fulfills the Adequacy Requirement ....................................... 11

   C.   THE COURT SHOULD APPROVE OF MOVANT'S SELECTION OF LEAD
      COUNSEL AND LIAISON COUNSEL ....................................................... 12

IV.  CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

## Cases

*Central Laborers' Pension Fund v. SIRVA, Inc., et. al.*, No. 04 CV-07644 (N.D. Ill. November 2, 2007)...................................................................................................................... 18

*Goplen v. 51job*, Inc., No. 05-cv-0769, 2005 U.S. Dist. LEXIS 15059, at *8 (S.D.N.Y. July 26, 2005)............................................................................................................................ 13

*In re Bank of America Corp. Securities, Derivative and ERISA Litigation*, No. 09-MD-2058 (S.D.N.Y.) ..................................................................................................................... 19

*In re Cavanaugh*, 306 F.3d 726, 732-733 (9th Cir. Cal. 2002) .................................................. 17

*In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. N.J. 2001) ............................................ 16

*In re Freidman's Sec. Litig.*, 1:03-CV-3475-WSD (N.D. Ga. Feb. 5, 2009) .............................. 19

*In re Goldman Sachs Group, Inc. Derivative Litigation*, Master File No. 10 Civ. 3614-PAC (S.D.N.Y.) ..................................................................................................................... 19

*In re Helen of Troy Limited Securities Litigation*, No. EP-05-CA-431-H (W.D. Tex. June 19, 2008)............................................................................................................................. 18

*In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002).................... 14, 16

*In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litig.*, 4:07 Civ. 9633 (JSR) (S.D.N.Y. Jan. 20, 2009) ............................................................................................. 19

*Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir.) .......................................................... 10

*Klien v. FPL Group, Inc.*, Case No. 02-20170-civ-Gold (S.D. Fla. Nov. 23, 2004) ................... 19

*Lax v. First Merch. Acceptance Corp.*, No. 97-Civ-2715, 1997 WL461036, at *5(N.D. Ill. Aug 11, 1997)...................................................................................................................... 13

*Lee P. Rosky v. Todd S. Farha, et al.*, No. 8:07-cv-1952-VMC-MAP (Consolidated) (M.D.Fla. Filed Nov. 7, 2007) ........................................................................................................... 20

*Newman v. Eagle Building Techs.*, 209 F.R.D. 499, 501-02 (S.D. Fla. 2002) ............................ 11

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 402-04 (S.D.N.Y. 2004) ........................................................................................... 12, 14, 15

*Priest  v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ..................................................... 15

*Primavera, Familienstiftung v. Askin*, 173 F.R.D. 115, 130 (S.D.N.Y. 1997) ............................ 11

*See, e.g., In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005) ....................... 13, 15

## **Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ........................................................................................................... 5
15 U.S.C. § 78u-4(a)(3)(B)(iii) ................................................................................................... 11
15 U.S.C. § 78u-4(a)(3)(B)(v) ....................................................................................................... 7
15 U.S.C. §78u-4(a)(1) ................................................................................................................ 10
15 U.S.C. §78u-4(a)(3)(A) .......................................................................................................... 11
15 U.S.C. §78u-4(a)(3)(A)(i) ...................................................................................................... 10
15 U.S.C. §78u-4(a)(3)(B) .......................................................................................................... 13
15 U.S.C. §78u-4(a)(3)(B)(iii) .................................................................................................... 15
15 U.S.C. §78u-4(a)(3)(B)(v) ...................................................................................................... 16
15 U.S.C. 78u-4(a)(3)(B)(ii) ......................................................................................................... 6
15 U.S.C. 78u-4(a)(3)(B)(iii) ........................................................................................................ 6
Fed. R. Civ. P. 23 ........................................................................................................................... 6
Fed. R. Civ. P. 42(a) ...................................................................................................................... 6

Plaintiff Dr. Tuhin Chaudhuri, and Class members Dr. Jayanta Chaudhuri, Dr. Kenneth Taylor, Richard Morgan, and James Clark (collectively, the "China MediaExpress Investor Group" or "Movant") respectfully submit this memorandum in support of their motion for: (i) consolidation of the above-captioned actions (the "Related Actions"), (ii) appointment of the China MediaExpress Investor Group as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and (iii) for approval of their selection of the law firm of Saxena White P.A. ("Saxena White") to serve as Lead Counsel and The Law Offices of Curtis V. Trinko, LLP ("Trinko") to serve as Liaison Counsel for the Class.

## I.      **PRELIMINARY STATEMENT**

On February 4, 2011, Daniel McIntire commenced a securities class action in the United States District Court for the Southern District of New York (the "*McIntire* Action"), on behalf of all persons who purchased or otherwise acquired China MediaExpress Holdings, Inc. ("China MediaExpress" or the "Company") securities between November 8, 2010 and February 3, 2011, inclusive.  Subsequently, three additional securities class actions were also filed in this Court against Defendants, claiming the same or similar allegations: (i) *Walter Rubin v. China MediaExpress Holdings, Inc., et al.*, Case No. 1:11-CV-0833 (S.D.N.Y., filed on February 7, 2011) (the "*Rubin* Action"); (ii) *Gary Mandel v. China MediaExpress Holdings, Inc., et al.*, Case No. 1:11-CV-0916 (S.D.N.Y., filed on February 9, 2011) (the "*Mandel* Action"); and (iii) *Tuhin Chaudhuri v. China MediaExpress Holdings, Inc.*, *et al.*,  Case No. 1:11-CV-1895 (S.D.N.Y., filed on March 18, 2011) (the "*Chaudhuri* Action").

The *McIntire*, *Rubin*, and *Mandel* Actions each alleged claims on behalf of all persons who purchased or otherwise acquired China MediaExpress securities between November 8, 2010 and February 3, 2011, while the *Chaudhuri* Action lengthened the proposed Class period from May 14, 2010 to March 11, 2011, inclusive (the latter herein referred to as the "Class Period"). All four actions were brought pursuant to §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rule 10b-5 promulgated thereunder.  Defendants named in these actions include China MediaExpress and Zheng Cheng ("Zheng," or the "Individual Defendant"), the founder, Chairman, and Chief Executive Officer of the Company.

Pursuant to the PSLRA, prior to selecting a lead plaintiff the Court must decide whether to consolidate related actions. See 15 U.S.C. 78u-4(a)(3)(B)(ii).  The Related Actions should be consolidated because they each involve substantially similar issues of law and fact.  See Fed. R. Civ. P. 42(a) (consolidation is appropriate where there is a common issue of law or fact).  Each action names either or both China MediaExpress and Zheng as a Defendant, and alleges essentially the same wrongdoing, namely, that China MediaExpress issued materially false and misleading statements during the Class Period, thereby causing the price of its securities to be artificially inflated.

After consolidating related actions, The PSLRA directs the Court to appoint as Lead Plaintiff the movant or group of movants that have demonstrated the "largest financial interest in the litigation" and also meets the typicality and adequacy prongs of Fed. R. Civ. P. 23.  *See* 15 U.S.C. 78u-4(a)(3)(B)(iii).   As demonstrated herein, Movant has sustained losses totaling $819,163.32.

Movant's losses are believed to be the largest among purported class members seeking appointment as Lead Plaintiff.[1]  Movant is unaware of any other class member that has filed an action or an application for appointment as Lead Plaintiff that sustained greater financial losses.[2]  Movant understands the commitments of a Lead Plaintiff and, as demonstrated herein, satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  In addition, Movant has retained competent and experienced counsel to prosecute this securities litigation and seeks the Court's approval of its selection of Counsel.  Accordingly, under the PSLRA Movant is presumptively the most adequate plaintiff and entitled to appointment as Lead Plaintiff for the Class.

Pursuant to the PSLRA, the Lead Plaintiff—subject to Court approval—is entitled to select lead counsel for the class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Here, Movant has selected the law firm of Saxena White to serve as Lead Counsel and Trinko as Liaison Counsel.  Saxena White has extensive experience successfully litigating securities class actions and possesses the resources necessary to vigorously pursue this litigation on behalf of the class.  For the reasons summarized herein and discussed more fully below, Movant's motion should be approved in its entirety.

Here, Movant has complied with each of the PSLRA's requirements for appointment as Lead Plaintiff, and is more than adequate to serve as Lead Plaintiff.  Also, Movant has convened for a conference call, during which it discussed the duties of being a Lead Plaintiff on behalf of the Class, and established a litigation protocol for supervising its proposed Lead Counsel throughout the prosecution of this action.  Movant has also submitted a Joint Declaration In

---

[1] The transactions of Movant in China MediaExpress securities during the Class Period are set forth in the certifications of Dr. Jayanta Chaudhuri, Dr. Tuhin Chaudhuri, Dr. Kenneth Taylor, Richard Morgan, and James Clark, attached as Exhibit B to the Declaration of Christopher S. Jones ("Jones Decl.").
[2] A chart setting forth Movant's losses is attached as Exhibit C to the Jones Decl.

Support of its Motion (the "Joint Declaration") reaffirming its commitment to vigorously prosecute this litigation on behalf of the Class, and providing a detailed description of its litigation protocol. *See* Joint Declaration ¶¶7-14. Under these circumstances, the China MediaExpress Investor Group has developed a substantial evidentiary record demonstrating that it should be appointed as Lead Plaintiff.

## II.   STATEMENT OF FACTS[3]

China MediaExpress is a Delaware corporation, which was actively traded on the NASDAQ, and has principal offices located in Room 2805, Central Plaza, Wanchai, Hong Kong. ¶¶10, 16. Beginning on May 14, 2010, the Company commenced a pattern of filing misleading statements and/or omissions in regards to its operations and accounting practices. *See* ¶¶23-30. These statements were false and misleading because they failed to disclose and misrepresented: (1) that the Company had materially misrepresented the number of buses utilized in its advertising network; (2) that the Company's business relationships had been fabricated and exaggerated; (3) that the Company's material misrepresentations and omissions had caused its financial results to be overstated during the Class Period, and (4) that as a result, the Company's public statements concerning its business, operations, and financial condition were false and misleading at all relevant times. ¶42.

The Company's business, operations, and financial accounting practices and procedures were also questioned by numerous analysts, such as Citron Research, Muddy Waters Research, and SeekingAlpha. For instance, on January 31, 2011, Citron Research published an explosive report on the Company, pointing out numerous inconsistencies and falsehoods in the Company's disclosed business operations and operations. ¶31. On February 3, 2011, Muddy Waters

---

[3] These facts were derived from the allegations contained in the class action captioned *Tuhin Chaudhuri v. China MediaExpress Holdings, Inc., et al.,* 1:11-CV-1895 (S.D.N.Y.,).

Research published a similar report, questioning the Company's business model and accounting practices.  ¶34.  The report published on March 12, 2011 by SeekingAlpha described a surprise investigation of the Company's headquarters in Hong Kong, stating that the corporate headquarters had "nothing going on" and "workers did nothing because their (*sic*) was nothing much to do."  ¶¶37-38.

Consequently, on March 14, 2011, China MediaExpress announced that its independent auditor, Deloitte Touches Tohmatsu ("DTT") had formally resigned its engagement by the Company as of March 11, 2011.  ¶40.  In addition, given that the Company's Chief Financial Officer, Jacky Lam, had also resigned, the Company's 2010 year end results and 10-K filing would be delayed, and it had requested suspension of trading of China MediaExpress stock on the NASDAQ.  *Id.*  Subsequently, China MediaExpress' stock was delisted from the NASDAQ on March 11, 2011. ¶41.

## III.   ARGUMENT

### A.  THE COURT SHOULD CONSOLIDATE THE RELATED ACTIONS

Movant seeks consolidation of the following Related Actions in this Court:

| Case Name | Case No. | Filing Date |
| --- | --- | --- |
| *McIntire v. China MediaExpress Holdings, Inc.* | 1:11-CV-0804 | 02/04/2011 |
| *Rubin v. China MediaExpress Holdings, Inc., et al.* | 1:11-CV-0833 | 02/07/2011 |
| *Mandel v. China MediaExpress Holdings, Inc., et al.* | 1:11-CV-0916 | 02/09/2011 |
| *Chaudhuri v. China MediaExpress Holdings, Inc., et al.* | 1:11-CV-1895 | 03/18/2011 |

The Related Actions involve class action claims on behalf of the purchasers of China MediaExpress securities and assert essentially identical and overlapping class claims. Consolidation is appropriate where there is "a common question of law or fact pending before the Court."  Fed. R. Civ. P. 42(a); *see Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir.). The test is met here and the Related Actions should be consolidated.

The Related Actions present substantially identical factual and legal issues, including: (a) whether the Defendants violated the federal securities laws; (b) whether the Company's public statements during the Class Period omitted and/or misrepresented material facts; (c) whether Defendants participated in and pursued the fraudulent scheme or course of business complained of in the Related Actions; (d) whether Defendants acted willfully, knowingly or recklessly, in omitting and/or misrepresenting material facts; (e) whether the market prices of China MediaExpress securities during the Class Period were artificially inflated due to the alleged material nondisclosures and/or misrepresentations; and (f) whether the members of the proposed class have sustained damages when corrective disclosures removed the inflation caused by the Defendants' fraud, and, if so, what is the appropriate measure of damages.

Class action shareholder suits are ideally suited for consolidation because their unification expedites pretrial proceedings, reduces case duplication, avoids the harassment of parties and witnesses being interrogated in multiple proceedings, and minimizes the expenditure of time and money by all persons concerned. *See Primavera, Familienstiftung v. Askin*, 173 F.R.D. 115, 130 (S.D.N.Y. 1997); *Newman v. Eagle Building Techs.*, 209 F.R.D. 499, 501-02 (S.D. Fla. 2002). Movant respectfully urges the Court to consolidate the Related Actions.

## B. MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

### a. The Procedural Requirements Pursuant To The PSLRA

The PSLRA sets forth a detailed procedure that governs the appointment of a Lead Plaintiff in each private action arising under the Exchange Act that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i). Specifically, the PSLRA provides that, within 20 days after the date on which a class action is filed, the plaintiff or plaintiffs who filed the initial complaint shall cause to be

published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class:

> (I)      of the pendency of the action, the claims asserted therein, and the purported class period; and

> (II)      that not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiffs of the purported class.

15 U.S.C. §78u-4(a)(3)(A)(i). Here, notice was published on February 4, 2011 on *BusinessWire.com*, advising class members of the pendency of the action. *See* Jones Decl., Exhibit A.

Furthermore, the PSLRA directs the Court to consider any motions by plaintiffs or purported class members to serve as Lead Plaintiffs in response to any such notice within 60 days after the date of publication of the notice. Under this section, the court "shall" appoint the "most adequate plaintiff," and is to presume that such plaintiff is the person, or group of persons, which:

> (aa)      has either filed the complaint or made a motion in response to a notice…

> (bb)      in the determination of the court, has the largest financial interest in the relief sought by the class; and

> (cc)      otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Section 21D(a)(3)(B)(iii)(I). *See generally Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co*., 229 F.R.D. 395, 402-04 (S.D.N.Y. 2004) (Sweet, J.).

As discussed below, Movant has complied with the procedural prerequisites of the PSLRA. Moreover, Movant believes that it has the largest financial interest in the litigation, and otherwise meets the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure.

### b.  Movant Is "The Most Adequate Plaintiff"

#### i.   Movant Has Submitted a Motion for Its Appointment As Lead Plaintiff

Under the deadlines established by the PSLRA, any class members interested in moving for the appointment as Lead Plaintiff in this matter must do so within 60 days of the date of publication of the notice of the first filed action, or February 4, 2011, when notice was filed in the *McIntire* Action.  15 U.S.C. §78u-4(a)(3)(A) and (B).  As this motion is filed within the requisite time frame after publication of the notice, Movant's motion is timely.

#### ii.   Movant Has the Largest Financial Interest Sought by the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the court shall presume that the most adequate plaintiff is the "person or group of persons" that represent(s) the largest financial interest in the relief sought by the action and who also meets the requirements of Rule 23.

The PSLRA, however, does not provide a method for determining the relative financial interests of the Lead Plaintiff movants.  Courts are generally divided on how relative financial interest should be determined.  Briefly, some courts have adopted the "FIFO" (First-In-First-Out) methodology.  Under this methodology, first-purchased shares (even if purchased before the class period) are offset against first-class purchased sales.  *See, e.g., Goplen v. 51job*, Inc., No. 05-cv-0769, 2005 U.S. Dist. LEXIS 15059, at *8 (S.D.N.Y. July 26, 2005) (Haight, J.).  Other courts have adopted the "LIFO" methodology.  Under this methodology, last-purchased sales are offset against first-class period sales; any remaining shares sold during the class period are generally offset against shares held at the beginning of the class period.

During the Class Period, Movant purchased 255,122 shares of China MediaExpress common stock at prices artificially inflated by the materially false and misleading statements issued by Defendants.  *See* Jones Decl., Exhibit C.  In addition, Movant incurred a substantial

loss of approximately $819,163.32 on its transactions in China MediaExpress stock when corrective disclosures removed the inflation caused by the Defendants' fraud. *Id*. In this case, the LIFO and FIFO analysis yields the same financial interest: $819,163.32. *See* Jones Decl., Exhibit C.

In addition to the FIFO/LIFO analysis, courts generally analyze four factors—referred to as the "*Lax* Factors"[4]—to determine financial interest. The *Lax* Factors include: (i) the number of gross shares purchased during the class period; (ii) the number of net shares purchased during the class period; (iii) the total net funds expended during the class period; and (iv) the approximate loss suffered. *See, e.g., In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100 (S.D.N.Y. 2005). In light of each of these factors, Movant's financial interest is as follows:

| Total Shares Purchased During Class Period[5] | Net Shares Purchased During Class Period | Net Funds Expended During Class Period | Approximate Loss |
|---|---|---|---|
| 255,122 | 65,100 | $2,835,535 | $819,163 |

As demonstrated herein, Movant believes that it has the largest financial interest in this case.

### iii. Movant Is Otherwise Qualified Under Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to be the presumptively most adequate plaintiff. 15 U.S.C. §78u-4(a)(3)(B). To this end, Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the

---

[4] *See Lax v. First Merch. Acceptance Corp*., No. 97-Civ-2715, 1997 WL461036, at *5(N.D. Ill. Aug 11, 1997).
[5] Movant Richard Morgan's options contracts have been converted to equivalent shares for purposes of the *Lax* Factor calculation. Each options contract represents 100 shares of the Company's common stock.

claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two—typicality and adequacy—are relevant in the Lead Plaintiff analysis.  Consequently, in deciding the motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification.  *See Pirelli Armstrong Tire Corp*., 229 F.R.D. at 412.  As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

### a.   Movant's Claims are Typical of the Claims of the Class

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  "Typicality is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise."  *In re Initial Public Offering Sec. Litig*., 214 F.R.D. 117, 121 (S.D.N.Y. 2002).  Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted that determines whether the class representatives are typical.  *See Priest  v. Zayre Corp*., 118 F.R.D. 552, 555 (D. Mass. 1988); *See, e.g., In re eSpeed, Inc. Sec. Litig*., 232 F.R.D. at 102 (finding a Lead Plaintiff movant's claim to by typical where "[m]embers of the class claim to have been injured by a fraudulent inflation of eSpeed's stock price" and the movant "makes the same claim.").  However, the requirement that the proposed class representative's claims be typical of the claims does not mean that the claims be identical. *See Pirelli Armstrong Tire Corp*., 229 F.R.D. at 412.

Movant seeks to represent a class of purchasers of China MediaExpress common stock that have identical, non-competing and non-conflicting interests.  The China MediaExpress Investor Group satisfies the typicality requirement because, just like all class members, it: (1) purchased or acquired China MediaExpress common stock during the Class Period; (2) at prices artificially inflated by the Company's materially false and misleading statements and/or omissions; and (3) suffered damages when corrective disclosures removed the inflation caused by the Defendants' fraud.  Thus, Movant's claims are typical of those of other class members since its claims arise out of the same course of events.

### b.  Movant Fulfills the Adequacy Requirement

Under Rule 23(a)(4), the representative parties must "fairly and adequately protect the interests of the class."  The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to: (1) whether there are any conflicts between the interests of the movant and the members of the Class; (2) whether the movant is an adequate representative of the Class; (3) whether the interests of the movant are clearly aligned with the members of the putative Class; and (4) whether there is evidence of any antagonism between their respective interests.  *See* 15 U.S.C. §78u-4(a)(3)(B); *see also In re Initial Public Offering Sec. Litig*., 214 F.R.D. at 121.

Here, Movant will more than adequately represent the interests of the Class.  First, Movant's interests are clearly aligned with the interests of the members of the proposed class and there is no antagonism or conflict whatsoever between its respective interests and the interests of the Class members.  Second, Movant shares common questions of law and fact with the members of the Class and its claims are typical of the other class members.  As evidenced by the injury suffered by Movant, who collectively acquired 255,122 shares of China MediaExpress common stock at prices artificially inflated by the Company's materially false and misleading

statements, Movant's interests are clearly aligned with the interests of the other members of the Class.

Furthermore, Movant has already taken significant steps demonstrating that its willingness to protect the interests of the Class: (a) Movant has executed sworn certifications detailing its Class Period transactions (*See* Jones Decl., Exhibit B); (b) Movant has expressed its willingness to serve as Lead Plaintiff in this action (*See id*.); (c) Movant timely moved the Court to be appointed as Lead Plaintiff; and (d) Movant has retained competent and experienced counsel who, as shown below, will be able to conduct this complex litigation in a professional manner in order to secure the best result for the class.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. N.J. 2001).   Movant has also already convened in a conference call, and developed a litigation protocol to govern the efficient prosecution and supervision of the action. *See* Joint Declaration, ¶¶7-14.

Thus, the China MediaExpress Investor Group, in addition to having the largest financial interest, also satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure.  Therefore, Movant satisfies all elements of the Exchange Act's prerequisites for appointment as Lead Plaintiff in this action pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii).

## C.  THE COURT SHOULD APPROVE OF MOVANT'S SELECTION OF LEAD COUNSEL AND LIAISON COUNSEL

Pursuant to the PSLRA, the Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class.  15 U.S.C. §78u-4(a)(3)(B)(v).  Moreover, the Court should not disturb Lead Plaintiff's choice of counsel unless "necessary to protect the interests of the plaintiff class."  *See* Statement of Managers—The "Private Securities Litigation Reform Act of 1995," 141 Cong. Rec. H14691-08, at H13700 (daily ed. Nov. 28, 1995); *see also In re Cavanaugh*, 306 F.3d 726, 732-733 (9th Cir. Cal. 2002) (The court should honor the lead

plaintiff's selection of counsel except in extreme circumstances, where the selection of counsel appears "irrational" or is otherwise clearly against the interests of the class members).

In that regard, Movant has selected the law firm of Saxena White to serve as Lead Counsel to pursue this litigation on its behalf and on behalf of the Class, and has selected Trinko to serve as Liaison Counsel.  As mentioned above, Saxena White possesses extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors.  As demonstrated in its firm resume, Saxena White has been appointed as lead or co-lead counsel in landmark, precedent-setting class actions.  *See* Jones Decl., Exhibit D.  Accordingly, the Court may be assured that, in the event the instant motion is granted, the members of the Class will receive the highest caliber legal representation available.

Saxena White is a well-established, nationwide firm with an extensive and impressive track record of prosecuting complex lawsuits, including securities class actions, shareholder derivative cases and merger & acquisition litigation.  With offices in Florida, Massachusetts, and Montana, Saxena White is well-positioned to handle complex shareholder litigation across the country.  In litigating securities class actions, shareholder derivative actions, breach of fiduciary duty class actions, merger & acquisition challenges and consumer class actions, Saxena White has repeatedly demonstrated an ability to provide plaintiffs with superior representation as Lead Counsel.  The firm's considerable efforts have led to groundbreaking settlements and judgments resulting in a collective recovery in the hundreds of millions of dollars.  In addition, Saxena White has been involved in groundbreaking litigations resulting in significant monetary benefits for shareholders totaling hundreds of millions of dollars.  Courts throughout the country have recognized that Saxena White has the experience and resources to successfully and efficiently prosecute complex class and derivative actions as Lead and Co-Lead Counsel.

13

For instance, acting as sole Class Counsel in a securities fraud action against SIRVA, Inc., Saxena White gained final approval from the Northern District of Illinois of a $53.3 million settlement for shareholders.  *See Central Laborers' Pension Fund v. SIRVA, Inc., et. al.*, No. 04 CV-07644 (N.D. Ill. November 2, 2007).   In addition to the monetary component of the settlement, SIRVA made significant reforms to its internal controls policies, including discarding the SIRVA Board of Directors plurality standard for director elections, and strengthening requirements regarding director attendance at shareholder meetings.   The development and implementation of these reforms (which the company recognized was a main result of the litigation) was truly a testament to the negotiating and litigation acumen that Saxena White demonstrated during the course of this complex action.

The Western District of Texas, El Paso Division, granted final approval of a $4,500,000 securities fraud class action settlement in which Saxena White served as sole Class Counsel.  *See In re Helen of Troy Limited Securities Litigation*, No. EP-05-CA-431-H (W.D. Tex. June 19, 2008).  Further, the Honorable William S. Duffey, Jr. of the Northern District of Georgia, also noted that Saxena White's lawyers act with "dignity and respect," produce "well-done pleadings," are "thorough [and] insightful," and "fight[] as hard but as honestly and professionally as they can for the interest of their clients."  *In re Freidman's Sec. Litig.*, 1:03-CV-3475-WSD (N.D. Ga. Feb. 5, 2009).

Similarly, the Honorable Judge Jed S. Rakoff, a noted Judge of the Southern District of New York, recognized that Saxena White had performed "excellent work" in this "important case" on behalf of Merrill Lynch and its shareholders worldwide.  *In re Merrill Lynch & Co., Inc. Securities, Derivative and ERISA Litig.*, 4:07 Civ. 9633 (JSR) (S.D.N.Y. Jan. 20, 2009).  In approving the settlement in *Klien v. FPL Group, Inc.*, United States District Court Judge Alan S.

Gold recognized that the action presented "complex and novel legal issues…[where] the likelihood of success for Plaintiffs at the outset of the case was very low."   In approving the exceptional settlement that was eventually reached after years of hard fought litigation, Judge Gold stated:

> Plaintiffs' counsel, a highly experienced group of lawyers with national reputations in large securities class actions, recovered an unprecedented amount of money for shareholders as a result of this settlement - $22.25 million in addition to sweeping corporate governance changes which FPL Group has agreed to implement.[6]

Saxena White is also currently serving as Lead and Co-Lead Counsel in two of the most significant derivative cases in the nation, *In re Goldman Sachs Group, Inc. Derivative Litigation*, Master File No. 10 Civ. 3614-PAC (S.D.N.Y.), and *In re Bank of America Corp. Securities, Derivative and ERISA Litigation*, No. 09-MD-2058 (S.D.N.Y.), respectively.   In the Goldman Sachs action, Judge Crotty appointed Saxena White as Lead Counsel, and specifically mentioned that "***Saxena White is well qualified to play its role as lead counsel.  The pleadings it filed in this matter, including the motion papers, are competent and professional.***"   Further, in the Bank of America derivative litigation, Saxena White was appointed as Co-Lead Counsel from amongst numerous firms, with Judge Chin expressly noting that ***Saxena White is "experienced and qualified to serve as lead counsel."***   Saxena White is also serving as Co-Lead Counsel in another noteworthy derivative action*, Lee P. Rosky v. Todd S. Farha, et al.*, No. 8:07-cv-1952-VMC-MAP (Consolidated) (M.D.Fla. Filed Nov. 7, 2007), involving claims against WellCare Health Care Plans, Inc.

In addition, Trinko has extensive securities litigation experience, including serving as Lead Counsel and Liaison Counsel in numerous complex class actions.  Trinko is an AV-rated

---

[6] *Klien v. FPL Group, Inc.*, Case No. 02-20170-civ-Gold (S.D. Fla. Nov. 23, 2004) (Order and Final Judgment of Dismissal at 9).

law firm which specializes in complex commercial litigation, and particularly, litigation involving violations of federal and state securities and corporate laws, as well as claims involving officers' and directors' liability, corporate governance practices and procedures, and claims of excessive executive and advisory compensation. The firm has directly participated in the recovery of substantial settlements on behalf of defrauded shareholders injured by illegal corporate activities, or shareholders denied the appropriate valuation for their equity ownership in the wake of successful and/or attempted corporate buy-outs, takeovers and other transactions involving corporate restructurings, asset sales and/or mergers and acquisitions. Moreover, the firm's efforts have assisted in restoring many millions of dollars to corporate treasuries depleted by the illegal practices and/or breaches of fiduciary duties by their corporate officers and directors. The firm has also represented both individual and corporate defendants in numerous securities class actions, investor claim-related litigation, shareholder derivative litigation, and other commercial litigation. In addition, the Trinko Firm serves as liaison counsel for numerous out-of-town law firms prosecuting a variety of investor-related, anti-trust, or complex consumer-related litigation pending in the New York State and Federal courts. A firm resume detailing the Trinko Firm's experience in this field is attached in Exhibit D.

As there is nothing to suggest that Movant or its counsel will not fairly and adequately represent the Class, or that Movant is subject to unique defenses—which is the *only* evidence that can rebut the presumption of inadequacy under the PSLRA—this Court should appoint Movant as Lead Plaintiff and approve its selection of Saxena White as Lead Counsel and Trinko as Liaison Counsel for the Class.

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, Movant respectfully request that this Court: (1) consolidate the Related Actions, (2) appoint the China MediaExpress Investor Group as Lead Plaintiff pursuant to §21D(a)(3)(B); and (3) approve of Movant's selection of Saxena White as Lead Counsel and Trinko as Liaison Counsel.

Dated: April 5, 2011

By: */s/ Curtis V. Trinko*
**LAW OFFICES OF CURTIS V. TRINKO, LLP**
Curtis V. Trinko (CT-1838)
16 West 46th Street, 7th Floor
New York, New York 10036
Tel: 212 490-9550
Fax: 212 986-0158
Email: Ctrinko@trinko.com

*Proposed Liaison Counsel*

**SAXENA WHITE P.A.**
Christopher S. Jones (CJ-4131)
Joseph E. White III
Maya Saxena
2424 N. Federal Highway
Suite 257
Boca Raton, FL 33431
Tel: 561 394-3399
Fax: 561 394-3082

*Proposed Lead Counsel*

17

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 5th day of April, 2011, I presented the foregoing to the Clerk of the Court for filing and uploading to the CM/ECF system.

*/s/Curtis V. Trinko*
Curtis V. Trinko