UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL MCINTIRE, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. 11-cv-0804 (VM) |
| Plaintiff, | |
| v. | |
| CHINA MEDIAEXPRESS HOLDINGS, INC., | |
| Defendant. | |
| WALTER RUBIN, Individually and On Behalf of All Others Similarly Situated, | Civil Action No.: 11-cv-0833 (VM) |
| Plaintiff, | |
| vs. | |
| CHINA MEDIAEXPRESS HOLDINGS, INC. and ZHENG CHENG, | |
| Defendants. | |
| GARY MANDEL, Individually and On Behalf of All Others Similarly Situated, | Civil Action No.: 11-cv-0916 (VM) |
| Plaintiff, | |
| vs. | |
| CHINA MEDIAEXPRESS HOLDINGS, INC, and ZHENG CHENG, | |
| Defendants. | |
| TUHIN CHAUDHURI, Individually and On Behalf of All Others Similarly Situated, | Civil Action No.: 11-cv-1895 (VM) |
| Plaintiff, | |
| vs. | |
| CHINA MEDIAEXPRESS HOLDINGS, INC., and ZHENG CHENG, | |
| Defendants. | |

## MEMORANDUM OF LAW OF DEFENDANTS GREEN AND BIRD
## IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 4

ARGUMENT ......................................................................................................................... 8

POINT I   THE COMPLAINT FAILS TO SATISFY
THE PLEADING REQUIREMENTS FOR
A SECTION 10(B) CLAIM AGAINST DEFENDANTS ...................................... 8

    A.   Plaintiffs Must Plead A Section 10(b) Claim With Particularity...................... 8

    B.   Plaintiffs Do Not Plead With Particularity Any
Material Misstatement Or Omission By Defendants........................................ 9

        1.   The Proxy Statements Relating To Hong Kong Mandefu's
Business Operations And Financial Results Are Not
Properly Attributed To Defendants Green And Bird................................ 10

        2.   Plaintiffs Fail To Allege Any Specific Misstatements Made By Bird...... 10

        3.   Plaintiffs Fail To Allege Any Specific Facts
To Demonstrate That Any Representation As To
Hong Kong Mandefu's Business Operations And
Financial Results Was False At The Time It Was Made .......................... 11

        4.   Plaintiffs Fail Even To Allege Any Specific Facts To
Demonstrate That Hong Kong Mandefu's Financial Results,
Advertising Network Or Bus Inventory Were Materially Misstated........ 12

    C.   Plaintiffs Fail To Plead Facts Raising A Strong
Inference That Defendants Acted With Scienter ............................................. 13

        1.   Plaintiffs Fail To Allege Adequately
Defendants' Motive And Opportunity To Commit Fraud ........................ 14

        2.   Plaintiffs Fail To Allege Adequately Defendants'
Conscious Misbehavior Or Reckless Disregard For The Truth................ 16

        3.   Plaintiffs Fail To Allege Scienter Separately As To Each Defendant...... 18

POINT II   THE COURT SHOULD NOT GRANT PLAINTIFFS LEAVE TO AMEND
SINCE ANY AMENDMENT WOULD BE FUTILE ........................................... 19

CONCLUSION..................................................................................................................... 19

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ............................................................16

*Alki Partners, L.P. v. Vatas Holding GmbH,* 769 F. Supp. 2d 478 (S.D.N.Y. 2011) ..................19

*Anwar v. Fairfield Greenwich, Ltd.*, 745 F. Supp. 2d 360 (S.D.N.Y. 2010)..................................17

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. (2009)...........................................................................4

*ATSI Commcns Inc. v. Shaar Fund Ltd.*, 493 F.3d 87 (2d Cir. 2007)
    *aff'd and vacated in part*, 579 F.3d 143 (2d Cir. 2009) ................................................8, 13

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009) ..........................................................................................9, 13

*Fort Worth Employers Ret. Fund v. Biovail Corp.*,
    615 F. Supp. 2d 218 (S.D.N.Y. 2009)..................................................................................13

*Griffin v. McNiff*, 744 F. Supp. 1237 (S.D.N.Y. 1990), *aff'd*, 996 F.2d 303 (2d Cir. 1993) ........18

*Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360 (S.D.N.Y. 2001), *aff'd*, 50 Fed. Appx. 464 (2d
    Cir. 2002) ..............................................................................................................................16

*In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005) ........................................14, 18

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
    381 F. Supp. 2d 192 (S.D.N.Y. 2004) ..................................................................................18

*In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005) ......................................................18

*In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549 (S.D.N.Y 2004................................16

*In re IAC/InterActivecorp. Sec. Litig.*, 478 F. Supp. 2d 574 (S.D.N.Y. 2007) ................................4

*In re JPMorgan Chase Sec. Litig.*, 363 F. Supp. 2d 595 (S.D.N.Y. 2005) ...................................16

*In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006) ......................17

*In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005) ..................................................9

*In re PXRE Group, Ltd. Sec. Litig.*, 600 F. Supp. 2d 510 (S.D.N.Y. 2009), *aff'd sub nom.*,
    *Condra v. PXRE Group Ltd.*, 357 Fed. Appx. 393 (2d Cir. 2009) ....................................18

*In re Sierra Wireless, Inc. Sec. Litig.,* 482 F. Supp. 2d 365 (S.D.N.Y. 2007) ..............................11

*Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296 (2011) .........................11

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ...............................................................................9

*Limited, Inc. v. McCrory Corp.*, 683 F. Supp. 387 (S.D.N.Y. 1988) ...................................... 17-18

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000).........................................................................9, 12

*Oneida Indian Nation v. City of Sherrill*, 337 F.3d 139 (2d Cir. 2003), *rev'd on other grounds,*
      544 U.S. 197 (2005) .........................................................................................................19

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994) ...................................................13

*South Cherry St., LLC v. Hennessee Group LLC*, 573 F.3d 98 (2d Cir. 2009) ...........................17

*Starr v. Sony BMG Music Entmt*, 592 F.3d 314 (2d Cir. 2010),
      *cert denied*, 131 S. Ct. 901 (2011) ...................................................................................8

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148 (2008) ................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007)* ..................................13, 14, 15

*Trinity Bui v. Industrial Enters. of Am., Inc.*, 594 F. Supp. 2d 364 (S.D.N.Y. 2009) ..................17

### FEDERAL STATUTES

15 U.S.C. § 78 u-4 ......................................................................................................................9, 13

Fed. R. Civ. P. 9..............................................................................................................................8

Fed. R. Civ. P. 12............................................................................................................................4

## PRELIMINARY STATEMENT

Defendants Theodore Green ("Green") and Malcolm Bird ("Bird" and collectively with Green, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Amended and Consolidated Complaint[1] pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 ("PSLRA").

This is a putative class action brought on behalf of a class of Plaintiffs consisting essentially of all those persons who allegedly suffered losses from their purchase of the common stock (or options to purchase or sell the common stock) of China MediaExpress Holdings, Inc. ("CCME") between October 5, 2009 and March 11, 2011. Defendant CCME is a publicly traded company operating exclusively in China, whose principal business was and is the sale of advertisements on television displays installed on buses across China. CCME was formed in October 2009 through the reverse merger of the China business entity into a Delaware public investment vehicle, TM Entertainment and Media, Inc. ("TM"). Defendants Green and Bird were directors and officers of TM prior to the reverse merger. Green and Bird are now charged with violation of Section 10(b) and Rule 10b-5 as part of an alleged fraudulent CCME scheme.

Of course, Green and Bird were not even named as defendants in the initial complaint filed in this action even though all of the facts now set forth against them in the Complaint were publicly available and well known. Even now as Plaintiffs seek to cast a wider net, the facts alleged as to Green and Bird in the lengthy Complaint are sparse and largely conclusory, unsubstantiated, and without any meaningful detail. For example, it is true that TM was formed

---

[1]     The Amended and Consolidated Complaint dated October 29, 2011 is referred to as the "Complaint" or "Compl.", and is attached for the convenience of the Court as Exhibit A to the Declaration of Donald H. Chase ("Chase Declaration" or "Chase Dec."). All references to (¶ __) are to the paragraphs of the Complaint, and to (Ex. __) are to the Exhibits attached to the Chase Declaration.

for the very purpose of identifying a suitable business combination, but contrary to Plaintiffs'
less than subtle suggestion in the Complaint, there was and is nothing improper, illegal or
fraudulent in forming a corporation for such a purpose or in effectuating such a transaction. It is
also true that TM issued a proxy statement (the "October 2009 Proxy" or "Proxy") prior to the
reverse merger in order to provide TM shareholders with information necessary to make an
informed decision concerning the proposal. In a classic example of fraud by hindsight, Plaintiffs
now allege that statements made in the Proxy concerning CCME's finances, its advertising
network and the number of buses in its network were false and misleading in violation of federal
securities laws. The Complaint fails, however, to support any such claim against Defendants
Green and Bird.

First, Plaintiffs fail to plead with particularity a single material misstatement by either
Green or Bird. To begin, the Proxy, signed only by Green, specifically states that information
concerning the Chinese business was provided solely by it and did not constitute a representation
by TM (or Green and Bird). As such, none of the alleged misstatements (all of which concerned
the Chinese business entity) were made by Defendants. Further, the Complaint is devoid of any
facts to demonstrate that the alleged misrepresentations were actually false at the time when they
were made in October 2009. Indeed, Plaintiffs' desperate reliance on the anonymous reports of
two internet bloggers, Muddy Waters and Citron Research (both short-sellers), fails not only
because they are out of time, nonspecific and unreliable, but also because nothing in either report
demonstrates that any alleged representation by Defendants was false.

Second, the Complaint does not come close to alleging the requisite "strong inference" of
scienter and instead relies on one conclusory paragraph. As an initial matter, Plaintiffs fail
entirely to allege a compelling inference of a fraudulent motive. Plaintiffs attempt to plead

motive by contending that Defendants were motivated to complete the reverse merger thereby avoiding the loss of investment capital and allowing Defendants to "cash out" their pre-IPO shares of TM. However, TM was formed as a blank check company for the very purpose of forming a business combination -- it simply cannot be said that the fraudulent inference is at least as compelling as the nonfraudulent inference attached with completing a transaction that the company was formed to complete. Moreover, Plaintiffs generalized allegations concerning the desire to cash out shares are the very type of insufficient allegations repeatedly rejected by Second Circuit courts.

Plaintiffs likewise fail to present any facts, much less particularized facts, to support an inference that Defendants knew, or recklessly disregarded, the purported truth concerning CCME's business. While Plaintiffs claim that a "reasonable due diligence investigation" by Defendants would have revealed "serious misrepresentations" concerning CCME's business, there are no facts specifically alleged in the Complaint to demonstrate Defendants' knowledge of any fraud or any reason for them to have even suspected fraud. Plaintiffs' boilerplate assertions that Defendants "ought to have known" are legally insufficient to raise any, much less a strong, inference of scienter.

For all these reasons, the Complaint must be dismissed in its entirety with prejudice.

## STATEMENT OF FACTS[2]

1.     **TM Entertainment and Media, Inc.**
       **Pursues A Business Combination**

TM is a Delaware entity formed as an investment vehicle by Green, Bird and others on

October 17, 2007. (¶¶ 53, 55).  TM was a "blank check" company organized for the purpose of

effecting a merger, capital stock exchange, asset acquisition or other similar business

combination "with a domestic or foreign operating business in the entertainment, media, digital

or communications industries." (¶ 53).  TM was required under its prospectus to complete such a

business combination by October 17, 2009, at which time the corporation's existence would

otherwise cease.  (¶ 53).  Green was Chairman of the Board, Co-Chief Executive Officer and

Interim Chief Financial Officer of TM.  (¶ 29).  Bird was a director and Co-Chief Executive

Officer of TM.  (¶¶ 21, 22).

Hong Kong Mandefu Holding Limited ("Hong Kong Mandefu"), a private Chinese media

company, emerged as a potential target for a reverse merger with TM in 2008.  (Ex. B, October

2009 Proxy ("Proxy") at 71).  Hong Kong Mandefu generated revenue by selling advertisements

on the television displays installed on buses in eighteen of China's regions.  (*Id.;* ¶ 8)  In January

2009, TM signed a non-binding letter of intent to acquire Hong Kong Mandefu.  (¶ 54).  On May

4, 2009, TM announced that it had entered into a definitive agreement to purchase the issued and

---

[2]     All citations in the Statement of Facts (¶ ___) are to the Complaint, unless otherwise identified.
Certain factual allegations of the Complaint are assumed to be true solely for the purposes of this motion
to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)").  In applying the standard of facial
plausibility, the Court must accept all factual allegations as true, but it does not credit "mere conclusory
statements" or "[t]hreadbare recitals of the elements of a cause of action."  *Ashcroft v. Iqbal,* 556 U.S.
662, 129 S.Ct. (2009).  On a motion to dismiss, the Court may properly consider documents referenced in
or integral to the complaint, as well as public filings with the SEC.  *In re IAC/InterActivecorp. Sec. Litig.,*
478 F. Supp. 2d 574, 585 (S.D.N.Y. 2007).  Accordingly, Defendants have attached to the accompanying
Declaration of Donald H. Chase copies of documents that are both public records and referenced in, and
the basis for, Plaintiffs' claims against Defendants.  Defendants otherwise reserve their right to deny or
contest any allegations in the Complaint.

outstanding capital stock of Hong Kong Mandefu.  (Ex. B, Proxy at 2).  Over the next several

months, TM employed various third parties to conduct due diligence in the business of Hong

Kong Mandefu.  (¶ 62).  A.J. Robbins, P.C. ("Robbins"), an accounting firm, had also audited

Hong Kong Mandefu's financials for 2006, 2007 and 2008 fiscal years.  (Ex. B at 73-75).  On

September 30, 2009, the TM board approved an amended Share Exchange Agreement between

Hong Kong Mandefu and TM.  (¶ 54).

**2.     The October 2009 Proxy**

In October 2009, TM issued the Proxy.  (¶ 60; Ex. B).  The Proxy was signed by Green in

his capacity as Chairman, Co-CEO and interim CFO of TM.  (¶ 60).  The Proxy was intended to

provide TM's shareholders at the time with the necessary and available information to make an

intelligent decision in voting on the proposed reverse merger with Hong Kong Mandefu.  (Ex.

B).  Thus, the Proxy repeated certain business and financial information provided to TM by

Hong Kong Mandefu and its accountant, Robbins, during due diligence, for the benefit of TM's

shareholders.  Critically, however, the Proxy expressly stated:

> All information contained or incorporated by reference in this
> Proxy Statement relating to TM has been supplied by TM, and all
> such information relating to CME [defined as Hong Kong
> Mandefu] has been supplied by the Sellers [defined as Zheng
> Cheng, Thousand Space Holdings Limited and Bright Elite
> Management Limited] and CME [Hong Kong Mandefu].
> **Information provided by either of us does not constitute any**
> **representation, estimate, or projection of the other.**

(Ex. B, Proxy at 193 (emphasis added)).  Accordingly, the Proxy made clear that TM (and

derivatively, Green and Bird) did not make any representation as to the information provided by

Hong Kong Mandefu.

The Proxy also set forth a clear disclaimer cautioning the then TM shareholders about

various risk factors to be taken into account in their decision, including warnings about the "risks

relating to doing business in China" and "risks relating to CME [Hong Kong Mandefu]." (*Id.* at 23). TM also explained that all of the information regarding Hong Kong Mandefu had been provided to it during due diligence. (*Id.* at 164). The Proxy published the audited and unaudited financials for Hong Kong Mandefu provided to TM by Robbins, as well as various other Hong Kong Mandefu statements regarding its business (*Id.* at 107-08; ¶ 35).

Although the various information concerning Hong Kong Mandefu was solely the representation of Hong Kong Mandefu and the related Sellers, the Proxy also included a detailed description of the due diligence that TM conducted, covering several pages of detail. (Ex. B, Proxy at 73-75). The Proxy also contained the standard cautionary statement setting forth the well-established safe harbor law for forward-looking statements. (*Id.* at 1). In setting forth TM's recommendation concerning the proposed reverse merger, the Proxy expressly noted:

> CME has a limited operating history, derives a significant portion of its revenues from a limited number of advertising clients, depends on one equipment supplier and relies on contractual arrangements with a third party to conduct its advertising business in China. (*Id.* at 14).

### 3.   CCME Commences Business And Defendants Green And Bird Resign

Following the reverse merger, the company was renamed China MediaExpress Holdings, Inc. (¶¶ 58, 59). Defendant Zheng Cheng, who founded Hong Kong Mandefu, became the Chairman and Chief Executive Officer (CEO) of CCME after the merger. (¶ 14). CCME was then listed "on the NYSE AMEX Exchange, and then later on the NASDAQ." (¶ 152). Since CCME was based exclusively in China, Defendants resigned as officers following the merger and there is no allegation that they were involved thereafter in any specific business operations or substantive activities of CCME, except that they were nominally named directors of CCME. Both ultimately resigned from the CCME board in early March 2010. (Exs. D and E). There is

no allegation that Green and Bird had any further contact or relationship to CCME other than as a shareholder. Moreover, although certain of the TM shareholders, including Green and Bird, continued to be shareholders of CCME following the merger, their shares were not registered, and accordingly could not be sold prior to registration. Roughly one year after the merger, and pursuant to CCME's Registration Statement on Form S-3, dated August 16, 2010, and amended on October 5, 2010, which became effective on October 19, 2010, the CCME shares owned by Defendants Green and Bird and certain other TM shareholders were finally registered. (Ex. C).

### 4.    Plaintiffs' Section 10(b) Claim Against Defendants

In late January and early February 2011, two self-interested bloggers and short-sellers published critical "research reports" alleging that they discovered fraud involving Mr. Cheng, CCME's Chairman and CEO. (¶¶ 82, 85). CCME issued press releases responding to the allegations. (¶¶ 84, 87).

In its original Complaint, Plaintiffs did not name Defendants Green and Bird, nor did Plaintiffs allege any misrepresentation by them or any reliance on the October 2009 Proxy even though all such facts were publicly available and necessarily known to Plaintiffs. (*See* ECF Docket No. 1.) In their latest version of the Complaint, Plaintiffs now set forth one claim against Defendants Green and Bird for violation of Section 10(b) of the Exchange Act and Rule 10b-5 based on statements in the Proxy allegedly attributable to Defendants. (¶¶ 155-159).

## ARGUMENT

### POINT I

### THE COMPLAINT FAILS TO SATISFY
### THE PLEADING REQUIREMENTS FOR
### A SECTION 10(B) CLAIM AGAINST DEFENDANTS

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entm't,* 592 F.3d 314, 321 (2d Cir. 2010), *cert denied*, 131 S. Ct. 901 (2011) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft,* 556 U.S. at 662, 129 S. Ct. at 1949. If the factual averments permit no reasonable inference stronger than the "mere possibility of misconduct," the complaint should be dismissed. *Starr,* 592 F.3d at 321 (quoting *Ashcroft,* 129 S. Ct. at 1950). Thus, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Ashcroft,* 129 S. Ct. at 1949 (quoting *Twombly,* 550 U.S. at 557).

### A.    Plaintiffs Must Plead A Section 10(b)
### Claim With Particularity

To state a claim under Section 10(b) and Rule 10b-5, "a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury." *ATSI Commc'ns Inc. v. Shaar Fund Ltd.,* 493 F.3d 87, 105 (2d Cir. 2007) *aff'd and vacated in part*, 579 F.3d 143 (2d Cir. 2009). *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). Plaintiffs must also satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b), which

requires that the "circumstances constituting fraud ... be stated with particularity." *ATSI*, 493 F.3d at 99, quoting *Novak v. Kasaks,* 216 F.3d 300, 306 (2d Cir. 2000). The Complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak,* 216 F.3d at 306. Thus, a plaintiff cannot base securities fraud claims on speculation and conclusory allegations. *Kalnit v. Eichler,* 264 F.3d 131, 142 (2d Cir. 2001).

In addition to Rule 9(b), plaintiffs must also satisfy the pleading requirements of the PSLRA which imposes two exacting and distinct pleading requirements for securities fraud cases. *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,* 553 F.3d 187, 196 (2d Cir. 2009). First, under the PSLRA, the complaint must specify each statement alleged to have been misleading and give the reason why the statement is misleading. Second, it must state with particularity facts that give rise to a strong inference that the defendant acted with the required scienter. 15 U.S.C. § 78u-4(b)(1)(2). These requirements are rigorously applied. The complaint may not simply lump separate defendants together in vague and collective fraud allegations, but must instead inform each defendant of the specific nature of his alleged participation in the fraud. *In re Parmalat Sec. Litig.,* 375 F. Supp. 2d 278, 286 (S.D.N.Y. 2005).

### B.     Plaintiffs Do Not Plead With Particularity Any Material Misstatement Or Omission By Defendants

Plaintiffs must establish falsity by "specify[ing] each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Plaintiffs' Complaint does not come close to meeting this stringent pleading requirement as it fails to plead

with particularity a single material misstatement by either Green or Bird. The Plaintiffs point exclusively to the October 2009 Proxy as the basis for their claims against Green and Bird.[3] To be sure, Plaintiffs do identify three allegedly false and misleading statements in the Proxy as follows: (i) alleged overstatements of the size of CCME's advertising network; (ii) alleged overstatements of the number of buses in CCME's network; and (iii) alleged overstatements of CCME's financial results. (¶¶ 60, 62). Plaintiffs fail, however, to tie these alleged misrepresentations or any other alleged misrepresentation to either Green or Bird, nor does their Complaint provide specific facts to demonstrate even that any alleged representation in the Proxy was materially false at the time it was made.

### 1.   The Proxy Statements Relating To Hong Kong Mandefu's Business Operations And Financial Results Are Not Properly Attributed To Defendants Green And Bird

The October 2009 Proxy makes clear that the information supplied by Hong Kong Mandefu is solely its representation and does not constitute any representation by TM. (Ex. B at 193). Accordingly, statements and representations in the Proxy relating to Hong Kong Mandefu's then financial results, advertising network, and bus inventory are not legally or properly attributable to TM, much less Green and Bird. For this reason alone, the Complaint must be dismissed.

### 2.   Plaintiffs Fail To Allege Any Specific Misstatements Made By Bird

Plaintiffs also acknowledge, as they must, that Defendant Bird did not even sign the October 2009 Proxy filed by TM. (¶ 22, Ex. B). Plaintiffs' Section 10(b) claim against Bird must therefore also be dismissed for the additional failure to adequately allege any statement in

---

[3]   Plaintiffs wholly ignore the fact that, as their own pleading reveals, CCME made numerous public filings and press releases thereafter, which have nothing whatsoever to do with Green and Bird and render reliance on the Proxy effectively moot in any event, at least as to most of the putative class.

the Proxy legally or properly attributable to Bird.   In *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011), the Supreme Court held that for "Rule 10b-5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." Here, the Complaint fails to specify a single statement that Bird signed or otherwise made.  Moreover, there are no facts in the Complaint from which one may properly infer that Bird was a person with ultimate authority over the statements in the October 2009 Proxy.  Under the standard set forth in *Janus,* Plaintiffs' Section 10(b) claim against Bird must accordingly be dismissed for this additional reason.

> **3.      Plaintiffs Fail To Allege Any Specific Facts To Demonstrate That Any Representation As To Hong Kong Mandefu's Business Operations And Financial Results Was False At The Time It Was Made**

The Complaint also fails to allege any specific facts to demonstrate that any material representation in the Proxy with respect to Hong Kong Mandefu's business and finances was not true at the time it was made in October 2009, as opposed to early 2011.  Of course, "[i]n order for a statement to be false or misleading, a plaintiff must allege that the speaker was aware of adverse information at the time he spoke." *In re Sierra Wireless, Inc. Sec. Litig.,* 482 F. Supp. 2d 365, 378 (S.D.N.Y. 2007).

There are simply no facts in the Complaint, let alone particularized facts, that demonstrate that the Defendants were aware that statements made in the October 2009 Proxy were false. It is also certainly possible that the alleged statements were true in October 2009, even if no longer true in early 2011.   For example, Plaintiffs contend that Defendants misrepresented that Hong Kong Mandefu "had a network of 16,000 inner-city buses" in October 2009. (¶ 60). However, there is nothing in the Complaint stating what the allegedly true number of buses was in October 2009, or otherwise demonstrating that the number stated was false in

October 2009. Plaintiffs' allegations simply speculate and assume misrepresentations going back to October 2009 without providing any factual basis whatsoever to demonstrate that the statements at issue were false or misleading in October 2009.

>    **4.    Plaintiffs Fail Even To Allege Any Specific Facts To Demonstrate That Hong Kong Mandefu's Financial Results, Advertising Network Or Bus Inventory Were Materially Misstated**

Plaintiffs are long on speculation but very short on facts in addressing Hong Kong Mandefu's business and financial results. Plaintiffs rely upon two short seller reports – the Citron Research report and the Muddy Waters report – released on or about January 31, 2011 and February 3, 2011, respectively, well over one year after the filing of the October 2009 Proxy.[4] (¶¶ 82, 85). Not only are the reports unsubstantiated and based wholly on anonymous sources, but there is nothing in them (or otherwise in the Complaint) that demonstrates the falsity of any statements allegedly attributable to Defendants in October 2009.

Moreover, the sources for Plaintiffs' allegations, two confessed short sellers, are clearly self-interested and unreliable. The Second Circuit has held that "where plaintiffs rely on confidential personal sources but also on other facts, they need not name their sources as long as the latter facts provide an adequate basis for believing that the defendants' statements were false." *Novak*, 216 F.3d at 314. Here, the Complaint does not provide any facts to corroborate the anonymous internet reports that form the basis for their securities fraud claim. Even if there did exist evidence in these short seller reports to demonstrate falsity in October 2009, Plaintiffs have not specifically identified any such evidence, and the Complaint provides the Court with no

---

[4]    Plaintiffs also rely on another internet report published by "Seeking Alpha," a stock market blog, on March 12, 2011 (after the Class Period), again more than one year after the filing of the October 2009 Proxy. (¶ 90, 91). The Seeking Alpha report, as quoted in the Complaint, does not discuss the size of Hong Kong Mandefu's network, its finances or the number of buses it had in its network. Accordingly, the Seeking Alpha report clearly does not further Plaintiffs' securities fraud claim against Defendants.

reason to believe either report. Indeed, it can easily be inferred that both reports were made up out of whole cloth simply to further the self-interest of the authors who stood to profit if CCME's stock price declined.

Plaintiffs' reliance on various resignations in 2011 -- approximately one year after Defendants Green and Bird resigned as CCME directors -- also fails to support an inference that statements made in the October 2009 Proxy were false. At most, the resignations raise questions concerning the Company's financial results. (¶¶ 94, 96). The resignations do not, however, state any particularized facts supporting an inference of falsity as to statements made in the October 2009 Proxy, much less support a claim that Defendants knew of any such falsity.

### C.   Plaintiffs Fail To Plead Facts Raising A Strong Inference That Defendants Acted With Scienter

Plaintiffs also fail to plead the Defendants' scienter in a legally permissible manner. "In order to plead scienter adequately under the PSLRA, a plaintiff must plead 'with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *ECA & Local 134 IBEW Joint Pension Trust of Chicago,* 553 F.3d at 198; *see* 15 U.S.C. § 78 u-4(b)(2). For Section 10(b) and Rule 10b-5 claims, "the required state of mind is a mental state embracing intent to deceive, manipulate, or defraud." *Fort Worth Employers' Ret. Fund v. Biovail Corp.,* 615 F. Supp. 2d 218, 225 (S.D.N.Y. 2009), *quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 319 (2007).

In the Second Circuit, scienter can be established by alleging (1) defendants had motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness. *ATSI Commc'ns, Inc.,* 493 F.3d at 99; *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1129-30 (2d Cir. 1994). In either scenario, the "strong inference" of intent must be more than just plausible or even reasonable -- it must be "cogent" and "at least as compelling as any

opposing inference of nonfraudulent intent." *Tellabs,* 551 U.S. at 314. "In determining whether this inference can be reasonably drawn, courts must consider both the inferences urged by the plaintiff and any competing inferences rationally drawn from all the facts alleged." *ECA,* 553 F.3d at 198 (quoting *Tellabs,* 551 U.S. at 314.) On a motion to dismiss, the Court must consider non-culpable inferences that can be "rationally drawn from all the facts alleged." *Id.*

### 1.   Plaintiffs Fail To Allege Adequately Defendants' Motive And Opportunity To Commit Fraud

Plaintiffs' scienter allegations against Defendants are stated in one conclusory paragraph:

> Additionally, scienter is demonstrated as to Defendants Green and Bird by the motivations they had to cause TM to enter into the reverse merger transaction by preparing and disseminating a materially false and misleading proxy statement. As described above, the financial reporting misrepresentations, as well as the other misrepresentations regarding CCME's advertising network and client base were so elementary and pervasive that any reasonable due diligence investigation would have easily uncovered these deceptions. The fact that Green and Bird did not report, disclose, identify or rectify these problems in CCME's reported financial results and narrative description of its business contained in the proxy statement indicates that they turned a "blind eye" to the serious misrepresentations contained in these financial results and narrative descriptions, in a willful and reckless attempt to consummate the reverse merger transaction before the October 17, 2009 deadline. Their desire to "cash-out" their pre-IPO shares of TM demonstrates that they had the motive and opportunity to carry out such deception.

(¶ 121). The foregoing paragraph (like other conclusory allegations in the Complaint) woefully fails to raise an inference that Defendants acted with the required fraudulent state of mind. To properly plead motive to commit fraud, Plaintiffs must allege, among other things, facts that demonstrate "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged." *In re Alstom SA Sec. Litig.,* 406 F. Supp. 2d 433, 446 (S.D.N.Y. 2005). However, motives "common to most corporate officers . . . do not constitute

'motive' for the purposes of this inquiry." *ECA*, 553 F.3d at 198. Plaintiffs must allege a "unique connection between the fraud and the [benefit]." *Id.* at 201 n.6.

Plaintiffs' conclusory fraud-by-hindsight style "motive" allegations against Defendants are clearly unpersuasive and deficient. Defendants formed TM in October 2007, two years before the October 2009 deadline to effect a merger as required by TM's prospectus. (¶ 53, 55). The deadline was set in stone before TM and/or the Defendants had ever communicated or heard of Hong Kong Mandefu. Thus, the "motivation" for Defendants to effectuate a merger -- which was fully disclosed to TM's shareholders in the October 2009 Proxy (¶ 55) -- had nothing to do with Hong Kong Mandefu. The entire purpose of TM, which was unquestionably legal and proper, was indeed to effectuate a merger by the stated date so that cannot possibly serve as a premise for fraudulent intent. Simply stated, one cannot reasonably conclude that the inference of fraud Plaintiffs seek to proffer is "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc.*, 551 U.S. at 314.[5]

Nor does Plaintiffs' generalized allegation that Defendants desired to "cash-out" their pre-IPO shares properly plead motive to commit fraud. At the outset, Plaintiffs' suggested inference lacks common sense. Plaintiffs' theory implies that Defendants knowingly participated in a fraud in October 2009, in the hope that a major accounting firm (DTT) and all of CCME's professional advisors, sophisticated investors, and market analysts, would not discover the fraud for at least a year, since Defendants could not even sell their unregistered shares until just over a year later when they were registered. (*See* Ex. C). In any event, the mere fact that a director desires to sell shares is wholly insufficient to demonstrate scienter. Indeed, even if stock sales

---

[5]     Indeed, even if Plaintiffs are correct that there was indeed a fraud in this action, and that is far from clear, it is far more reasonable to conclude that Defendants were also targets of such a fraud rather than participants.

did take place, Plaintiffs must establish that "unusual" insider trading activity took place during the class period. *See Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (only stock sales that are "unusual" or "suspicious" give rise to an inference of scienter); *In re Bristol-Myers Squibb Sec. Litig.,* 312 F. Supp. 2d 549, 561 (S.D.N.Y 2004) ("[E]xecutive stock sales, standing alone, are insufficient to support a strong inference of fraudulent intent."). Plaintiffs have not and cannot point to anything unusual in Defendants' conduct in connection with their shares. Indeed, it is hardly shocking that Defendants, like all shareholders, might wish to sell their shares to realize a profit one day, particularly at a time when they had long ceased being directors.

### 2. Plaintiffs Fail To Allege Adequately Defendants' Conscious Misbehavior Or Reckless Disregard For The Truth

Because the Complaint fails to include allegations of any plausible motive, Plaintiffs' burden to allege strong circumstantial evidence of conscious misbehavior or recklessness "must be correspondingly greater." *Kalnit*, 264 F.3d at 142. The Complaint, however, contains no allegations of conscious misbehavior. Instead, Plaintiffs merely contend that the alleged fraud would have been discovered had TM and Defendants conducted more "reasonable" diligence. (¶ 121). However, "[r]ecklessness in the scienter context cannot be merely enhanced negligence." *In re JPMorgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 624 (S.D.N.Y. 2005). In other words, "an allegation that a defendant merely 'ought to have known' is not sufficient to allege recklessness." *Hart v. Internet Wire, Inc.*, 145 F. Supp. 2d 360, 368 (S.D.N.Y. 2001), *aff'd*, 50 Fed. Appx. 464 (2d Cir. 2002). Even an "egregious failure to gather information will not establish 10b-5 liability as long as the defendants did not deliberately shut their eyes to the facts." *Hart*, 145 F. Supp. 2d at 368-69 (quotations and citations omitted). To establish scienter, "Second Circuit cases uniformly rely on allegations that [1] *specific* contradictory information was available to the defendants [2] at the *same time* they made their misleading statements." *In*

re Marsh & McLennan Cos. Sec. Litig., 501 F. Supp. 2d 452, 484 (S.D.N.Y. 2006) (emphasis added); see also Trinity Bui v. Industrial Enters. of Am., Inc., 594 F. Supp. 2d 364, 372 (S.D.N.Y. 2009) (Marrero, J.) (dismissing securities fraud claim plaintiffs who failed to "specifically identify any reports or statements that would have come to light in a reasonable investigation").

Here, Plaintiffs again rest on nebulous conclusory assertions without supporting facts. Plaintiffs utterly fail to identify any specific reports or statements that Defendants ignored and which would have demonstrated the falsity of any representation in the Proxy. Plaintiffs do not even specify the "financial reporting misrepresentations" as to which Defendants allegedly turned a "blind eye." As explained above, nowhere in the Complaint do Plaintiffs ever tie together what allegedly was false in October 2009 to what Defendants allegedly knew at the time. Plaintiffs never even identify any documents or other information setting forth the true facts or indicating Defendants' recklessness with respect to statements made in the October 2009 Proxy. The conclusory, non-specific allegations relied upon by Plaintiffs to fudge the scienter requirements are of the same ilk as have been repeatedly rejected by Second Circuit courts. See, e.g., South Cherry St., LLC v. Hennessee Group LLC, 573 F.3d 98, 110 (2d Cir. 2009) (affirming dismissal of Section 10(b) claim where plaintiff merely alleged that defendant would have learned the truth about the fraud had defendant performed due diligence); Shields, 25 F.3d at 1129 (scienter not adequately alleged where allegations "strongly suggest[ed] that the defendants should have been more alert and more skeptical, but nothing alleged indicate[d] that management was promoting a fraud"); Anwar v. Fairfield Greenwich, Ltd., 745 F. Supp. 2d 360 (S.D.N.Y. 2010) (Marrero, J.) (dismissing Section 10(b) claim where plaintiff alleged that defendant did not perform diligence); Limited, Inc. v. McCrory Corp., 683 F. Supp. 387, 394 (S.D.N.Y. 1988)

("Even if [the defendant] should have done more to attempt to uncover and disclose the alleged fraud, without factual allegations tending to establish knowledge of those practices," the defendant's failure to make additional inquiries is legally insufficient to allege scienter); *Griffin v. McNiff*, 744 F. Supp. 1237, 1251 (S.D.N.Y. 1990), *aff'd*, 996 F.2d 303 (2d Cir. 1993) ("[A] failure to investigate does not rise above the level of negligence unless there are factual allegations which tend to establish knowledge of the alleged [fraud or misconduct]."). Accordingly, Plaintiffs' allegations of recklessness are clearly deficient.[6]

### 3.   Plaintiffs Fail To Allege Scienter Separately As To Each Defendant

In addition to the other fundamental deficiencies in Plaintiffs' scienter allegations, Plaintiffs' Section 10(b) claim also must be dismissed because the Complaint does not plead scienter as to each Defendant individually. "[T]o establish scienter in misrepresentation cases, facts must be alleged which particularize how and why each defendant actually knew, or was reckless in not knowing, that the statements were false at the time made." *In re PXRE Group, Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 536 (S.D.N.Y. 2009), *aff'd sub nom., Condra v. PXRE Group Ltd.*, 357 Fed. Appx. 393 (2d Cir. 2009); *see also In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 217 (S.D.N.Y. 2004). This Court has repeatedly held that scienter cannot be alleged through group pleading. *See, e.g., In re Alstom Sec. Litig.*, 406 F. Supp. 2d at 449-450; *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 440 (S.D.N.Y. 2005).

Here, Plaintiffs simply lump "Defendants Green and Bird" together without specifying what each man knew and when he knew it. (*See, e.g.,* ¶¶ 55, 121). Such generalized allegations do not and cannot support the scienter element of Plaintiffs' securities fraud claim.

---

[6]      It should also be recognized that Plaintiffs' claims of recklessness against Green and Bird are belied by their own allegations against CCME's accountants who failed to uncover the alleged misrepresentations long after Defendants ceased to be directors, and despite far greater access to relevant information.

## POINT II

### THE COURT SHOULD NOT GRANT PLAINTIFFS
### LEAVE TO AMEND SINCE ANY AMENDMENT WOULD BE FUTILE

Leave to amend is properly denied where there is no basis to believe that an amendment would be anything but futile. *Oneida Indian Nation v. City of Sherrill,* 337 F.3d 139, 168 (2d Cir. 2003), *rev'd on other grounds,* 544 U.S. 197 (2005); *Alki Partners, L.P. v. Vatas Holding GmbH,* 769 F. Supp. 2d 478, 499 (S.D.N.Y. 2011). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." In this case, for the reasons discussed at length above, the unassailable documents, including the October 2009 Proxy, demonstrate that any securities claim against Defendants would be meritless, and that any amendment would thus be futile.

### CONCLUSION

For all the foregoing reasons, Defendants Green and Bird respectfully request that the Court dismiss Plaintiffs' Complaint against them with prejudice, and grant such other and further relief as the Court deems appropriate.

Dated: January 31, 2012

Respectfully submitted,

MORRISON COHEN LLP

By: _____

Donald H. Chase
Edward P. Gilbert
909 Third Avenue
New York, New York  10022
(212) 735-8600
dchase@morrisoncohen.com
egilbert@morrisoncohen.com

*Attorneys for Defendants*
*Theodore Green and Malcolm Bird*