UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CHINA MEDIAEXPRESS HOLDINGS, INC. SHAREHOLDER LITIGATION | No. 11-cv-0804 (VM) |
| | Judge Victor Marrero |
| ———————————————— | CLASS ACTION |
| This Document Relates To: | |
| ALL ACTIONS | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DELOITTE LLP'S
MOTION TO DISMISS THE AMENDED AND CONSOLIDATED COMPLAINT**

William R. Maguire
Savvas A. Foukas
Jesse James
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000

*Attorneys for Defendant Deloitte LLP*

## Table of Contents

**Page**

PRELIMINARY STATEMENT ................................................................. 1

THE ALLEGATIONS OF THE AMENDED COMPLAINT ........................................... 4

ARGUMENT .......................................................................... 7

I.    The Amended Complaint Fails to State a Section 20(a) Claim Against
      Deloitte U.S. .............................................................. 8

      A.    The Amended Complaint Fails to Plead a Primary
            Violation by DTTL .................................................... 8

      B.    The Amended Complaint Fails to Adequately Plead
            Actual Control ....................................................... 9

            1.    The pleading fails to allege actual control over
                  DTTL ........................................................... 9

            2.    The pleading fails to allege actual control over the
                  audit of China Media ........................................... 12

      C.    The Amended Complaint Fails to Allege Culpable
            Participation by Deloitte U.S. ....................................... 14

II.   The Amended Complaint Does Not State a Claim Against Deloitte U.S.
      for Violation of Section 10(b) ............................................. 16

      A.    Recent Supreme Court Decisions Preclude a Section 10(b)
            Claim Based on Vicarious Liability ................................... 16

      B.    The Amended Complaint Does Not and Cannot Allege a
            Factual Basis for Holding Deloitte U.S. Vicariously Liable ........... 20

            1.    The Amended Complaint fails to allege a basis for
                  holding DTTL liable ............................................ 20

            2.    DTTL is not the alter ego of Deloitte U.S. ..................... 20

CONCLUSION ......................................................................... 24

i

Table of Authorities

Page(s)

CASES

*In re Alstom SA Securities Litigation*, 406 F. Supp. 2d 433
(S.D.N.Y. 2005) .................................................................................... 10, 11, 13, 15

*In re Amaranth Natural Gas Commodities Litigation*, 587 F. Supp. 2d 513
(S.D.N.Y. 2008) ............................................................................................... 23

*American Fuel Corp. v. Utah Energy Development Co.*, 122 F.3d 130 (2d Cir.
1997)...................................................................................................................... 21

*Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010).........*passim*

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ........................................................... 7, 8, 13

*In re Asia Pulp & Paper Securities Litigation*, 293 F. Supp. 2d 391
(S.D.N.Y. 2003) ............................................................................................... 12

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87
(2d Cir. 2007) ................................................................................................. 8, 9, 14

*In re Bayer AG Securities Litigation*, No. 03 Civ 1546 (WHP), 2004 WL
2190357 (S.D.N.Y. Sept. 30, 2004)............................................................... 14

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).................................................. 7

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511
U.S. 164 (1994) ............................................................................................... 17, 18

*Cohen v. Stevanovich*, 722 F. Supp. 2d 416 (S.D.N.Y. 2010) .................................... 13

*Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618 (S.D.N.Y. 2004)...................... 11

*Finance One, Inc. v. Timeless Apparel, Inc.*, No. 09 Civ 9397 (GBD), 2011
WL 1345030 (S.D.N.Y. Mar. 29, 2011) ........................................................ 23

*In re Flag Telecom Holdings, Ltd. Securities Litigation*, 352 F. Supp. 2d 429
(S.D.N.Y. 2005) ............................................................................................... 10, 11

*Fletcher v. Atex, Inc.*, 68 F.3d 1451 (2d Cir. 1995)..................................................... 21

*In re Global Crossing, Ltd. Securities Litigation*, 02 Civ. 910 (GEL),
2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005)................................................. 13, 15

ii

*H & H Acquisition Corp. v. Financial Intranet Holdings*, 669 F. Supp. 2d 351
(S.D.N.Y. 2009) ................................................................. 13

*Itel Containers International Corp. v. Atlanttrafik Express Service Ltd.*, 909
F.2d 698 (2d Cir. 1990) ...................................................... 21

*In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340 (S.D.N.Y. 2011) ................. 14

*Janus Capital Group, Inc. v. First Derivative Traders*,
131 S. Ct. 2296 (2011) ...............................................*passim*

*Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221 (S.D.N.Y. 2006)....... 14, 15

*In re Lehman Brothers Mortgage-Backed Securities Litigation*, 650 F.3d 167
(2d Cir. 2011) .............................................................. 11, 14

*Lustgraaf v. Behrens*, 619 F.3d 867 (8th Cir. 2010)............................ 10, 12

*MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC*, 268 F.3d 58
(2d Cir. 2001) ............................................................. 21, 24

*Network Enterprises, Inc. v. Reality Racing, Inc.*, No. 09 Civ. 4664,
2010 WL 3529237 (S.D.N.Y. Aug. 24, 2010)...................... 21, 22, 23, 24

*Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, No. 03 Civ. 0613
(GBD), 2004 WL 112948 (S.D.N.Y. Jan. 22, 2004)............................... 22

*OM Intercontinental v. Geminex International, Inc.*, No. 03 Civ. 6471 (RCC),
2006 WL 2707327 (S.D.N.Y. Sept. 18, 2006) ................................... 21

*In re Optimal U.S. Litigation*, No. 10 Civ. 4095 (SAS), 2011 WL 4908745
(S.D.N.Y. Oct. 14, 2011) .................................................. 19, 21

*Pacific Investment Management Co. v. Mayer Brown LLP*, 603 F.3d 144 (2d
Cir. 2010) .................................................................... 18

*In re Parmalat Securities Litigation*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005) ............. 23

*In re Parmalat Securities Litigation*, 594 F. Supp. 2d 444 (S.D.N.Y. 2009) ......*passim*

*In re Refco, Inc. Securities Litigation*, 503 F. Supp. 2d 611 (S.D.N.Y. 2007)........... 14

*Ruston v. Town Board for Town of Skaneateles*, 610 F.3d 55 (2d Cir. 2010)............. 8

*Sanders Confectionery Products, Inc. v. Heller Financial, Inc.*, 973 F.2d 474
(6th Cir. 1992)................................................................ 10

iii

*Schlifke v. Seafirst Corp.*, 866 F.2d 935 (7th Cir. 1989) ........................................... 11

*SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450 (2d Cir. 1996) ...................... 9, 14

*Sloane Overseas Fund, Ltd. v. Sapiens International Corp., N.V.*, 941 F. Supp. 1369 (S.D.N.Y. 1996)................................................................................. 10

*Stoneridge Investment Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008) .............................................................................................................*passim*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ........................... 15

*U.S. v. Deloitte & Touche USA LLP*, 623 F. Supp. 2d 39 (D.D.C. 2009) ................. 13

*Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131 (2d Cir. 1991) ................................................................................................. 22

## STATUTES AND RULES

15 U.S.C. § 78u-4(b)(2)................................................................................................. 15

Federal Rule of Civil Procedure 12(b)(6) ...................................................................... 1

## REGULATIONS

17 C.F.R. § 240.12b-2..................................................................................................... 9

iv

Defendant Deloitte LLP ("Deloitte U.S.") respectfully submits this memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss with prejudice the claims against Deloitte U.S. in the Amended and Consolidated Complaint, dated October 24, 2011 (the "Amended Complaint").[1]

## PRELIMINARY STATEMENT

Plaintiffs' Amended Complaint seeks to hold Deloitte U.S. liable under Section 20(a) of the Exchange Act on the theory that Deloitte U.S. controlled a United Kingdom company, Deloitte Touche Tohmatsu Limited ("DTTL"), which in turn controlled a third entity, Deloitte Touche Tohmatsu in Hong Kong SAR ("DTT Hong Kong"), which allegedly served as the independent auditor of China MediaExpress Holdings, Inc. ("China Media") until March 2011.  The pleading does not allege that Deloitte U.S. issued any report or opinion on the financial statements of China Media, or that it made any other statement concerning China Media, or that it had any involvement of any kind in DTT Hong Kong's year-end 2009 audit of China Media, which is the only audit at issue in the case.

Rather, plaintiffs' Section 20(a) claim against Deloitte U.S. relies largely on selected passages from *In re Parmalat Securities Litigation*, 594 F. Supp. 2d 444 (S.D.N.Y. 2009).  Based on an interpretation of Section 20(a) that has been rejected

---

1. On October 31, 2011, plaintiffs filed a "Notice of Errata," which attached a revised version of the Amended Complaint.  (Doc. No. 64.)  The allegations against Deloitte U.S. are the same in both versions.  A copy of the Amended Complaint is attached as Exhibit 1 to the accompanying Declaration of Savvas A. Foukas.

by most judges in this district (including this Court in *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372 (S.D.N.Y. 2010)), and that is inconsistent with recent Second Circuit case law, the *Parmalat* court held only that the record before it raised sufficient factual questions that summary judgment could not be granted.[2] In doing so, it of course made no findings of fact.

Plaintiffs' reliance on *Parmalat* is misplaced, both in terms of the adequacy of the allegations in the Amended Complaint and in terms of the legal elements needed to plead control person liability.  Indeed, their "control person" claim against Deloitte U.S. fails for at least three independent reasons:

1.    *No primary violation*:  The Amended Complaint does not adequately plead that DTTL (the entity that Deloitte U.S. purportedly controlled) committed any primary violation.  Without a properly stated claim asserting primary liability against DTTL, the control person claim against Deloitte U.S. necessarily fails.

2.    *No actual control*:  The Amended Complaint fails to allege sufficient facts demonstrating that Deloitte U.S. had actual control over either: (i) DTTL as a general matter; or (ii) the specific transaction in issue.  As to the first point, the pleading fails to allege facts sufficient to show that Deloitte U.S. had the power to direct the management and policies of DTTL, as required under controlling case

---

2.  Notably, the record in *Parmalat* related to alleged facts and circumstances that pre-date the class period in this case, such that the relevance of those allegations to plaintiffs' claims here is questionable at best.  Moreover, as explained in DTTL's memorandum of law, there were additional unique facts alleged in *Parmalat* that are not alleged here.

2

law.  As to the second point, which is also required under controlling case law, the Amended Complaint fails to allege any facts at all to the effect that Deloitte U.S. had any involvement in, much less actual control over, the audit of China Media.

3.  *No culpable participation*:  The Amended Complaint fails to allege any "culpable participation" by Deloitte U.S. in the conduct constituting the purported securities law violation.  As the Second Circuit has made clear, and as this Court held in *Anwar*, plaintiffs are required to plead with particularity specific facts raising a cogent and compelling inference that the alleged control person "culpably participated" in the conduct at issue; i.e., that the alleged control person acted with scienter.  The Amended Complaint contains no such allegation as to Deloitte U.S.

In addition to the Section 20(a) claim, the Amended Complaint also purports to assert a Section 10(b) claim against "All Defendants," including Deloitte U.S. While the Amended Complaint provides no clear indication of plaintiffs' theory with respect to this claim, in responding to a pre-motion letter, plaintiffs declined to drop the claim and argued that Deloitte U.S. is vicariously liable under Section 10(b) as the "alter ego" of DTTL (which itself is purportedly vicariously liable for the acts of DTT Hong Kong).  As a threshold matter, a growing body of Supreme Court case law casts serious doubt on the continued viability of vicarious liability claims under Section 10(b).  *See Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2303-05 (2011); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157-58 (2008).  But even assuming that vicarious liability claims have survived *Janus* and *Stoneridge*, plaintiffs have failed to allege facts sufficient to show either

3

that DTTL committed any primary violation of Section 10(b), or that Deloitte U.S. is DTTL's "alter ego" which, as to Deloitte U.S., is the only vicarious liability concept even mentioned in the Amended Complaint.  Accordingly, there is no basis for a Section 10(b) claim against Deloitte U.S.  The Amended Complaint should be dismissed in its entirety and with prejudice as against Deloitte U.S.

## THE ALLEGATIONS OF THE AMENDED COMPLAINT

China Media is a Delaware corporation that has its headquarters in Hong Kong.  In February and March 2011, the corporation's stock price dropped following a report of "indicia of fraud" at the corporation.  (Am. Compl. ¶¶ 3, 4, 13.)[3]  Based on that stock price drop, the Amended Complaint asserts claims against China Media, its Chief Executive Officer and Chief Financial Officer, two individuals who allegedly assisted China Media in becoming publicly traded, and two firms allegedly engaged to audit the corporation (DTT Hong Kong and A.J. Robbins, P.C.), as well as DTTL and Deloitte U.S.

DTT Hong Kong served as China Media's auditor until resigning in March 2011.  (Am. Compl. ¶ 23.)  On March 31, 2010, DTT Hong Kong issued a report on China Media's financial statements for the year ended December 31, 2009.  (*Id.* ¶¶ 71, 114.)  Plaintiffs allege that DTT Hong Kong's audit report was a materially false and misleading statement.  (*Id.* ¶ 114.)

---

3.  Allegations in the Amended Complaint are assumed to be true only for purposes of this motion.

4

DTTL is a United Kingdom private company limited by guarantee, of which DTT Hong Kong is a member firm. (*Id.* ¶ 24.) There is no allegation in the Amended Complaint that DTTL either participated in DTT Hong Kong's audit of China Media or made any statement regarding China Media. Instead, the Amended Complaint generally alleges that DTTL exercises control over its member firms, including DTT Hong Kong (*id.* ¶¶ 25-31), and is, therefore, liable either under Section 20(a) or as a principal in respect of which DTT Hong Kong acted as agent. (*Id.* ¶¶ 24, 163-68.)

Deloitte U.S. is also a member firm of DTTL. (*Id.* ¶ 32.) The Amended Complaint does not allege that Deloitte U.S. participated in DTT Hong Kong's audit of China Media. Nor does the pleading allege that Deloitte U.S. made any statement about China Media. Indeed, the Amended Complaint asserts no connection whatsoever between Deloitte U.S. and China Media, let alone between Deloitte U.S. and the alleged fraud.

Rather, the Amended Complaint simply posits that Deloitte U.S. "dominated and controlled" DTTL, which the Amended Complaint asserts is Deloitte U.S.'s "alter ego." (*Id.* ¶ 32.) The only allegations offered to support plaintiffs' theory are: (i) an allegation that DTTL and Deloitte U.S. "rotate leadership," as each of DTTL's last two Chief Executive Officers formerly held the position of Chief Executive Officer at Deloitte U.S. and one allegedly served on DTTL's Board of Directors and Executive Committee while also serving as Deloitte U.S.'s Chief Executive Officer (*id.* ¶ 32); (ii) citations to the 2009 *Parmalat* opinion, ostensibly to buttress the

5

assertions that Deloitte U.S. is the "main source" of DTTL's funding, and that DTTL management agreed with Deloitte U.S.'s view that a proposed sale of DTTL's consulting business was "too risky" (*id.* ¶ 33); and (iii) the allegation that DTTL and Deloitte U.S. have offices in the same building (*id.* ¶ 34). There are no allegations at all to the effect that Deloitte U.S. or, for that matter, DTTL exercised actual control over the audit of China Media.

Notably, the Section 20(a) claim against Deloitte U.S., which appears as Count IV of the Amended Complaint (*id.* ¶ 169-74), is a nearly verbatim copy of the Section 20(a) claim against DTTL in Count III. (*Compare id.* ¶¶ 165-68 *with* 171-74.)[4] For example, paragraphs 172 and 173 make conclusory and unsupported assertions that Deloitte U.S. "had unlimited access to copies of *its member firms'* workpapers for auditor [sic] of [China Media]" (*id.* ¶ 172 (emphasis added); *see id.* ¶ 166 (same allegation regarding DTTL)) and that it "had direct involvement in and communications regarding *its member firms'* audits of, and consulting for," China Media (*id.* ¶ 173 (emphasis added); *see id.* ¶ 167 (same allegation regarding DTTL)). The Amended Complaint recognizes, however, that DTT Hong Kong is a member firm of DTTL, not of Deloitte U.S. (which does not have "member firms"), and that Deloitte U.S. is likewise a member firm of DTTL. (*Id.* ¶¶ 24, 32.) Indeed, the

---

4.  Paragraph 170 is not grammatical and makes no sense. (*Id.* ¶ 170 ("DTTL, directly and through its member firms and employees, promulgated there under by virtue of the plan, scheme and cause of conduct set forth herein").)

6

striking similarity between the allegations against DTTL and those against Deloitte U.S. suggest that Count IV is simply a flawed "cut-and-paste" from Count III.[5]

Finally, in Count I, the Amended Complaint asserts a Section 10(b) claim against "All Defendants."  (*Id.* ¶¶ 156-59.)  There are no facts pleaded anywhere in the Amended Complaint supporting a Section 10(b) claim against Deloitte U.S. as a primary violator.  Indeed, while Count I purports to group all defendants together and to assert, without any differentiation, that "Defendants disseminated or approved the materially false and misleading statements specified above" (*id.* ¶ 156), the Amended Complaint contains no factual allegation that Deloitte U.S. "disseminated or approved" any statement at all, much less a materially false or misleading statement regarding China Media.  Likewise, other than the mere assertion, in a single instance, that Deloitte U.S. is the "alter ego" of DTTL (*id.* ¶ 32), the Amended Complaint fails to allege sufficient facts to support that conclusion.  Plaintiffs' *ipse dixit* is plainly insufficient as a matter of law.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While well-pleaded factual allegations are assumed to be

---

5.  For the reasons set forth in DTTL's memorandum of law, the claims against DTTL are also subject to dismissal which, as a described herein, would alone provide an ample basis for dismissing the claims against Deloitte U.S.

7

true, legal conclusions are not.  *Id.*  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Rather, "factual allegations must be sufficient to support necessary legal conclusions." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

## I.   The Amended Complaint Fails to State a Section 20(a) Claim Against Deloitte U.S.

The elements of a Section 20(a) control person claim are "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007); *see also Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 413 (S.D.N.Y. 2010).  The Amended Complaint fails as to each of these three elements.

### A.   The Amended Complaint Fails to Plead a Primary Violation by DTTL

The Amended Complaint alleges that Deloitte U.S. is liable under Section 20(a) as a control person of DTTL, which is itself alleged to be liable for the acts of DTT Hong Kong.  As further explained in DTTL's memorandum of law in support of its motion to dismiss, however, the Amended Complaint fails to plead facts sufficient to establish either that DTTL is liable as a "control person" in respect of DTT Hong Kong under Section 20(a), or that DTT Hong Kong was somehow DTTL's "agent" for purposes of a vicarious liability claim under Section 10(b).  Thus, because Section 20(a) requires a plaintiff to plead a primary violation by the allegedly controlled person, the claim against Deloitte U.S. must be dismissed.  *See*

8

*ATSI Commc'ns, Inc.*, 493 F.3d at 108 (dismissing Section 20(a) claim for failure to allege primary violation).

### B.   The Amended Complaint Fails to Adequately Plead Actual Control

Even if the Amended Complaint had properly pleaded a primary violation by DTTL, it still fails to adequately allege "control" as against Deloitte U.S. "Control" under Section 20(a) is comprised of two necessary elements: (1) the Section 20(a) defendant must have actual control of the primary violator; and (2) the Section 20(a) defendant must have actual control of the transaction giving rise to the underlying alleged violation. *See Anwar*, 728 F. Supp. 2d at 425 (in order to "plead the element of control a plaintiff must plead actual control over the primary violator as well as actual control over the transaction at issue").

### 1.   The pleading fails to allege actual control over DTTL

To plead actual control over a primary violator, a complaint must allege facts demonstrating that the defendant "possessed 'the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'" *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996) (quoting 17 C.F.R. § 240.12b-2). Plaintiffs' scant allegations against Deloitte U.S. fail to meet this standard.

As a threshold matter, there is no allegation (nor can there be) that Deloitte U.S. owns DTTL. Likewise, there is no allegation (nor can there be) that any contract confers on Deloitte U.S.—a member firm of DTTL (Am. Compl. ¶ 32)—the power to direct or cause the direction of DTTL's management and policies.

9

For example, plaintiffs' allegation that the last two Chief Executive Officers of DTTL had previously held the same position at Deloitte U.S. and that one of them, while CEO of Deloitte U.S., also served as a member of DTTL's Board and Executive Committee, says nothing about whether Deloitte U.S. has the power to direct the management of DTTL.  Indeed, in determining the adequacy of pleadings under Section 20(a), courts have held allegations far more extensive than those made here insufficient to plead control.  *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 492-93 (S.D.N.Y. 2005) (defendant being part owner and appointing board members of primary violator's parent held insufficient); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 458-59 (S.D.N.Y. 2005) (defendant owning thirty percent of primary violator, appointing three board members, and "instruct[ing]" it to enter into transactions held insufficient); *Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp., N.V.*, 941 F. Supp. 1369, 1379 (S.D.N.Y. 1996) (defendant's vice president sitting on board of primary violator did not establish control); *Lustgraaf v. Behrens*, 619 F.3d 867, 878 (8th Cir. 2010) (shared directors and employees is insufficient to establish control).

Similarly, the mere allegation that Deloitte U.S. provided the "main source" of DTTL's funding and provided loans and bank guarantees fails as a matter of law to establish Deloitte U.S.'s ability to direct the management of DTTL.  *See Sloane*, 941 F. Supp. at 1379 (control not adequately pleaded where defendant was creditor of primary violator); *Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 486 (6th Cir. 1992) ("Extending a loan to a company and taking measures to

10

secure that loan do not amount to actual control."); *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 948-50 (7th Cir. 1989) (bank that made extensive loans to primary violator was not a control person). Were it otherwise, any significant lender or guarantor to an alleged primary violator could be saddled with "control person" liability simply by virtue of the financial relationship. Such a result would vastly, and improperly, expand the scope of Section 20(a).

Plaintiffs' allegation relating to DTTL's decision not to separate the consulting function from the rest of the business is likewise insufficient. Notably, the Amended Complaint merely alleges that "DTTL management agreed with Deloitte [U.S.]" about its decision. (Am. Compl. ¶ 33.) Under controlling case law, however, that is not enough. "[E]xercise of influence, without power to direct or cause the direction of management and policies through ownership of voting securities, by contract, or in any other direct way, is not sufficient to establish control for purposes of Section 20(a)." *Alstom*, 406 F. Supp. 2d at 487; *see also Fezzani v. Bear, Stearns & Co.*, 384 F. Supp. 2d 618, 645 (S.D.N.Y. 2004) ("Allegations of influence are not the same as the power to direct the management and policies of the primary violator."). Simply put, control "is not the mere ability to persuade, but almost always means the practical ability to *direct* the actions" of the primary violator. *Flag Telecom*, 352 F. Supp. 2d at 458 (citation and internal quotation marks omitted); *see also In re Lehman Brothers Mortgage-Backed Sec. Litig.*, 650 F.3d 167, 187 (2d Cir. 2011) ("[P]roviding advice that the banks chose to follow does not suggest control.").

11

The same conclusion inheres with respect to plaintiffs' allegation that DTTL and Deloitte U.S. have offices at the same address. (Am. Compl. ¶ 34.) Nothing about that allegation, even assuming it is true, demonstrates actual control by Deloitte U.S. over DTTL. *See Lustgraaf*, 619 F.3d at 878 ("[T]he mere fact that the two entities shared the same office space is not an allegation of control.").

### 2. The pleading fails to allege actual control over the audit of China Media

The Section 20(a) claim against Deloitte U.S. also fails for the independent reason that the Amended Complaint does not allege that Deloitte U.S. had actual control over the China Media audit allegedly conducted by DTT Hong Kong. As this Court has held, a Section 20(a) claim requires a plaintiff to plead "actual control over the transaction at issue." *Anwar*, 728 F. Supp. 2d at 425. Thus, in *In re Asia Pulp & Paper Securities Litigation*, 293 F. Supp. 2d 391 (S.D.N.Y. 2003), the court dismissed a control person claim against Andersen Worldwide Société Coopérative based on audits performed by its member firm in Singapore. *Id.* at 396. The court explained that the complaint was deficient because it failed to allege that Andersen Worldwide "was able to control or in any way influence the particular audits conducted or opinions offered by its individual member firms." *Id.*

The Amended Complaint does not even allege that Deloitte U.S. was involved in the China Media audit in any way; it certainly does not contain factual allegations sufficient to establish that Deloitte U.S. had actual control over that

audit.[6]  Instead, the Amended Complaint repeatedly cites to *In re Parmalat Securities Litigation*, 594 F. Supp. 2d 444, 456 (S.D.N.Y. 2009), in which the court concluded (contrary to the weight of opinions in this district) that actual control over the transaction at issue is not required for Section 20(a) liability.

Plaintiffs' reliance on *Parmalat* is misplaced.  As this Court held in *Anwar*, the better view is that a plaintiff is required to plead "actual control over the transaction at issue." *Anwar*, 728 F. Supp. 2d at 425; *see Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 435 (S.D.N.Y. 2010) (control person claim requires actual control over the transaction in question); *H & H Acquisition Corp. v. Fin. Intranet Holdings*, 669 F. Supp. 2d 351, 361 (S.D.N.Y. 2009) ("Indeed, 'the Section 20(a) defendant must not only have actual control over the primary violator, but have actual control over the transaction in question.'") (quoting *Alstom*, 406 F. Supp. 2d at 487); *In re Global Crossing, Ltd. Sec. Litig.*, 02 Civ. 910 (GEL), 2005 WL 1907005, at *12 (S.D.N.Y. Aug. 8, 2005) (plaintiffs must show actual control over transaction in question).  Because plaintiffs have not even attempted to do so here, the Section 20(a) claim against Deloitte U.S. should be dismissed.

---

6.  In Count IV, the Amended Complaint alleges, with literally no factual support, that Deloitte U.S. "had unlimited access to copies of its member firms' workpapers for auditor [sic] of [China Media]" (Am. Compl. ¶ 172), and "had direct involvement in and communications regarding its member firms' audits of, and consulting for, [China Media] … and therefore is presumed to have had the power to control" the audit in issue and to have "exercised that power" (*id.* ¶ 173).  But conclusory assertions in the recitation of the cause of action do not suffice.  Legal conclusions "must be supported by factual allegations." *Iqbal*, 129 S. Ct. at 1950.  No facts are alleged here, nor could they be.  *See U.S. v. Deloitte & Touche USA LLP*, 623 F. Supp. 2d 39, 41 (D.D.C. 2009) (denying motion to compel Deloitte U.S. to produce workpapers from another DTTL member firm where movant did not establish Deloitte U.S.'s ability to obtain the workpapers, much less its legal authority to do so).

13

C.    The Amended Complaint Fails to Allege
      Culpable Participation by Deloitte U.S.

The Amended Complaint also fails to properly allege the final required element of a Section 20(a) claim, namely, that Deloitte U.S. "was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns*, 493 F.3d at 108.  Notwithstanding *Parmalat*,[7] and as this Court has recently held, the requirement that culpable participation be adequately pleaded in order to state a Section 20(a) cause of action has "largely been settled by the Second Circuit in numerous decisions." *Anwar*, 728 F. Supp. 2d at 425.  Indeed, in describing the elements of a Section 20(a) claim in *Lehman Brothers Mortgage-Backed Securities Litigation*, decided after the *Parmalat* opinion was issued, the Second Circuit once again made clear that culpable participation is a necessary element of a Section 20(a) cause of action.  650 F.3d at 186; *see also ATSI Commc'ns*, 493 F.3d at 108; *First Jersey*, 101 F.3d at 1472.[8]

---

7.  Reasoning that this was "a point of debate within the Circuit," the *Parmalat* court considered "a lack of culpable participation or a defendant's good faith [a]s an affirmative defense to a Section 20(a) claim," rather than as an element that must be pleaded to state a claim.  594 F. Supp. 2d at 459 n.32.  As explained above, to the extent that such a debate existed at the time *Parmalat* was decided, the Second Circuit has more recently reiterated its view that plaintiffs must adequately plead culpable participation in order to state a claim under Section 20(a).

8.  Indeed, the great majority of the courts in this district recognize that culpable participation is an element that must be pleaded to state a Section 20(a) claim.  *See, e.g., In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 376 (S.D.N.Y. 2011); *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 660-61 (S.D.N.Y. 2007); *Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221, 244-47 (S.D.N.Y. 2006); *In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546 (WHP), 2004 WL 2190357, at *16 (S.D.N.Y. Sept. 30, 2004).

14

Moreover, culpable participation "must be pleaded with the same particularity as scienter under section 10(b)," and the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA") apply. *Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221, 246 (S.D.N.Y. 2006); *see, e.g.*, *Anwar*, 728 F. Supp. 2d at 413 ("[T]he heightened pleading standards of the PSLRA apply with respect to the third-prong, which requires plaintiffs to allege facts demonstrating that the defendant was a culpable participant."); *Alstom*, 406 F. Supp. 2d at 491 ("Plaintiffs must state with particularity facts giving rise to a strong inference that the defendant acted with recklessness."); *Global Crossing*, 2005 WL 1907005, at *12 ("PSLRA's heightened pleading requirements apply" to culpable participation element).

The PSLRA requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). A complaint satisfies this requirement "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Thus, for plaintiffs' Section 20(a) claim to survive, the Amended Complaint must contain particularized facts raising a strong inference that Deloitte U.S. participated, with fraudulent intent, in the allegedly wrongful underlying conduct.

The Amended Complaint does not even come close to meeting this standard. As a preliminary matter, there is no allegation anywhere in the pleading to the

15

effect that Deloitte U.S. participated at all in the audit of China Media conducted by DTT Hong Kong.  But even if factual allegations to that effect had been adequately pleaded, the Amended Complaint still contains no allegations whatsoever concerning Deloitte U.S.'s state of mind.  Certainly, there are no particularized factual allegations raising a cogent and compelling inference that Deloitte U.S. acted with scienter.  Accordingly, the Section 20(a) claim should be dismissed for failure to plead culpable participation by Deloitte U.S.

## II.    The Amended Complaint Does Not State a Claim Against Deloitte U.S. for Violation of Section 10(b)

Count I of the Amended Complaint asserts a Section 10(b) claim against "All Defendants."  To state such a claim, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157 (2008).  Plaintiffs do not allege any of these elements with respect to Deloitte U.S., instead suggesting that Deloitte U.S. is vicariously liable under Section 10(b).  As explained below, the pleading provides no basis for a Section 10(b) claim against Deloitte U.S.

### A.    Recent Supreme Court Decisions Preclude a Section 10(b) Claim Based on Vicarious Liability

Bereft of any viable Section 10(b) claim directly against Deloitte U.S., the Amended Complaint instead alleges, in a single instance, that Deloitte U.S. is the

16

"alter ego" of DTTL and suggests that since DTTL is allegedly liable for the conduct of DTT Hong Kong, Deloitte U.S., qua alter ego, should be vicariously liable for the conduct of DTTL.  Even if the basis for this tenuous, twice-removed vicarious liability theory were explained in the pleading, which it is not, the theory is fundamentally flawed because, as the Supreme Court recently reaffirmed in *Janus Capital Group v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011), a Section 10(b) claim can only be brought against the maker of a misstatement.  No alter ego theory can change the fact that Deloitte U.S. made no statement at all and therefore cannot be liable under Section 10(b).  *See also Stoneridge*, 552 U.S. at 159 (holding that "respondents' acts or statements were not relied upon by the investors and that, as a result, liability cannot be imposed upon respondents"); *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994) (holding that there was no aiding and abetting liability in a private action under Section 10(b) and therefore Central Bank could not be liable because it "did not commit a manipulative or deceptive act within the meaning of § 10(b)").

In *Janus*, the Court considered a Section 10(b) claim brought against investment advisor Janus Capital Management LLC based on alleged misstatements in prospectuses issued by Janus Investment Fund.  131 S. Ct. at 2299.  The advisor and the fund were legally independent, but the advisor provided the management services necessary for the fund to operate, and all of the fund's officers were also officers of the advisor.  *Id.*  Plaintiffs alleged that the advisor was

17

significantly involved in the preparation of the prospectuses and that there was a "uniquely close relationship" between the advisor and the fund. *Id.* at 2304-5.

Reversing the Fourth Circuit, the Court observed that, "[t]o be liable [under Section 10(b)], [the advisor] must have 'made' the material misstatements in the prospectuses," *id.* at 2301, and held that "the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Id.* at 2302. Generally, "attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed." *Id. See Pacific Inv. Mgmt. Co. v. Mayer Brown LLP*, 603 F.3d 144, 156-58 (2d Cir. 2010) (rejecting Section 10(b) liability for a misstatement absent "explicit attribution" to the defendant). Thus, even though the advisor was alleged to have been significantly involved in the preparation of the fund's prospectuses and responsible for the operation of the fund, the Court held that the advisor could not be held liable under Section 10(b) because it did not make the statements at issue—the fund did. *Janus*, 131 S. Ct. at 2302-05.

In reaching its conclusion, the Court noted that the private right of action under Section 10(b) was judicially created and therefore must be narrowly construed. *Id.* at 2302. After discussing its prior decisions in *Central Bank* and *Stoneridge*, the Court held that it would "not expand liability beyond the person or entity that has ultimate authority over a false statement." *Id.* at 2303. The Court even rejected the argument that a "uniquely close relationship" between the advisor

18

and the fund permitted a Section 10(b) claim, stating that "[w]e decline this invitation to disregard the corporate form." *Id.* at 2304.

Importantly, the Court emphasized that a theory of Section 10(b) "liability based on a relationship of influence resembles the liability imposed by Congress for control" under Section 20(a), and to permit such a theory "would read into Rule 10b-5 a theory of liability similar to—but broader in application than … —what Congress has already created expressly elsewhere.  We decline to do so." *Id.* at 2304.

To the extent there had been any doubt,[9] therefore, *Janus* confirms that common law vicarious liability is unavailable under Section 10(b) and that the corporate form cannot be disregarded in order to assert a Section 10(b) claim against someone other than the maker of the statement, particularly given that Congress enacted Section 20(a) to reach those who control primary violators.  *See In re Optimal U.S. Litig.*, No. 10 Civ. 4095 (SAS), 2011 WL 4908745, at *5-6 (S.D.N.Y. Oct. 14, 2011) (dismissing Section 10(b) claim against sole owner of entity that issued statement despite fact that owner ran and controlled the speaker

---

9.  *Stoneridge* held that liability does not attach to persons who merely participate in a scheme without making any statement, and specifically noted that "Section 10(b) does not incorporate common-law fraud into federal law."  552 U.S. at 162.  The district court in *Parmalat* recognized that *Stoneridge*'s holding "would seem to apply also to common law agency principles," but held that *Stoneridge* did not make sufficiently "clear" that vicarious liability could not be pleaded under Section 10(b).  594 F. Supp. 2d at 450-51.  *Janus* now confirms that, particularly in light of the statutory liability created under Section 20(a), common law vicarious liability does not provide a basis for a Section 10(b) claim.

because *Janus* "cautions against expanding the narrow private right of action" and "emphasizes that the corporate form should be respected").

Accordingly, plaintiffs' attempt to hold Deloitte U.S. vicariously liable under Section 10(b) should be dismissed as a matter of law. Indeed, plaintiffs' "alter ego" theory against Deloitte U.S. is even more attenuated than the theory of liability rejected by the Supreme Court in *Janus*. There, the advisor was alleged to have been significantly involved in preparing the statements at issue; there is no similar allegation here.

### B.   The Amended Complaint Does Not and Cannot Allege a Factual Basis for Holding Deloitte U.S. Vicariously Liable

Even if *Janus* and the cases preceding it do not preclude vicarious liability under Section 10(b), the Amended Complaint fails to properly allege any factual basis for such a claim.

#### 1.   The Amended Complaint fails to allege a basis for holding DTTL liable

As with plaintiffs' Section 20(a) claim, the Amended Complaint must adequately allege that DTTL is primarily liable under Section 10(b) in order to state any claim against Deloitte U.S. *See Anwar*, 728 F. Supp. 2d at 459 n.27. For the reasons explained above and in DTTL's memorandum of law, the Amended Complaint fails to do so.

#### 2.   DTTL is not the alter ego of Deloitte U.S.

But even if the Amended Complaint had adequately pleaded a primary violation by DTTL, plaintiffs' attempt to hold Deloitte U.S. vicariously liable under

20

an "alter ego" theory fails.  Plaintiffs cannot "pierce the corporate veil" of DTTL because the allegations in the Amended Complaint do not even come close to meeting the extremely high standard for doing so under New York law.[10]

A plaintiff asserting alter ego liability faces a heavy burden because courts are very reluctant to disregard the corporate form.  *See Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 909 F.2d 698, 703-04 (2d Cir. 1990); *Network Enters., Inc. v. Reality Racing, Inc.*, No. 09 Civ. 4664 (RJS), 2010 WL 3529237, at *4 (S.D.N.Y. Aug. 24, 2010); *OM Intercontinental v. Geminex Int'l, Inc.*, No. 03 Civ. 6471 (RCC), 2006 WL 2707327, at *7 (S.D.N.Y. Sept. 18, 2006).  The plaintiff must plead facts showing that "(1) the owner exercised complete domination over the corporation with respect to the transaction at issue, and (2) such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *MAG Portfolio Consult, GmbH v. Merlin Biomed Group LLC*, 268 F.3d 58, 63 (2d Cir. 2001) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)).

To determine whether there is "complete domination," courts evaluate factors such as:

---

10. For purposes of this motion and without conceding the point, Deloitte U.S. addresses "alter ego" liability under New York law although the result is the same under English law, which is the law of DTTL's state of incorporation.  *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (alter ego claims are generally decided under the law of the state of incorporation of the company whose veil is to be pierced).  In fact, English law on veil piercing appears to be even more restrictive than that of New York.  *See, e.g., In re Optimal U.S. Litig.*, No. 10 Civ. 4095 (SAS), 2011 WL 4908745, at *7 (S.D.N.Y. Oct. 14, 2011).

21

> (1) the absence of the formalities and paraphernalia that are part and parcel of the corporate existence, i.e. issuance of stock, election of directors, keeping of corporate records and the like, (2) inadequate capitalization, (3) whether funds are put in and taken out of the corporation for personal rather than corporate purposes, (4) overlap in ownership, officers, directors, and personnel, (5) common office space, address and telephone numbers of corporate entities, (6) the amount of business discretion displayed by the allegedly dominated corporation, (7) whether the related corporations deal with the dominated corporation at arm's length, (8) whether the corporations are treated as independent profit centers, (9) the payment or guarantee of debts of the dominated corporation by other corporations in the group, and (10) whether the corporation in question had property that was used by other of the corporations as if it were its own.

*Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, No. 03 Civ. 0613 (GBD), 2004 WL 112948, at *7 (S.D.N.Y. Jan. 22, 2004) (quoting *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir. 1991)).

The allegations in the Amended Complaint are plainly insufficient to raise a plausible inference that Deloitte U.S. exercised complete domination over DTTL with respect to the transaction at issue. *See Network Enters.*, 2010 WL 3529237, at *5. To begin, there are no allegations whatsoever of: (i) a disregard for corporate formalities between Deloitte U.S. and DTTL; (ii) inadequate capitalization; (iii) intermingling or improper use of DTTL funds by Deloitte U.S. (or even of access to such funds by Deloitte U.S.); (iv) an insufficient amount of business discretion displayed by DTTL; (v) an absence of arm's-length dealings; or (vi) that DTTL had property that was improperly used by Deloitte U.S. as if it were its own. Moreover, to the extent the Amended Complaint touches on any of the factors set out in *Nuevo Mundo* (Am. Compl. ¶¶ 32-34), it comes nowhere close to demonstrating that Deloitte U.S. exercised "complete domination" over DTTL in any sense, much less

22

that it did so with respect to the "transaction in issue" (i.e., the China Media audit).[11]

Courts have consistently refused to pierce the corporate veil even in the face of allegations showing much closer corporate relationships than that alleged by the Amended Complaint.  *See, e.g., Finance One, Inc. v. Timeless Apparel, Inc.*, No. 09 Civ. 9397 (GBD), 2011 WL 1345030, at *1, *5 (S.D.N.Y. Mar. 29, 2011) (refusing to pierce the veil even where "the employees, places of business, forms, trade names and telephone numbers for [the] companies were the same," and where "[t]here was a lot of intermingling between the three companies and the corporate formalities may not have been fully observed"); *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 538 (S.D.N.Y. 2008) (allegations of "common ownership and overlapping directors" and that "the entities shared a common address" were insufficient to disregard the corporate form).  Indeed, even in *In re Parmalat Securities Litigation*, 375 F. Supp. 2d 278, 296-97 (S.D.N.Y. 2005), the court dismissed a claim seeking to hold Deloitte U.S. vicariously liable under Section 10(b) on the theory that DTTL is the alter ego of Deloitte U.S.

---

11. As noted in the discussion of plaintiffs' Section 20(a) claim, the Amended Complaint alleges only that: (1) the CEO of DTTL used to be, but no longer is, the CEO of Deloitte U.S.; (2) Deloitte U.S. is the "main source" of funding for DTTL; (3) Deloitte U.S. influenced a single DTTL decision concerning the possible separation of the consulting function from its audit function; and (4) Deloitte U.S. has offices in the same building as DTTL.  These facts hardly establish that DTTL is a completely dominated entity and that its domination was used to commit a fraud or wrong. *See Network Enters.*, 2010 WL 3529237, at *4-5.

In addition, plaintiffs' alter ego theory must fail because there is no allegation that any purported domination by Deloitte U.S. occurred "with respect to the transaction at issue." *See Network Enters.*, 2010 WL 3529237, at *5 (noting that a court evaluating an alter ego claim "considers not whether Defendants exhibited behavior at any time that might indicate domination and control, but whether they exhibited such behavior 'with respect to the transaction at issue'") (quoting *MAG Portfolio*, 268 F.3d at 63).  Because the Amended Complaint does not and cannot allege that Deloitte U.S. had anything to do with the audit at issue, Deloitte U.S. cannot be held liable under an alter ego theory.

## CONCLUSION

For the foregoing reasons, and those set out in DTTL's motion to dismiss, the claims against Deloitte U.S. should be dismissed with prejudice.

Dated: New York, New York
         February 6, 2012

Respectfully submitted,


/s/ William R. Maguire
  William R. Maguire
  Savvas A. Foukas
  Jesse James
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
maguire@hugheshubbard.com
foukas@hugheshubbard.com
jamesj@hugheshubbard.com

*Attorneys for Deloitte LLP*

24