**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

In re:

CHINA MEDIAEXPRESS HOLDINGS, INC.
SHAREHOLDER LITIGATION

_____

This Document Relates To:

ALL ACTIONS

Civil Action No. 11-cv-0804 (VM)

CLASS ACTION

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT DELOITTE TOUCHE TOHMATSU LIMITED'S
MOTION TO DISMISS**

Miles N. Ruthberg
Christopher Harris
Kevin M. McDonough
LATHAM & WATKINS LLP
885 Third Avenue
New York, NY  10022-4834
Tel: (212) 906-1200
Fax: (212) 751-4864

Michael J. Dell
KRAMER LEVIN NAFTALIS &
FRANKEL LLP
1177 Avenue of the Americas
New York, NY  10036
Tel: (212) 715-9100
Fax: (212) 715-8000

Date:  February 6, 2012

*Attorneys for Defendant Deloitte Touche
Tohmatsu Limited*

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................1

II.     BACKGROUND ...................................................................................3

        A.      DTTL And DTT HK Are Distinct Entities And Do Not Hold
                Themselves Out As One Firm ..................................................3

        B.      DTT HK Audited CCME's Financial Statements .......................4

        C.      Plaintiffs' Control Allegations Against DTTL ...........................5

III.    STANDARD OF LAW .........................................................................7

IV.     ARGUMENT .......................................................................................7

        A.      Plaintiffs Do Not And Cannot State A Claim Against DTTL Under
                Section 20(a) ...........................................................................7

                1.      Plaintiffs Do Not And Cannot Satisfy Section 20(a)'s Control
                        Requirements.................................................................8

                        a.      Plaintiffs Do Not Adequately Allege That DTTL Has
                                Control Over DTT HK .......................................8

                        b.      Plaintiffs Do Not Plead That DTTL Had Control Over
                                DTT HK's 2009 CCME Audit .............................11

                2.      Plaintiffs Do Not And Cannot Allege Culpable Participation
                        By DTTL.......................................................................14

        B.      Plaintiffs Do Not And Cannot State A Claim Against DTTL Under
                Section 10(b) ...........................................................................17

                1.      Plaintiffs Do Not And Cannot Allege That DTTL Had Ultimate
                        Authority For The Alleged Misstatements As Required Under
                        *Janus*...........................................................................17

                2.      Plaintiffs Cannot Allege A Section 10(b) Respondeat Superior
                        Claim Against DTTL .....................................................19

                        a.      Respondeat Superior Is No Longer A Viable Theory
                                For Section 10(b) Liability ................................19

                        b.      In Any Event, Plaintiffs Do Not And Cannot Allege A
                                Viable Section 10(b) Respondeat Superior Claim
                                Against DTTL...................................................21

**(1)** **Plaintiffs Do Not Allege That DTT HK Was DTTL's Agent For The 2009 CCME Audit**..................**21**

**(2)** **DTT HK's Audit Opinion Was Not Attributed To DTTL**........................................................**24**

**V.** **CONCLUSION** ........................................................................**25**

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                  **PAGE(S)**

*Amron v. Morgan Stanley Inv. Advisors Inc.*,
464 F.3d 338 (2d Cir. 2006)............................................................................................23

*Anwar v. Fairfield Greenwich, Ltd.*,
728 F. Supp. 2d 372 (S.D.N.Y. 2010)............................................................... *passim*

*Anwar v. Fairfield Greenwich, Ltd.*,
Nos. Civ 0118, Civ. 2878, 2011 WL 6288406 (S.D.N.Y. Dec. 14, 2011) ...............................3

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009)....................................................................... 7, 12, 22-23

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)...............................................................................7, 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 555 (2007) ...............................................................................7

*Boston Telecom. Grp. v. Deloitte Touche Tohmatsu*,
slip op., No. C 02-05971 JSW (N.D. Cal. Aug. 7, 2003) ......................................................10

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ...............................................................................7

*CLAL Fin. Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*,
No. 09 civ 2255, 2010 WL 4177103 (S.D.N.Y. Oct. 7, 2010) ...............................................16

*Cromer Fin. Ltd. v. Berger*,
Nos. 00 Civ 2284, 00 Civ. 2498, 2002 WL 826847 (S.D.N.Y. May 2, 2002) ......................14

*Gabriel Capital, L.P. v. Natwest Fin., Inc.*,
122 F. Supp. 2d 407 (S.D.N.Y. 2000)....................................................................25

*Howard v. Klynveld Peat Marwick Goerdeler*,
977 F. Supp. 654 (S.D.N.Y. 1997)........................................................................9

*In re Alstom SA Sec. Litig.*,
454 F. Supp. 2d 187 (S.D.N.Y. 2006)..............................................................15, 20

*In re Alstom SA Sec. Litig.*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005).................................................2, 8, 11, 15

*In re AM Int'l, Inc. Sec. Litig.*,
   606 F. Supp. 600 (S.D.N.Y. 1985)........................................................................4, 9

*In re Asia Pulp & Paper Sec. Litig.*,
   293 F. Supp. 2d 391(S.D.N.Y. 2003).............................................................8, 9, 10

*In re CBT Grp. PLC Sec. Litig.*,
   No. 98-21014, 2000 WL 33339615 (N.D. Cal. Dec. 29, 2000)................................10

*In re Citric Acid Litig.*,
   191 F.3d 1090 (9th Cir. 1999) ................................................................................9

*In re Global Crossing Ltd. Sec. Litig.*,
   322 F. Supp. 2d 319 (S.D.N.Y. 2004)....................................................................24

*In re Global Crossing Ltd. Sec. Litig.*,
   No. 02-910, 2005 U.S. Dist. LEXIS 16228 (S.D.N.Y. Aug. 8, 2005)....................14

*In re Global Crossing Ltd. Sec. Litig.*,
   No. 02-910, 2005 U.S. Dist. LEXIS 16232 (S.D.N.Y. Aug. 8, 2005) ......................8

*In re Global Crossing Ltd. Sec. Litig.*,
   No. 02-910, 2005 U.S. Dist. LEXIS 26942  (S.D.N.Y. Aug. 8, 2005)....................20

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   154 F. Supp. 2d 741 (S.D.N.Y. 2001)....................................................................16

*In re MBIA, Inc., Sec. Litig.*,
   700 F. Supp. 2d 566 (S.D.N.Y. 2010)....................................................................15

*In re Optimal U.S. Litig.*,
   No. 10-4095, 2011 U.S. Dist. LEXIS 119141 (S.D.N.Y. Oct. 14, 2011).........................20, 21

*In re Parmalat Sec. Litig.*,
   375 F. Supp. 2d 278 (S.D.N.Y. 2005)...................................................... 11, 13-14

*In re Parmalat Sec. Litig.*,
   594 F. Supp. 2d 444  (S.D.N.Y. 2009).........................................................6, 13, 20

*In re Livent, Inc. Noteholders Sec. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001)...............................................................14, 16

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   351 F. Supp. 2d 334 (D. Md. 2004) .......................................................................4, 9

iv

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
　　380 F. Supp. 2d 509 (D.N.J. 2005) ...............................................................4, 9

*In re Tarragon Corp. Sec. Litig.*,
　　No. 07-7972, 2009 U.S. Dist. LEXIS 60160 (S.D.N.Y. Mar. 27, 2009) ..........................12, 16

*In re WorldCom, Inc. Sec. Litigation*,
　　No. 02-3288, 2003 U.S. Dist. LEXIS 10863 (S.D.N.Y. June 25, 2003) .................................9

*Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*,
　　909 F.2d 698 (2d Cir. 1990).................................................................................22

*Janus Capital Grp., Inc. v. First Derivative Traders*,
　　131 S. Ct. 2296 (2011) ......................................................................... *passim*

*Kelly v. CINAR Corp.* (*In re CINAR Corp. Sec. Litig.*),
　　186 F. Supp. 2d 279 (S.D.N.Y. 2002)......................................................................11

*Laperriere v. Vesta Ins. Grp., Inc.*,
　　526 F.3d 715 (11th Cir. 2008) .............................................................................20

*Lapin v. Goldman Sachs Grp., Inc.*,
　　506 F. Supp. 2d 221 (S.D.N.Y. 2006).....................................................................15

*Manchester Equip. Co. v. Am. Way & Moving Co., Inc.*,
　　60 F. Supp. 2d 3  (E.D.N.Y. 1999) .......................................................................22

*Munoz v. China Expert Tech., Inc.*,
　　No. 07-10531, 2011 U.S. Dist. LEXIS 128539 (S.D.N.Y. Nov. 7, 2011).........................18, 19

*Neubauer v. Eva-Health USA, Inc.*,
　　158 F.R.D. 281 (S.D.N.Y. 1994) ............................................................................8

*Nuevo Mundo Holdings v. PriceWaterhouseCoopers LLP*,
　　No. 03-0613, 2004 U.S. Dist. LEXIS 780 (S.D.N.Y. Jan. 22, 2004) .......................4, 9, 10, 24

*Police & Fire Ret. Sys. of Detroit v. Safenet, Inc.*,
　　645 F. Supp. 2d 210 (S.D.NY. 2009).....................................................................16

*Rich v. Maidstone Fin., Inc.*,
　　No. 98 Civ. 2569, 2001 WL 286757 (S.D.N.Y. Mar 23, 2001) ...........................................14

*Schnall v. Annuity & Life Re (Holdings), Ltd.*,
　　No. 3:02-2133, 2006 U.S.Dist. LEXIS 55439 (D. Conn. Aug. 10, 2006)...............................13

*SEC v. First Jersey Sec., Inc.*,
  101 F.3d 1450 (2d Cir. 1996) ..................................................................................8

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
  No. 03-3120, 2005 U.S. Dist. LEXIS 16382 (S.D.N.Y. Aug. 9, 2005)..................................16

*Star Energy Corp. v. RSM Top-Audit*,
  No. 08-00329, 2008 U.S. Dist. LEXIS 99825 (S.D.N.Y. Nov. 26, 2008).......13, 14, 20, 22, 24

*Trinity Bui v. Indus. Enters. of Am.*,
  594 F. Supp. 2d 364 (S.D.N.Y. 2009)...................................................................7

## RULES & STATUTES

15 U.S.C. § 78t.............................................................................................19, 20

Federal Rules of Civil Procedure 12(b)(6)............................................................1, 3

## OTHER AUTHORITIES

Restatement (Second) of Agency § 26 (1958)..............................................................22

Defendant Deloitte Touche Tohmatsu Limited ("DTTL") respectfully submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiffs' Amended and Consolidated Complaint (the "Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.   PRELIMINARY STATEMENT

Plaintiffs seek to hold DTTL liable for an alleged fraud relating to the 2009 financial statements of China MediaExpress Holdings, Inc. ("CCME"), despite the undisputed fact that DTTL did not audit those financial statements or issue the challenged audit opinion. *See* Compl. ¶ 23   Plaintiffs allege that CCME fraudulently misstated its 2009 financial statements, and that Deloitte Touche Tohmatsu in Hong Kong SAR ("DTT HK") failed to detect that fraud during its 2009 audit of CCME.  *See, e.g.*, *id.* ¶¶ 23, 70, 71 114, 122-43.  DTTL—the membership organization of the Deloitte international accounting network—is sued solely because DTT HK is one of its members, nothing else.  This is not a sufficient basis for either of the claims asserted against DTTL—a "controlling person" claim under Section 20(a) or a "respondeat superior" claim under Section 10(b).

The absence of a single non-conclusory factual allegation that DTTL was involved in DTT HK's 2009 CCME audit requires dismissal of plaintiffs' claims—the same fate shared by the vast bulk of the complaints attempting to hold similar membership organizations liable for their member firms' audits.  Out of the many similar cases filed against entities like DTTL, no claim has survived the pleading stage under the standards this Court applies, without detailed allegations that the membership organization *actually participated in the audit in question*. There are no such allegations here.

Moreover, plaintiffs' conclusory allegations against DTTL fall well short of what is required to state a claim under Section 20(a) or Section 10(b).  Plaintiffs' Section 20(a) claim fails for several independent reasons.  *First*, plaintiffs have failed adequately to allege a primary

violation by DTT HK, which is a necessary predicate for a claim against DTTL.[1]  *Second*, plaintiffs do not and cannot satisfy Section 20(a)'s control element, which requires that DTTL (1) had general control over DTT HK and (2) had actual control over DTT HK's 2009 audit of CCME.  *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 486 (S.D.N.Y. 2005) (Marrero, J.) (stating that plaintiffs must establish that defendant has both general "control over the primary violator" and "actual control over the transaction in question").  *Third*, plaintiffs do not and cannot point to any allegations—much less particularized allegations as the PSLRA requires— that DTTL culpably participated, *i.e.*, acted with scienter, in any alleged fraud relating to CCME. *See Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 413 (S.D.N.Y. 2010) (Marrero, J.) (stating that culpable participation requires scienter allegations sufficient to satisfy PSLRA's heightened pleading standard).

Plaintiffs' Section 10(b) claim, which they purport to assert under a respondeat superior theory, is similarly flawed.  Plaintiffs' Section 10(b) claim does not satisfy the test that the Supreme Court recently announced in *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2303 (2011), because DTTL was not the "maker" of any statement relating to the CCME audit, and respondeat superior liability under Section 10(b) is no longer viable after *Janus*.  In any event, plaintiffs' respondeat superior claim is insufficient even under pre-*Janus* case law because the Complaint does not allege "facts from which the court could infer sufficient involvement" by DTTL in DTT HK's CCME audit; thus, plaintiffs have not adequately alleged a principal-agent relationship regarding DTT HK's CCME audit.  *Anwar*, 728 F. Supp. 2d at 460.

Accordingly, plaintiffs' claims against DTTL should be dismissed in their entirety.

---

[1] We expect that DTT HK will argue this issue when served, and thus we do not independently brief it.

## II.     BACKGROUND

### A.     DTTL And DTT HK Are Distinct Entities And Do Not Hold Themselves Out As One Firm

DTTL is a private company based in the United Kingdom.  Compl. ¶ 24.  It performs no professional services and has no clients.  *See* Ex. 2, Deloitte.com, About Deloitte, http://www.deloitte.com/cn/en/about (last visited Feb. 6, 2012) (noting that "DTTL does not itself provide services to clients," and that "DTTL and each DTTL member firm are separate and distinct legal entities, which cannot obligate each other").[2]  DTTL facilitates coordination, fosters cooperation and promotes professional standards among the independent member firms, which provide client services.  *See* Compl. ¶¶ 24-32.

DTT HK is a member of DTTL, and it "provides audit, accounting and other financial consulting services to its clients."  *Id.* ¶ 23.  Each member is a "legally separate and independent entity."  Ex. 2, Deloitte.com, About Deloitte, http://www.deloitte.com/cn/en/about (last visited Feb. 6, 2012) ("Deloitte refers to one or more of Deloitte Touche Tohmatsu Limited, a UK private company limited by guarantee, and its network of member firms, each of which is a legally separate and independent entity.").

Plaintiffs nevertheless allege that DTTL is DTT HK's "parent company" and the two entities are part of one "global firm."  Compl. ¶¶ 24, 31.  However, as courts in the Southern District of New York and elsewhere have repeatedly held, entities like DTTL and their member

---

[2] Citations to "Ex. ___" refer to exhibits attached to the declaration of Kevin M. McDonough filed herewith.  The exhibits attached to the McDonough Declaration include the Complaint, an unpublished opinion cited in this Memorandum of Law, and materials that are cited to or incorporated in the Complaint.  *See Anwar v. Fairfield Greenwich Ltd.*, Civ. Nos. 0118, 2878, --- F. Supp. 2d ----, 2011 WL 6288406, at *2 (S.D.N.Y. Dec. 14, 2011) (stating that the court may consider documents attached to, incorporated by reference in, or otherwise integral to the complaint when reviewing a motion to dismiss under Rule 12(b)(6)).

firms are not "one firm."[3]  To the contrary, they are distinct and separate entities, regardless of whether they use the same brand name or follow the same policies and standards.

### B.     DTT HK Audited CCME's Financial Statements

Plaintiffs allege that DTT HK served as CCME's independent auditor from December 2009 until March 11, 2011.  Compl. ¶¶ 23.  During that time, DTT HK audited and issued an opinion on CCME's 2009 financial statements.  *Id.*  Plaintiffs conclusorily allege that DTTL had "involvement in and communications" regarding DTT HK's audit of CCME and had access to DTT HK's workpapers.  *See id.* ¶ 167.  But the Complaint contains no factual allegations to support this supposed "involvement" or explain what it might mean, or to clarify the substance or timing of these supposed "communications."  The Complaint also alleges (incorrectly) that DTTL "had unlimited access" to copies of DTT HK's workpapers and other documents from the CCME audit, *see id.* ¶ 166, but does not allege that DTTL in fact accessed those documents or was even aware of DTT HK's CCME audit.  The Complaint lacks any factual allegations that DTTL performed, participated in or supervised DTT HK's 2009 CCME audit in any way, much less that DTTL drafted, reviewed, signed, issued or even saw the 2009 CCME audit opinion.  *See generally id.*  Indeed, as DTT HK's 2009 audit opinion makes clear— and plaintiffs concede repeatedly—DTT HK performed the 2009 audit and issued the 2009 audit

---

[3] *See, e.g.*, *Nuevo Mundo Holdings v. PriceWaterhouseCoopers LLP*, No. 03-0613, 2004 U.S. Dist. LEXIS 780, at *6-10 (S.D.N.Y. Jan. 22, 2004) ("Member firms in an international accounting association are not part of a single firm and are neither agents nor partners of other member firms simply by virtue of using the same brand name."); *In re AM Int'l, Inc. Sec. Litig.*, 606 F. Supp. 600, 607 (S.D.N.Y. 1985) (dismissing 10(b) claims against foreign member firms of accounting network where plaintiffs alleged that all the "firms world-wide are in fact one entity" and "acted as agents of one another"); *see also In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509, 571-72 (D.N.J. 2005) (rejecting plaintiffs' argument that membership organization and member accounting firms are a "unitary, worldwide [firm]"); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 385 n.41 (D. Md. 2004) ("It is well recognized that member firms in an international accounting association are not part of a single firm and are neither agents nor partners of other firms simply by virtue of using the same brand name." (quotation omitted)).

opinion.  *See* Ex. 1, CCME 2009 Form 10-K, at F-1, F-2; *see, e.g.*, Compl. ¶¶ 23, 70, 71, 88, 101, 114, 122-43.

### C.     Plaintiffs' Control Allegations Against DTTL

Because it is undisputed that DTTL did not audit or opine on CCME's 2009 financial statements, and indeed there are no specific allegations that DTTL had any involvement whatsoever in DTT HK's 2009 CCME audit, plaintiffs have attempted to construct control-based claims against DTTL under Section 20(a) and Section 10(b).

In support of plaintiffs' Section 20(a) claim, the Complaint states legal conclusions that DTTL (1) "had the power to influence and control and did influence and control, directly or indirectly, the actions and decision making of [DTT HK]" and (2) "is presumed to have had the power to control or influence the particular conduct giving rise to the securities law violations, and exercised that power . . . ."  Compl. ¶¶ 165, 167.

The only "facts" plaintiffs allege do not support an inference that DTTL generally controlled DTT HK, had actual control over DTT HK's 2009 CCME audit or participated in any way in that audit.  Plaintiffs merely offer allegations regarding DTTL's structure and marketing, and the standard setting and advisory role that it plays with respect to the member firms:

- DTTL and its member firms promote and use the same global brand, *see id.* ¶ 25;

- DTTL required member firms to sign license agreements and established certain policies, standards and methodologies that the member firms were expected to follow, *see id.* ¶¶ 26-27, 29-30;

- Member firms occasionally perform quality reviews of each other's work and coordinate on audits of international clients, *see id.* ¶ 26;

- DTTL advises member firms on acceptance and rejection of client engagements and legal, risk management and public relations issues, and differences of opinion among member firms, *see id.* ¶¶ 26, 28-30; and

- Employees occasionally transfer between member firms, and DTTL reports employment and revenue numbers that "aggregate revenue and employees from all its members," *see id.* ¶¶ 28, 31.

Most of these allegations (which are inadequate to state a claim against DTTL as explained below) were simply copied from the summary judgment opinion in *In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444 (S.D.N.Y. 2009) regarding alleged conditions in 2004 and earlier, and thus are not even based upon the current time period.[4]  *See* Compl. ¶¶ 26-30.  Finally, undermining its claim that DTTL controls its member firms, plaintiffs allege that DTTL is itself controlled by the U.S. member firm, defendant Deloitte LLP.  *Id.* ¶ 33.

Plaintiffs also assert a claim against DTTL under Section 10(b), despite the fact that they do not and cannot point to any statement made by DTTL in connection with the CCME audit, let alone an actionable statement under the federal securities laws.  Instead, plaintiffs assert a Section 10(b) claim against DTTL under a respondeat superior theory.  In support, plaintiffs simply conclude—rather than allege facts to show—that "DTTL controls [DTT HK] and there existed a principal agent relationship between [DTT HK] and DTTL."  *Id.* ¶ 24 ("[DTT HK] was DTTL's agent and [DTT HK] was under DTTL's control and acted at DTTL's direction and within its scope of authority when auditing CCME.").  Plaintiffs fail to allege any facts showing that DTT HK was controlled by or acted as DTTL's agent in connection with DTT HK's audit of CCME, and instead rely on the inadequate allegations summarized above regarding DTTL's structure, marketing and standard setting and advisory role.  *See id.* ¶¶ 24-31.

---

[4] The Complaint's heavy reliance on *Parmalat* ignores this Court's proper rejection of certain key holdings of *Parmalat*, as discussed below.  We cite *Parmalat* herein only for propositions that are in harmony with this Court's and the Second Circuit's holdings.

III.     STANDARD OF LAW

        In deciding a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in plaintiffs' favor.  *See Trinity Bui v. Indus. Enters. of Am., Inc.*, 594 F. Supp. 2d 364, 369 (S.D.N.Y. 2009) (Marrero, J.) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).  Dismissal is proper, however, if plaintiffs do not plead factual allegations that "sufficiently 'raise a right to relief above the speculative level.'"  *Anwar v. Fairfield Greenwich, Ltd.*, 728 F. Supp. 2d 372, 402 (S.D.N.Y. 2010) (Marrero, J.) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The plaintiffs' claim for relief must be not merely possible, but "'plausible on its face.'"  *Id.* at 402 (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).  A complaint is insufficient where the allegations are, as they are here, based solely on "mere conclusory statements."  *Iqbal*, 129 S. Ct. at 1949 (stating that a complaint offering only "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do").

IV.     ARGUMENT

    A.     **Plaintiffs Do Not And Cannot State A Claim Against DTTL Under Section 20(a)**

        In order to state a control person claim under Section 20(a), plaintiffs must allege facts showing: "(1) a primary violation by the controlled person; (2) control of the primary violator by the targeted defendant; and (3) that the controlling person was in some meaningful sense a culpable participant in the fraud perpetrated."  *Anwar*, 728 F. Supp. 2d at 413 (quoting *ATSI Comm'cns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007)).  Plaintiffs' conclusory allegations do not and cannot satisfy any of these elements.[5]

---

[5] As noted above DTTL expects that DTT HK will brief its lack of a primary violation.

1.      **Plaintiffs Do Not And Cannot Satisfy Section 20(a)'s Control Requirements**

Control requires that the defendant have both (1) general "control over the primary violator," and (2) "actual control over the transaction in question."  *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 486 (S.D.N.Y. 2005) ("*Alstom III*") (Marrero, J.) (quoting *In re Global Crossing Ltd. Sec. Litig.*, No. 02-0910, 2005 U.S. Dist. LEXIS 16232, at *8-9 (S.D.N.Y. Aug. 8, 2005)); *see also Anwar*, 728 F. Supp. 2d at 425.  Plaintiffs' allegations do not satisfy either control requirement.

a.      **Plaintiffs Do Not Adequately Allege That DTTL Has Control Over DTT HK**

To satisfy the general control requirement, plaintiffs must put forth factual allegations creating a plausible inference that DTTL "'possessed the power to direct or cause the direction of the management and policies of [DTT HK], whether through the ownership of voting securities, by contract, or otherwise.'"  *Alstom III*, 406 F. Supp. 2d at 486 (quoting *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996)).  Conclusory allegations do not suffice.  *See In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d 391, 395-96 (S.D.N.Y. 2003) (finding "conclusory allegations . . . insufficient to state a claim of control person liability . . . ."); *Neubauer v. Eva-Health USA, Inc.*, 158 F.R.D. 281, 285 (S.D.N.Y. 1994) ("[A] bare allegation of control would not suffice . . ., as the Court need not accept as true on a motion to dismiss allegations which amount simply to legal conclusions." (citations omitted)).  Plaintiffs' allegations fail this standard.

*First*, plaintiffs allege—despite repeated decisions rejecting this "one firm" theory—that DTTL has general control over DTT HK because DTTL and its member firms have marketed themselves as a single brand.  *See* Compl. ¶¶ 25, 31, 165 (alleging that DTTL and its member firms market themselves under the same Deloitte brand, DTTL refers to itself as "a

8

global firm," and DTTL and its member firms were part of a "unified international structure").

Numerous courts have rejected plaintiffs' theory that an international accounting network and its

member firms are one firm by virtue of their structure or marketing. *See Nuevo Mundo Holdings*

*v. PriceWaterhouseCoopers LLP*, No. 03-0613, 2004 U.S. Dist. LEXIS 780, at *6-10 (S.D.N.Y.

Jan. 22, 2004) ("Member firms in an international accounting association are not part of a single

firm and are neither agents or partners of other member firms simply by virtue of using the same

brand name.").[6]  Just as plaintiffs cannot rely on conclusory control allegations, *see Asia Pulp &*

*Paper*, 293 F. Supp. 2d at 395-96, they similarly cannot create an inference of control for

purposes of Section 20(a) by relying on the entirely discredited theory that membership

organizations and their member accounting firms are one entity.  *See Anwar*, 728 F. Supp. 2d at

402 (stating that allegations must be "plausible" on their face to survive a motion to dismiss).

   *Second*, as the case law makes clear, plaintiffs' allegations that DTTL promulgates

standards and methodologies that the member firms are expected to follow, and advises member

firms on legal, risk management and public relations issues, *see* Compl. ¶¶ 24-31, similarly fail

to establish a credible inference of control.  *See, e.g.*, *Asia Pulp & Paper*, 293 F. Supp. at 396

---

[6] *See also In re Citric Acid Litig.*, 191 F.3d 1090, 1106-08 (9th Cir. 1999) (affirming denial of plaintiff's motion to compel U.S. member firm of international accounting network to produce documents held by foreign member firm, noting that each firm is autonomous although they use the same name); *In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 590, 571-72 (D.N.J. 2005) (rejecting plaintiffs' argument that membership organization and member accounting firms are a "unitary, worldwide firm"); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 385 n.41 (D. Md. 2004) ("It is well recognized that member firms in an international accounting association are not part of a single firm and are neither agents nor partners of other firms simply by virtue of using the same brand name." (citation omitted)); *In re WorldCom, Inc. Sec. Litig.*, No. 02-3288, 2003 U.S. Dist. LEXIS 10863, at *29-32 (S.D.N.Y. June 25, 2003) (dismissing 10(b) claim against membership organization where plaintiffs made only "bare allegations" that organization is "an umbrella organization for its member firms worldwide"); *Howard v. Klynveld Peat Marwick Goerdeler*, 977 F. Supp. 654, 662 (S.D.N.Y. 1997) (declining jurisdiction over foreign member firm of international accounting network based on alleged agent-principal relationship with U.S. member firm, where plaintiff alleged that defendant held itself out as a global firm); *In re AM Int'l, Inc. Sec. Litig.*, 606 F. Supp. 600, 607 (S.D.N.Y. 1985) (dismissing 10(b) claims against foreign member firms of accounting network where plaintiffs alleged that all the "firms world-wide are in fact one entity" and "acted as agents of one another").

(rejecting plaintiffs' allegations that an international membership organization "controlled" its member firms for purposes of Section 20(a) because the membership organization "set 'professional standards and principles' under which the individual offices operated"); *cf. In re CBT Grp. PLC Sec. Litig.*, No. 98-21014, 2000 WL 33339615, at *15 (N.D. Cal. Dec. 29, 2000) (finding insufficient plaintiffs' Section 15 control claim against membership organization where plaintiffs alleged that organization was "responsible for coordinating cross-border work among its members engaged in multinational engagements and developing uniform practice standards").

Plaintiffs' remaining allegations are likewise insufficient.  The fact that DTTL allegedly announces aggregated revenue and employment numbers, Compl. ¶ 31, or that employees sometimes transferred between member firms, Compl. ¶ 26, does not establish control.  *See, e.g.*, *Boston Telecom. Grp. v. Deloitte Touche Tohmatsu*, slip op., No. C 02-05971 JSW, at 7 (N.D. Cal. Aug. 7, 2003) (finding inadequate plaintiffs' allegations, which included among other things, "that DTT markets itself as 'One Firm,' reports its 'global' revenues on its website and claims to employ more than 100,000 people in more than 140 countries. . . . [A]nd participated in such firms' budgetary and certain employment decisions . . .") (attached as Ex. 3); *In re Asia Pulp & Paper Sec. Litig.*, 293 F. Supp. 2d at 393 (rejecting plaintiffs' allegations of control against membership organization, which included "partner overlap").  Likewise, plaintiffs' allegation that *member firms* (not DTTL) perform quality reviews of each others' work does not establish DTTL's control of DTT HK.  *Cf. Nuevo Mundo Holdings*, 2004 U.S. Dist. LEXIS 780, at *9-10 (declining to find an agency relationship between U.S. member firm and foreign member firm, and declining to allow plaintiff to add vicarious liability claims against membership organization, where plaintiff alleged, among other things, "overall training and

supervision of all affiliates and peer review meetings held to assure compliance with the accepted professional standards and ethical requirements of what each affiliate is doing").

### b. Plaintiffs Do Not Plead That DTTL Had Control Over DTT HK's 2009 CCME Audit

In addition to plaintiffs' failure to plead general control, plaintiffs come nowhere close to pleading that DTTL had "actual control over the transaction at issue." *Alstom III*, 406 F. Supp. 2d at 487 (citation omitted); *see also Kelly v. CINAR Corp. (In re CINAR Corp. Sec. Litig.)*, 186 F. Supp. 2d 279, 319 (S.D.N.Y. 2002) ("Actual control over the primary violator and the transactions in question is necessary for control person liability."). Plaintiffs do not allege any facts showing that DTTL performed, participated in or supervised DTT HK's CCME audit. Nor do they allege that DTTL "controlled the content and dissemination of the statements that were false and misleading" as is required to establish control over the audit at issue. *Anwar*, 728 F. Supp. 2d at 426. Instead, plaintiffs base their Section 20(a) claim on conclusory allegations that DTTL had the theoretical ability to control DTT HK, none of which suffices to show "actual control" over DTT HK's CCME audit.

*First*, plaintiffs make the conclusory (and inaccurate) allegation that DTTL "was provided with or had unlimited access" to the documents relating to DTT HK's CCME audit. Compl. ¶ 166. This allegation is patently insufficient to establish that DTTL had control over that audit, under any standard: "[T]he right to access another firm's books and records, without more, does not suggest any concomitant right to control that firm in respect to the transaction in question." *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278, 311 (S.D.N.Y. 2005).

*Second*, plaintiffs conclusorily allege, without any alleged facts to explain or support, that DTTL "had direct involvement in and communications regarding its member firms'

audits of CCME . . . ."[7]  Compl. ¶ 167.  Notably, plaintiffs allege no facts to support the empty

conclusion that DTTL had "involvement" in DTT HK's CCME audit, or even to explain what

that means.  Likewise, the unsupported assertion that DTTL had unidentified "communications"

about DTT HK's audit, without any details as to the substance or timing of these supposed

communications, does not establish that DTTL controlled that audit.   Plaintiffs then

"presume[]," rather than allege any facts to show, that DTTL "had the power to control or

influence the particular conduct giving rise to the securities law violations, and exercised that

power, . . ."  *Id.*  These threadbare and unsupported recitations of legal conclusions are

insufficient to demonstrate that DTTL supervised DTT HK's "day-to-day operations" with

respect to DTT HK's CCME audit or that it "controlled the content and dissemination of the

statements that were false and misleading."  *Anwar*, 728 F. Supp. 2d at 426; *In re Tarragon*

*Corp. Sec. Litig.*, No. 07-7972, 2009 U.S. Dist. LEXIS 60160, at *44 (S.D.N.Y. Mar. 27, 2009)

(dismissing plaintiffs' Section 20(a) claim because plaintiffs' "conclusory allegation that

[defendant] had the power and authority to cause Tarragon to engage in the wrongful conduct" at

issue was insufficient to support an inference that defendant had "control of the primary

violator"); *see also Iqbal*, 129 S. Ct. at 1949 (rejecting reliance on "[t]hreadbare recitals of the

elements of a cause of action").

      *Third*, plaintiffs' allegations regarding DTTL's structure, marketing, and standard-

setting role—which as discussed above are inadequate to demonstrate even general control—

certainly cannot establish that DTTL had actual control over DTT HK's 2009 CCME audit.

---

[7] Plaintiffs (perhaps unintentionally) imply that multiple member firms participated in the 2009 CCME audit.  *See, e.g.*, Compl. ¶ 167 ("DTTL also had direct involvement in and communications regarding its member firms' audits of CCME . . . ."); Compl. ¶ 172 ("Deloitte LLP was provided with or had unlimited access to copies of its member firms' workpapers for auditor of CCME and its subsidiaries, . . ."). However, as plaintiffs concede elsewhere in the Complaint, DTT HK was the only Deloitte member firm that performed the 2009 CCME audit.  *See, e.g.*, Compl. ¶ 23; *see also* Ex. 1, CCME's 2009 Form 10-K at 70, F-1, F-2.

Courts have repeatedly found these sorts of allegations insufficient to support a plausible

inference of control.  *See Anwar*, 728 F. Supp. 2d at 426-27 ("[A] bare assertion that . . . [the

defendant] marketed and structured itself a certain way, standing alone, would be insufficient to

make out the control prong of the § 20(a) claim."); *Star Energy Corp. v. RSM Top-Audit*, No. 08-

00329, 2008 U.S. Dist. LEXIS 99825, at *8 (S.D.N.Y. Nov. 26, 2008) (finding that plaintiffs'

allegations that the membership organization controlled "eligibility for membership" and the

ability to use the brand name, and "promulgated the audit manual and policies" for member

firms' audits was insufficient to establish control over the transaction at issue); *see also Schnall*

*v. Annuity & Life Re (Holdings), Ltd.*, No. 3:02-2133, 2006 U.S. Dist. LEXIS 55439, at *24-25

(D. Conn. Aug. 10, 2006) (rejecting plaintiffs' 20(a) control person claim against U.S. member

firm where plaintiff did not "claim that [the U.S. member firm] used its alleged control over [the

foreign member firm] to bring about the Section 10(b) violations" and alleged only that U.S.

member firm performed various accounting and auditing tasks).

>       *Finally*, plaintiffs' repeated references to the *Parmalat* summary judgment decision

are not a substitute for allegations of control over the audit at issue in this case.  As an initial

matter, *Parmalat* applied a different legal standard than this Court does and did not require

control over the audit itself.  *In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 456 (S.D.N.Y.

2009) (decision on motion for summary judgment); *Anwar*, 728 F. Supp. 2d at 425 (rejecting

*Parmalat*'s holding that plaintiffs are not required to plead control over the transaction at issue).

Moreover, *Parmalat*'s finding of control turned on unique factual allegations not present here:

(1) a partner at a member firm "sought direction and help" from the membership organization

while conducting the specific audit at issue; (2) the audit partner and the membership

organization discussed whether the member firm could issue the audit opinion at issue; and

13

(3) the membership organization ultimately intervened in the management of the audit at issue. *See In re Parmalat Sec. Litig.*, 375 F. Supp. 2d at 293-95, 310 (decision on motion to dismiss); *Anwar*, 728 F. Supp. 2d at 460-61 (distinguishing *Parmalat*); c*f. Star Energy Corp.*, 2008 U.S. Dist. LEXIS 99825, at *11-13 (distinguishing *Parmalat* from a case in which only structural allegations of control are made, because *Parmalat* involved allegations that the member firm "sought direction and help" from the international firm on the specific audit and the international firm took actions in directing or removing auditors on the Parmalat audit).[8]  Plaintiffs do not and cannot allege any such involvement by DTTL in DTT HK's CCME audit.

### 2.    Plaintiffs Do Not And Cannot Allege Culpable Participation By DTTL

In addition to control, the Second Circuit requires plaintiffs to allege culpable participation.  *See ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (describing the elements of a 20(a) claim); *see also Anwar*, 728 F. Supp. 2d at 413 (finding that culpable participation is required under Second Circuit precedent); *Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 415-17 (S.D.N.Y. 2001) (Marrero, J.) (discussing Second Circuit precedent regarding Section 20(a)).  Culpable participation must be alleged with sufficient specificity to satisfy the PSLRA's heightened pleading standards.  *See Anwar*, 728 F. Supp. 2d at 413.  "A complaint that does not contain 'detailed allegations regarding the state of mind of the control person' must be dismissed."  *In re Global Crossing, Ltd. Sec. Litig.*, 2005 U.S. Dist. LEXIS 16228, at *40 (quoting *Rich v. Maidstone Fin., Inc.*, No. 98 Civ. 2569, 2001 WL 286757, at *11 (S.D.N.Y. Mar. 23, 2001)).

---

[8] Likewise, in *Cromer Finance Ltd. v. Berger*, Nos. 00 Civ. 2284, 00 Civ. 2498, 2002 WL 826847 (S.D.N.Y. May 2, 2002), the court declined to dismiss plaintiffs' agency-based claim because they alleged, among other things, that the membership organization performed substantial work on the audit at issue and was identified as responsible for the audit.  *Id.* at *2-3.

The culpable participation requirement is "similar to the scienter requirement of Section 10(b)." *In re Alstom SA Sec. Litig.*, 454 F. Supp. 2d 187, 209-10 (S.D.N.Y. 2006) ("*Alstom IV*") (Marrero, J.). Thus, plaintiffs must allege, with particularity, that DTTL was at least reckless in its specific conduct regarding DTT HK's 2009 CCME audit, *i.e.*, that its conduct was "highly unreasonable, representing an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Alstom III*, 406 F. Supp. 2d at 491 ("[R]ecklessness is the minimum standard of culpability that plaintiffs must plead under Section 20(a)." (quotations and citations omitted)); *see also In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 597 (S.D.N.Y. 2010) (dismissing claims under Section 20(a) because plaintiffs failed to plead "particularized fact of the *controlling person's* conscious misbehavior or recklessness" (emphasis added) (citation omitted)); *Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp. 2d 221, 246 (S.D.N.Y. 2006) ("[T]o withstand a motion to dismiss, a section 20(a) claim must allege, at a minimum, particularized facts of the controlling person's conscious misbehavior or recklessness.").

Plaintiffs have not alleged *any* facts to establish DTTL's participation in the audit, much less culpable participation, nor could they. The Complaint is devoid of any allegations— let alone particularized allegations—to support an inference that DTTL acted recklessly with regard to DTT HK's CCME audit. Plaintiffs conclude, without a hint of factual support, only that "DTTL had the power and authority to cause [DTT HK] to engage in the wrongful conduct complained of herein," Compl. ¶¶ 163, 165, and had "unlimited access" to copies of DTT HK's audit of CCME and the "ability to prevent the issuance of false or misleading statements or to cause the statements to be corrected," *id.* ¶ 166.

15

None of these is a particularized allegation that DTTL was even *aware* of, much less participated in, much less acted recklessly regarding, DTT HK's 2009 CCME audit. Plaintiffs therefore have not adequately alleged that DTTL was a culpable participant in any fraud relating to CCME.  *See In re Tarragon Corp. Sec. Litig.*, 2009 U.S. Dist. LEXIS 60160, at *44 (finding plaintiffs' "conclusory allegation that Beachwold had the power and authority to cause Tarragon to engage in the wrongful conduct" at issue did not create inference that defendant "was in some meaningful sense a culpable participant in the primary violation" (quotations and citations omitted)); *Police & Fire Ret. Sys. of Detroit v. Safenet, Inc.*, 645 F. Supp. 2d 210, 241 (S.D.NY. 2009) (dismissing Section 20(a) claim for failure to plead culpable participation where plaintiff could not show that defendants "had any significant knowledge or role" in the alleged malfeasance); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d at 436-37 (finding that culpable participation element was not satisfied because plaintiffs did not allege that outside directors participated in the fraudulent transactions at issue).[9]

Finally, plaintiffs' allegations that simply lump DTTL and DTT HK together, *see, e.g.*, ¶¶ 4, 6-8, cannot satisfy their pleading obligations.  *See CLAL Finance Batucha Inv. Mgmt., Ltd. v. Perrigo Co.*, No. 09 civ. 2255, 2010 WL 4177103, at *10 (S.D.N.Y. Oct. 7, 2010) (dismissing control person claim because plaintiff "simply ' lump[ed]'" the dismissed parties together with other defendants as to whom it did not state a claim).

---

[9] *See also Sedona Corp. v. Ladenburg Thalmann & Co.*, No. 03-3120, 2005 U.S. Dist. LEXIS 16382, at *55 (S.D.N.Y. Aug. 9, 2005) (finding no culpable participation, where plaintiff alleged only that SEC-filed documents indicated that certain primary defendants were wholly-owned subsidiaries of control-person defendant); *In re Indep. Energy Holdings PLC Sec. Litig.*, 154 F. Supp. 2d 741, 771-72 (S.D.N.Y. 2001) (finding no culpable participation despite allegations of concrete benefits received in connection with a securities offering because plaintiff did not provide "particularized facts" showing what the parent company knew of its subsidiary's activities or the issuing company's misrepresentations or problems; nor did plaintiffs allege that parent company "knew or should have known" of the fraud; nor did plaintiffs plead any details as to what parent company was alleged to have done as a participant in its subsidiary's primary violation).

**B.      Plaintiffs Do Not And Cannot State A Claim Against DTTL Under Section 10(b)**

Plaintiffs' Section 10(b) claim against DTTL also fails on multiple grounds.  *First*, plaintiffs do not allege that DTTL was the "maker" of an alleged misstatement, as *Janus* requires for Section 10(b) liability.  *Second*, plaintiffs cannot pursue a respondeat superior claim against DTTL because (a) *Janus* eliminated control-based theories of liability under Section 10(b), and (b) in any event, plaintiffs have not adequately alleged a principal-agent relationship between DTTL and DTT HK.

**1.      Plaintiffs Do Not And Cannot Allege That DTTL Had Ultimate Authority For The Alleged Misstatements As Required Under *Janus***

Plaintiffs have not alleged a Section 10(b) claim against DTTL because they have not alleged that DTTL was the "maker" of any challenged statement in this case.  In *Janus*, the Supreme Court reaffirmed the narrow scope of the private right of action under Section 10(b) and held that Section 10(b) liability is limited only to the "maker" of a misstatement, *i.e.*, "the person or entity that ultimately has authority over a false statement."  131 S. Ct. at 2303 ("Our holding also accords with the narrow scope that we must give the implied private right of action.  Although the existence of the private right is now settled, we will not expand liability beyond the person or entity that ultimately has authority over a false statement." (internal citation omitted)).

The Complaint contains no allegations whatsoever that DTTL made any statement relating to CCME or DTT HK's audit of CCME.  Plaintiffs do not and cannot dispute that the statement upon which plaintiffs premise DTTL's Section 10(b) liability—the audit opinion on CCME's 2009 financial statements—was made solely by and attributed solely (and explicitly) to DTT HK; indeed, there is absolutely no mention of DTTL in the audit opinion or CCME's 2009 Form 10-K.  *See* Ex. 1, CCME 2009 Form 10-K, at F-1, F-2 (Audit Opinion of "Deloitte Touche Tohmatsu, Certified Public Accountants, Hong Kong"); *id.* at 70 (stating that CCME "engaged

17

Deloitte Touche Tohmatsu in Hong Kong ("DTT") to serve as its independent auditor, . . ."); *see also* Compl. ¶¶ 23, 70, 71, 101, 114, 122-43 (conceding that DTT HK—and not DTTL—conducted the 2009 CCME audit and issued the 2009 audit opinion); *Janus*, 131 S. Ct. at 2302 ("[I]n the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed."); *id.* at 2305 (emphasizing in dismissing Section 10(b) claim against defendant investment advisor that nothing "on the face of the prospectuses indicate[d] that any statements therein came from [defendant investment advisor] rather than [defendant mutual fund]—a legally independent entity with its own board of trustees").

No court has found the membership organization of an international accounting firm network, such as DTTL, liable under *Janus*.  Indeed, the inadequacy of plaintiffs' allegations here becomes exceedingly clear when compared to the one post-*Janus* case where a court has found a member firm (not the international membership organization) liable for an audit opinion that did not make clear whether it was issued by that firm or another member firm.  *See Munoz v. China Expert Tech., Inc.*, No. 07-10531, 2011 U.S. Dist. LEXIS 128539 (S.D.N.Y. Nov. 7, 2011).  In *Munoz*, the court upheld a complaint pleading that the New York member firm of the PKF network was liable for an audit opinion which did not make clear if it was issued by the New York firm or by the Hong Kong member firm of the same network.  In particular, plaintiffs in *Munoz* set forth detailed factual allegations supporting their assertions that (1) the New York member firm participated in the audits at issue; (2) the New York firm had exercised authority over the content of the audit opinion; (3) the New York firm had signed an engagement letter promising to review the audit opinion for SEC compliance; (4) the New York firm's managing

director gave final approval on the opinions before they were signed; and (5) the final opinions did not specify which entity had issued them.  *Id.* at *4-5.

Here, plaintiffs do not, and cannot, point to the kind of detailed factual allegations that the *Munoz* court required to show "ultimate authority" as required by *Janus* at the pleading stage.  Nor can the Complaint here overcome the audit opinion's explicit attribution to DTT HK—"strong evidence" that DTT HK rather than DTTL had ultimate authority for the statement.  *See Janus*, 131 S. Ct. at 2302.  Finally, the Complaint does not contain any factual allegations whatsoever that DTTL made any statement with respect to CCME's 2009 financial statements or controlled the content or manner of DTT HK's 2009 audit opinion.  Accordingly, *Janus* requires that plaintiffs' Section 10(b) claim against DTTL be dismissed.

   **2.**  **Plaintiffs Cannot Allege A Section 10(b) Respondeat Superior Claim Against DTTL**

     **a.**  **Respondeat Superior Is No Longer A Viable Theory For Section 10(b) Liability**

Plaintiffs cannot overcome their failure to demonstrate that DTTL was the "maker" of DTT HK's 2009 audit opinion by relying on respondeat superior.  Although some courts recognized Section 10(b) respondeat superior liability before *Janus*, that theory is no longer viable.  Indeed, *Janus* explicitly rejected theories of Section 10(b) liability that, like respondeat superior, are premised on "a relationship of influence" or control, because Congress expressly decided to create control-based liability in Section 20(a), not Section 10(b):

> Congress also has established liability in § 20(a) for '[e]very person who, directly or indirectly, controls any person liable' for violations of the securities laws.  First Derivative's theory of liability based on a relationship of influence resembles the liability imposed by Congress for control.  To adopt First Derivative's theory would read into Rule 10b-5 a theory of liability similar to—but broader in application than—what Congress has already created expressly elsewhere.  We decline to do so.

*Janus*, 131 S. Ct. at 2304 (quoting 15 U.S.C. § 78t(a)) (internal citations omitted).

In light of the *Janus* Court's refusal to permit a control-based theory of liability under Section 10(b), plaintiffs cannot use respondeat superior to create an end-run around the culpability requirements of Section 20(a).  *Id.* at 2304; *see also In re Optimal U.S. Litig.*, No. 10-4095, 2011 U.S. Dist LEXIS 119141, at *14-26 (S.D.N.Y. Oct. 14, 2011) (applying *Janus* and stating that courts should be cautious not to expand "the narrow private right of action under Rule 10b-5 to impose liability where Congress already imposed liability under other statutory provisions, such as those found in Section 20").[10]

Eliminating respondeat superior claims brings consistency to the requirements for control-based securities fraud claims.  As this Court has noted, Section 20(a) requires that the defendant culpably participated in the alleged fraud, which requires a showing akin to scienter.  *See Alstom IV*, 454 F. Supp. 2d at 209-10.  But state law respondeat superior liability generally does not require scienter.  *See Star Energy Corp.*, 2008 U.S. Dist. LEXIS 99825, at *6 (reciting the elements of agency under New York law); *see also Laperriere v. Vesta Ins. Group, Inc.*, 526 F.3d 715, 722 (11th Cir. 2008) ("Pure vicarious liability, such as *respondeat superior* liability, attributes liability to one party based on the actions of the other party regardless of any allegation of culpability on the party held vicariously liable.").  Similarly, Section 20(a) contains an express good-faith exculpation provision, *see* 15 U.S.C. § 78t(a), that is not available under state law respondeat superior.  *See, e.g.*, *In re Global Crossing Sec. Litig.*, No. 02-910, 2005 U.S. Dist. LEXIS 26942, at *19-20, 2005 WL 2990646, at *6 (S.D.N.Y. Nov. 7, 2005).  Thus, if state law respondeat superior continued to be a basis for Section 10(b) liability, it would be a potentially

---

[10] Before *Janus,* some courts were reluctant to foreclose respondeat superior liability because they wished to ensure that corporations remain liable for their employees' statements.  *See, e.g.*, *In re Parmalat Sec. Litig.*, 594 F. Supp. 2d at 451.  *Janus* has eliminated that concern because when an employee speaks regarding corporate matters, those statements are understood to be attributed to the corporation, which has ultimate authority over them.

broader control-based liability than the control-based liability that Congress expressly created in Section 20(a), exactly the result that *Janus* rejects.  *See Janus*, 131 S. Ct. at 2304; *cf. In re Optimal U.S. Litig.*, 2011 U.S. Dist LEXIS 119141, at \*14-26 (applying *Janus* and rejecting plaintiff's Section 10(b) agency claim based on defendant's one-hundred percent ownership of alleged primary violator).

Rather than relying on the state-law concept of respondeat superior, which may differ by state, and more importantly may differ from the contours of Section 10(b) liability as defined by *Janus* and control-based liability under Section 20(a), Section 10(b) liability is now restricted to the entity that has "ultimate authority."  *Janus*, 131 S. Ct. at 2302.  Put another way, to the extent state law respondeat superior differs from "ultimate authority" as defined in *Janus* it is no longer viable, and to the extent it is the same as "ultimate authority" it is superfluous. *Janus* thus makes clear that Section 10(b) "control" or agency claims, like the one plaintiff has asserted against DTTL, are no longer available.  Instead, such claims are properly brought under, and must satisfy the requirements of, Section 20(a).

> **b.**    **In Any Event, Plaintiffs Do Not And Cannot Allege A Viable Section 10(b) Respondeat Superior Claim Against DTTL**

Even if state-law respondeat superior were still a valid basis for Section 10(b) liability, the Complaint does not and cannot allege a respondeat superior claim against DTTL.[11]

> **(1)**    **Plaintiffs Do Not Allege That DTT HK Was DTTL's Agent For The 2009 CCME Audit**

To allege a principal-agent relationship under New York law,[12] a plaintiff "must allege facts sufficient to support: (1) a manifestation by the principal that the agent shall act for

---

[11] As with the Section 20(a) claim, the Section 10(b) claim also fails because plaintiffs have not sufficiently alleged a predicate Section 10(b) claim against DTT HK, which we expect that DTT HK will brief when served.

him; (2) acceptance of the undertaking by the agent; and (3) an understanding between the parties that the principal is to be in control of the undertaking." *Anwar*, 728 F. Supp. 2d at 458-61 (quoting *Star Energy Corp.*, 2008 U.S. Dist. LEXIS 99825, at *2) (rejecting respondeat superior allegation against the international membership organization of PwC).

*First*, plaintiffs do not allege any facts indicating that DTTL expressed an intention that DTT HK act as its agent for the 2009 CCME audit.  Whether an agency relationship exists "depends upon the actual interactions of the putative agent and principal and not on the perception a third party may have of the relationship." *Manchester Equip. Co. v. Am. Way & Moving Co., Inc.*, 60 F. Supp. 2d 3, 8 (E.D.N.Y. 1999).  Thus, a plaintiff must point to "written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." *Itel Containers Int'l Corp. v. Atlanttrafik Express Serv. Ltd.*, 909 F.2d 698, 702 (2d Cir. 1990) (quoting Restatement (Second) of Agency § 26 (1958)).  Plaintiffs do not allege that DTTL made any statements or engaged in any conduct which caused DTT HK to believe that DTTL desired DTT HK to act as its agent in conducting the 2009 CCME audit.  Nor do plaintiffs allege that DTT HK manifested an acceptance of any such agency.[13]

*Second*, plaintiffs' legal conclusions that DTTL "controls" DTT HK, that "there existed a principal agent relationship between [DTT HK] and DTTL," and that DTT HK "acted at DTTL's direction and within the scope of its authority when auditing CCME," *see* Compl. ¶ 24, are not sufficient to allege agency.  *See Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of

---

[12] Because plaintiffs have not alleged the application of the law of another forum, DTTL assumes for purposes of this motion that New York law applies and analyzes the claims accordingly.

[13] Indeed, as statements on Deloitte.com make clear, "DTTL and each DTTL member firm are separate and distinct legal entities, which cannot obligate each other."  Ex. 2, Deloitte.com, About Deloitte, http://www.deloitte.com/cn/en/about (last visited Feb. 6, 2012).

the elements of a cause of action, supported by mere conclusory statements, do not suffice.");
*Amron v. Morgan Stanley Inv. Advisors Inc.*, 464 F.3d 338, 344 (2d Cir. 2006) ("[B]ald
assertions and conclusions of law will not suffice" to survive a motion to dismiss.).

   *Third*, and more specific to auditors, plaintiffs here have failed to allege that DTTL
was sufficiently involved (or involved in any way) in DTT HK's 2009 CCME audit.  Allegations
of "general control" are insufficient to establish the existence of a principal-agent relationship in
the auditor context.  *See Anwar*, 728 F. Supp. 2d at 459-60.  It is insufficient to allege that the
"principal merely [possessed] the general right to control any aspect of its affiliated entities'
conduct, or [had] actually exercised some control over the member firms' operations and audits
generally."  *Id.* at 460.  "A principal auditor's control of its agent auditor must come in a more
focused form."  *Id.* at 459.  To satisfy that "focused" standard of control, plaintiffs must "assert
facts from which the court could infer sufficient involvement by the principal *in the preparation
of the audits at issue*."  *Id.* at 460 (emphasis added).  As noted above, plaintiffs' complaint
contains only the most conclusory allegations of any involvement by DTTL in DTT HK's 2009
audit, far short of the focused allegations necessary to establish sufficient involvement in the
audit.

   Instead, plaintiffs attempt to allege agency based solely on generic assertions of
affiliation, structure, and standard setting.  *See* Compl. ¶¶ 24-31.  As numerous courts have
found, and this Court held in *Anwar* specifically with respect to a membership organization of an
international accounting network, such conclusory allegations fail to establish that DTTL had
"substantive involvement" in or direct control over DTT HK's 2009 audit of CCME.  *Anwar*,
728 F. Supp. 2d at 459-60.  For instance, in *Anwar*, this Court rejected an agency claim against
PwC International ("PwCIL") because plaintiffs' allegations of generalized control, *i.e.*, that

23

PwCIL exercised some control over its member firms' operations and audits generally, were insufficient "to state a plausible agency relationship."  728 F. Supp. 2d at 459-61.  Similarly, in *Star Energy*, the court dismissed respondeat superior claims against a membership organization where the plaintiff alleged, among other things, that the membership organization: (1) controlled its member firms' audits through a common audit manual and a compliance committee; (2) performed periodic reviews of its member firms' procedures; (3) "controlled [the member firm's] eligibility for membership and ability to use . . . the brand name"; (4) had the power to force a member firm to change its conduct; and (5) pooled the earnings of its member firms for purposes of advertising and client solicitation.  2008 U.S. Dist. LEXIS 88825, at *7-14.  The court found these allegations inadequate, explaining that plaintiff "failed to allege that [the membership organization] had any control over [the member firm] in its dealings with [the audited company].  Thus, the essential element of control was lacking."  *Id.* at *10; *see also Nuevo Mundo*, 2004 U.S. Dist. LEXIS 780, at *9, *16 (rejecting agency allegations based on "overall training and supervision of all affiliates and peer review meetings held to assure compliance with the accepted professional standards and ethical requirements" because they did not suggest that alleged principal "ever participated in the decision as to how the audit reports . . . were completed" by the alleged agent).  Plaintiffs' control allegations are no different than those deemed insufficient in *Anwar*, *Star Energy* and *Nuevo Mundo*, and plaintiffs have failed to state a respondeat superior claim against DTTL, even if such a claim survives *Janus*.

**(2)      DTT HK's Audit Opinion Was Not Attributed To DTTL**

In addition, even under a respondeat superior claim, the allegedly false statements still must be attributed to the principal.  *See In re Global Crossing*, 322 F. Supp. 2d 319, 330 (S.D.N.Y. 2004) (holding that "in cases brought under Rule 10b-5(b), defendants can only be

24

held liable for statements that are publicly attributed to them"); *Gabriel Capital, L.P. v. Natwest Finance, Inc.*, 122 F. Supp. 2d 407, 430-31 (S.D.N.Y. 2000) ("[A] principal can be liable under § 10(b) for the misrepresentations of its agent only if the person to whom the misrepresentations were made knows that the agent is acting under the actual or apparent authority of the principal.").  As noted above in Section IV.B.1, plaintiffs have not alleged and cannot allege that the 2009 audit opinion was attributed to DTTL.

## V.    CONCLUSION

For the reasons stated above, plaintiffs' claims against DTTL should be dismissed with prejudice.


Dated:  February 6, 2012
New York, New York                              Respectfully submitted,

                                                LATHAM & WATKINS LLP

                                                By /s/  Miles N. Ruthberg
                                                    Miles N. Ruthberg
                                                    LATHAM & WATKINS LLP
                                                    885 Third Avenue
                                                    New York, NY  10022

                                                    [*additional counsel listed on cover page*]

                                                    *Attorneys for Defendant Deloitte Touche Tohmatsu Limited*

25