UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| IN RE CHINA MEDIAEXPRESS HOLDINGS, INC. SHAREHOLDER LITIGATION | )<br>)<br>)<br>) |

Civil Action No. 11-cv-0804 (VM)

**CLASS ACTION**

This Document Relates To:

**ALL ACTIONS**

---

## DEFENDANT A.J. ROBBINS, P.C.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED AND CONSOLIDATED COMPLAINT

Michael E. Marr (*Pro Hac Vice*)
MICHAEL E. MARR, ATTORNEY-AT-LAW
3107 Tyndale Avenue
Baltimore, Maryland 21214-3429
Telephone: 410-254-7000
Facsimile: 410-254-7220
E-Mail: mmarr@marrlaw.com

*Attorney for Defendant A.J. Robbins, P.C.*

Dated: February 6, 2012

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...........................................................................................i

TABLE OF AUTHORITIES....................................................................................ii

PRELIMINARY STATEMENT.............................................................................1

STATEMENTS OF FACTS....................................................................................3

   I.  Background - A Perusal of Publicly Filed Financial Documents.....................3

   II. Further Explanation of the Work Done by AJ Robbins.................................8

  ARGUMENT.........................................................................................................10

   I.  THE AMENDED COMPLAINT FAILS TO COMPLY WITH THE PLEADING
      REQIREMENTS IN CHARGING A SECTION 10(b) AND RULE 10b-5 CLAIM
      AGAINST DEFENDANT A. J. ROBBINS, INC.......................................................10

      A.    Plaintiffs fail to plead a Section 10(b)/Rule 10b-5 claim with particularity by
          not complying with the heightened pleading requirements of Rule 9(b)
          and the Private Securities Litigation Reform Act of 1995 ("PSLRA")...............10

      B.    Plaintiffs fail to allege facts sufficient to establish scienter on the part of
          Robbins and that Robbins acted with motive and opportunity to commit fraud......11

      C.    The Court should not grant Plaintiffs leave to amend........................................15

  CONCLUSION.....................................................................................................15

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 432 (5th Cir. 2002)...................................13

*Accord McLean v. Alexander,* 599 F.2d 1190, 1198 (3d Cir. 1979)...............................12

*Alki Partners, L.P. v. Vatas Holding GmbH,* 769 F. Supp. 2d 478, 499 (S.D.N.Y. 2011)......15

*Cheney,* 2000 WL 1140306, at *12 (attached as Ex. 7)...........................................14

*Chiarenza v. IBSG Int'l, Inc.,* 2010 WL 3463304, at *5 (S.D. Fla. Sept. 2, 2010) ..................................................................................................12

*Ferris, Baker Watts, Inc. v. Ernst & Young, L.L. P.,* 395 F.3d 851, 855 (8th Cir. 2005)........13

*Jeanneret,* 769 F. Supp. 2d 340 at 377.................................................................14

*In re J.P. Jeanneret Assocs., Inc.,* 769 Supp. 2d 340, 377 (S.D.N.Y. 2011)......................13

*In re Lehman Bros. Sec. & ERISA Litig.,* 2011 WL 3211364, at *29 (S.D.N.Y. July 27, 2011)(attached as Ex. 5)...........................................................................12

*In re Parmalat Securities Litigation,* 375 F. Supp. 2d 278, 285.......................................1

*In re Rockefeller Center Properties, Inc. Securities Litigation,* 311 F.3d 198, 216 (3d Cir. 2002) (emphasis added) (*quoting In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1417 (3d Cir. 1997).............................................................11

*In re Royal Dutch/Shell Transport Securities Litigation,* 380 F.Supp.2d 509, 566 (D.N.J 2005) (quoting Nappier, 227 F.Supp.2d at 276)...............................................................13

*In re SmarTalk Teleservs., Inc. Sec. Litig.,* 124 F. Supp. 2d 505, 518 (S.D. Ohio 2000).........12

*Institutional Investors Group v. Avaya, Inc.,* 564 F.3d 242, 263 (3d Cir. 2009)...................10

*Malone v. Microdyne Corp.,* 26 F.3d 471, 479 (4th Cir. 1994)......................................13

*Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc.,* 747 F. Supp. 2d 406, 412......11 (S.D.N.Y. 2010)

*Nappier v. Price Waterhouse Coopers LLP*, 227 F.Supp.2d 263, 275 (D.N.J. 2002)..….11,12,13

*National Junior Baseball League v. Pharmanet Development Group, Inc:*, 720 F.Supp.2d
517,557 (D.N.J. 2010)………………………………………………………………………….13


*Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)………………………………………....12

*Oneida Indian Nation v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003), *rev 'd on other
grounds*, 544 U.S. 197 (2005)……………………………………………………………….15

*Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1192 (10th Cir. 2003)……………………………13

*Saxton, Inc. Sec. Litig.*, 156 Fed.Appx. 917,920 (9th Cir. 2005)…………………………13

*State of Wisconsin Investment Bd. V. KPMG LLP,* Civ. No. 01-751, slip op.
At 14 (D.N.J. June 15, 2001)(*"SWIB"*)……………………………………………………11


*Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84-85 (2d Cir. 1999)…………………………13

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,* 552 U.S. 148, 157 (2008)………….10

*Tellabs, Inc. V. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 314 (2007)………………...…..11

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 563 (6th Cir. 2005)……………...…13

*Ziemba v. Cascade Int'l, Inc.*, 256 FJd 1194, 1208 (11th Cir. 2001)…………………………13


256 F.3d 1194 (11th Cir. 2001) …………………………………………………………….17

## **Federal Statutes**

15 U.S.C. 78a(10)(b) ……………………………………...1, 2, 11, 12, 14, 18, 19, 21, 22, 23

15 U.S.C. 78aa ……………………………………………………………………...11, 12, 14

15 U.S.C. 78u-4(b)(1) ………………………………………………………………………16

15 U.S.C. 78u-4(b)(2) ………………………………………………………………………14

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Rules of Civil Procedure**

Fed. R. Civ. P. 9(b) ...........................................................................................2, 14, 22, 23

Fed. R. Civ. P. 12(b)(6) ....................................................................................................1

Fed. R. Civ. P. 23.1(b) ...................................................................................................23

## PRELIMINARY STATEMENT

This action was originally filed as a class action on February 4, 2011, covering a "Class Period" "between November 8, 2010 and February 3, 2011, inclusive... seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act")." (D.I. 1) Thereafter on October 25, 2011 Class Plaintiffs filed an Amended and Consolidated Complaint increasing the "Class Period"  to "between October 5, 2009, and March 11, 2011, inclusive... seeking to pursue remedies under the Securities and Exchange Act of 1934 (the "Exchange Act")."(D.I. 63) A Notice of Errata was filed on October 31, 2011, containing a corrected copy and substitute for docket item 63.  The Amended and Consolidated Complaint ("Complaint") asserts four (4) causes of action (D.I. 64, ¶¶ 155-174) involving nine (9) Defendants.  Defendant A.J. Robbins, P.C., ("Robbins") a Denver, Colorado accounting firm,  referred to as an "Auditor Defendant"  is charged in Count I only for violation of Section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b-5 (D.I. 63, ¶¶155 - 159). Other than Count I, Robbins is specifically mentioned or directly referred to in sixteen (16) of the one hundred seventy-six (176) paragraphs of the Complaint. (¶¶ 7, 8, 35, 70, 72, 99, 101, 110, 111, 112, 113, 118, 119, 144, 145 and 146).

This is Robbins' Memorandum in of Law in Support of its Motion to Dismiss Plaintiffs' Complaint.  Contemporaneously with this Memorandum in of Law, Robbins has filed a Notice of Motion to Dismiss Count I of the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and a Declaration by Michael E. Marr, Esquire with publicly filed documents attached as exhibits in support of its Motion.  Local Civil Rule 7.1. (3); *In re Parmalat Securities Litigation,* 375 F. Supp. 2d 278, 285.

## STATEMENT OF FACTS

### I.   Background - A Perusal of Publicly Filed Financial Documents

Robbins was introduced to Hong Kong Mandefu Holdings, Limited ("HKM") on December 21, 2008.  On January 9, 2009, Robbins was engaged by HKM and during the period from January 12, 2009 through February 26, 2009, Robbins conducted extensive audit field work in connection with its agreed-upon undertaking.  From April 13-20, 2009 Robbins entered into discussions with consultants and investment bankers for TM Entertainment ("TM"). On April 23, 2009 Robbins sent a draft of TM financial statements for 2006-2008 to Investment Bankers.

On May 1, 2009, HKM entered into a share exchange agreement with TM and also filed Form 8-K with the Securities and Exchange Commission ("SEC") (See Marr Declaration Exhibit A).[1] Robbins continued review and field work in China, and on June 22, 2009 announced unaudited financial statements for 3-31-08 and 3-31-09 for HKM.  (Marr Declaration Ex. B).

On July 2, 2009, TM filed its initial Proxy Statement pursuant to Section 14(a) of the Securities Exchange Act of 1934 with the SEC including audited and reviewed HKM statements.[2] On July 29, 2009, TM received its first comment letter on the proxy statement filed on July 2, 2009 with the SEC with only two comments about HKM's financial statements, one requesting information on accounting policies and one regarding how the audit was performed, as follows:

### Hong Kong Mandefu Holding Limited financial statements

### Report of Independent Registered Public Accounting Firm, page F-27

---

[1] References to "(Marr Declaration Ex. ___)" represent Exhibits referred to Declaration of Michael E. Marr, Esquire dated February 6, 2012 and filed herein contemporaneously with this Memorandum.

[2] http://sec.gov/Archives/edgar/data/1399067/000095012309020048/y78076prem14a.htm#297. (See pp.F-27--F-48 for **audited** financials and F-49--F-70 for **unaudited** financials.(Scroll from p.1 to p.177).

> **We note that Hong Kong Mandefu Holdings, Limited's audit report was signed by an audit firm based in Denver, Colorado.  We also note that it conducts almost all of its operations, generates substantially all of its revenues and located its assets in China.  After asking your auditor, please tell us where the majority of the audit work was conducted and how they concluded that it is appropriate to have an audit report issued by an auditor licensed in Denver, Colorado.** (Marr Declaration Ex. C, p. 13, ¶67)(Emphasis in original).

On August 12, 2009, TM responded to the above as follows:

> AJ. Robbins, PC, a Denver CPA firm, is a member of Polaris International, one of the largest and strongest international associations of independent accounting firms in the world, consisting of over 200 firms in 90 countries.  The partners and managers of AJ Robbins, PC did not rely upon the work of an affiliate firm, but utilized the staff of the affiliate firm (CCIF CPA, LTD) as if it were their own.  The staff was trained in the use of PCAOB audit programs and documentation techniques.

> Two partners of AJ. Robbins, PC visited CME's offices in Fuzhou on two separate occasions during the audit process.  Audit planning was done both in person with the staff of CCIF in Fuzhou and Hong Kong as well as via email and telephone.  The majority of the audit fieldwork, in Fuzhou, was conducted by two audit partners from AJ. Robbins, PC and one of their staff members and three staff members and a manager from CCIF simultaneously.  Audit documentation, which was not in English was translated either by CCIF staff members or by Chinese speaking staff in Denver.  Differences between Chinese GAAP and U.S. GAAP were discussed at length and adjustments for reporting in U.S. GAAP were made by the Company.  Detailed supervision and review was conducted in the field by the two audit partners, and application of U.S. GAAP and PCAOB auditing standards were consistently applied.  Final documentation and review of workpapers was performed in Denver upon the team's return to the Denver office. (Marr Declaration Ex. D, p.16 at ¶67)

In addition, on August 12, 2009 TM filed its amendment No. 1 to its proxy statement originally filed on July 2, 2009 as a result of SEC's comment letter.[3]

---

[3]http://sec.gov/Archives/edgar/data/1399067/000095012309034091/y78076prprer14a.htm#297. (See F-27--70, after pp. 1-181).

3

On August 25, 2009 TM received correspondence from the SEC, again referencing HKM financial statements.[4]   Although the web link is unavailable, TM's reply correspondence dated September 1, 2009 contains repeat of SEC's question in Paragraph 20 "please update your financial statements to provide interim financial statements for the periods ended June 30, 2009."

> TM provided the following in response to the request of August 25, 2009:
>
> We have updated TM's financial statements to provide interim financial statements for the period ended June 30, 2009.  We expect to update CME's interim financial statements for the period ended June 30, 2009 and the relevant pro forma financial statements of TM and CME in a subsequent filing, when CME's interim financial statements for the period ended June 30, 2009 become available.  (Marr Declaration Ex. E, p. 6, ¶20).

On the same day (September 1, 2009) TM filed amendment No. 2 to its proxy statement.[5]

Thereafter on September 11, 2009 TM filed the 2009 first half financial results for HKM (d/b/a China MediaExpress "CCME"), including consolidated statements of operations and other comprehensive income showing comparison of six months ending June 30th for 2008 and 2009 (Unaudited) (Marr Declaration Ex. F). On the same day (September 11, 2009), TM receives comment letter No. 3 from the SEC revealing no accounting comments for consideration/revision, etc. (Marr Declaration Ex. G).

On September 18, 2009 TM responded to comment letter No. 3 and on that same day files its third amendment to the proxy statement. (Marr Declaration Ex. H).[6] On September 25, 2009 TM received comment letter No. 4, again without accounting comments (Marr Declaration Ex. I),

---

[4]Unfortunately, the web link is not available.

[5]http://sec.gov/Archives/edgar/data/1399067/000095012309040199/y78076r2prer14a.htm

[6]http://sec.gov/Archives/edgar/data/1399067/000095012309044240/y78076r3prer14a.htm

4

and responds to comment letter No. 4 on September 30, 2009 (Marr Declaration Ex. J).   As a consequence of comment letter No. 4, on the same day TM filed amendment No. 4 to its proxy statement.[7]

After filing amendment No. 4 to its proxy statement, the next day on October 1, 2009 TM receives comment letter No. 5, again with no accounting comments. (Marr Declaration Ex. K). The following day, October 2, 2009, TM responds to comment letter No. 5 (Marr Declaration Ex. L) and on October 5, 2009 files its fifth and final amendment to its proxy statement.  See p.1, likewise referring to "(Amendment No. 5)."[8]  On the same day, the SEC responded indicating that it had completed its review of the proxy statement and had no further comments (Marr Declaration Ex. M).

Following SEC's October 5, 2009 letter TM announced shareholder approval of a business combination with HKM on October 15, 2009 (Marr Declaration Ex. N).  Thereafter on October 21, 2009 TM dismissed its independent registered accounting firm (Eisner, LLP) and retained Robbins. (Marr Declaration Ex. O, page 5, Item 4.01). On November 16, 2009, CCME filed Form 10-Q with the SEC for its quarterly period ended September 30, 2009 (Marr Declaration Ex. P). Robbins performed the review regarding TM activity in connection with the Form 10-Q (Marr Declaration Ex. P pp.2-6).   On the same day, CCME filed its Form 8-K.  Of significance is the review report of independent registered public accounting firm (Robbins) on page 5 of the Form 8-K indicating that it conducted its reviews in accordance with the standards of the Public Company

---

[7]http://sec.gov/Archives/edgar/data/1399067/000095012309047346/y78076r4prer14a.htm See p.1, referring to filing as: "Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 (Amendment No. 4)".

[8]http://sec.gov/Archives/edgar/data/1399067/000095012309048061/y78076dmdefm14a.htm

Accounting Oversight Board (United States).   This statement contains even more significance when it (Marr Declaration Exhibit Q, p.5) is compared to the conclusory allegations regarding Robbins actions in this matter. Plaintiffs' conclusory allegations of auditor misconduct against Robbins (D.I. 64, ¶¶ 7, 8, 35, 70, 72 99, 101, 110 through 113, 116 through 118, 144 through 146 and 156 through 159) have no basis for naming Robbins as a Defendant in this matter, because they are not and cannot be shown to have been based on matters in this case.   Allegations about "red flags", knowledge of wrongdoing, scienter, conscious disregard of truth, grossly negligent audit procedures in multiple instances on an ongoing basis  and PCAOB investigation results have nothing to do with Robbins conduct in  this matter.  Robbins statement in Marr Declaration Exhibit Q, p.5 clearly reveal PCAOB compliance in connection with the review that Robbins prepared (Marr Declaration Ex. Q, pages 6-35 (F-1 through F-30), not to mention completely emasculating the inference that Plaintiffs erroneously try to support in the Amended Complaint. (D.I. 64, ¶¶ 7, 8, 35, 70, 72 99, 101, 110 through 113, 116 through 118, 144 through 146 and 156 through 159).

Moreover the PCAOB investigations of Robbins had nothing to do with this matter. On December 22, 2008 the PCAOB produced a written report of its first investigation of Robbins. (Marr Declaration Ex. U) The investigation "conducted primary procedures for the inspection from September 25, 2006 to September 28, 2006." (Marr Declaration Ex. U, p. 4) In its cautionary notes concerning the report the PCAOB stated:

> 1.Portions of this report may describe deficiencies or potential deficiencies in the systems, policies, procedures, practices, or conduct of the firm that is the subject of this report. **The express inclusion of certain deficiencies and potential deficiencies, however, should not be construed to support any negative inference that any other aspect of the firm's systems, policies, procedures, practices, or conduct is approved or condoned by the Board or judged by the Board to comply with laws, rules, and professional standards.**

6

> **2.Any references in this report to violations or potential violations of law, rules, or professional standards should be understood in the supervisory context in which this report was prepared. Any such references are not a result of an adversarial adjudicative process and do not constitute conclusive findings of fact or of violations for purposes of imposing legal liability.** Similarly, any description herein of a firm's cooperation in addressing issues constructively should not be construed, and is not construed by the Board, as an admission, for purposes of potential legal liability, of any violation.

> 3. Board inspections encompass, among other things, whether the firm has failed to identify departures from U.S. Generally Accepted Accounting Principles ("GAAP") or Securities and Exchange Commission ("SEC" or "Commission") disclosure requirements in its audits of financial statements. This report's descriptions of any such auditing failures necessarily involve descriptions of the related GAAP or disclosure departures. **The Board, however, has no authority to prescribe the form or content of an issuer's financial statements. That authority, and the authority to make binding determinations concerning an issuer's compliance with GAAP or Commission disclosure requirements rests with the Commission. Any description, in this report, of perceived departures from GAAP or Commission disclosure requirements should not be understood as an indication that the Commission has considered or made any determination regarding these issues unless otherwise expressly stated.** (Emphasis supplied) *Id.* p.2.

On March 31, 2010 the PCOAB produced a written report of its second investigation of Robbins. (Marr Declaration Ex. V) The investigation "conducted primary procedures for the inspection from June 22, 2009 to June 25, 2009." (Marr Declaration Ex. V, p 4). The PCAOB provided its same cautionary notes concerning the second report. This investigation did not involve any facts pertaining to this matter. Moreover neither the PCAOB nor the SEC took any action after conducting the investigations. Plaintiffs contentions regarding these investigations fail to meet the stringent requirements of Rule 9 (b) of the Federal Rules of Civil Procedure and the Private Litigation Securities Reform Act of 1995 ("PSLRA")

On December 4, 2009 after less than a year's independent accounting work, Robbins was replaced by DTT. (Marr Declaration, Ex. R, p. 2, Item 4.01.). Thereafter on December 16, 2009 CMME filed Form S-3 Registration Statement with Robbins consenting to the reference of its

7

audit report in the Form S-3.  (Marr Declaration Ex. S, p.10).  Again, on August 16, 2010 CCME

filed an additional Form S-3 Registration Statement indicating Robbins' consent to a reference to

its audit report therein.  (Marr Declaration Ex. T, p.12).

## II.    Further Explanation of the Work Done by AJ Robbins

TM was formed in 2007.  Its October 17, 2007 prospectus referred to it as a "newly formed

blank check company" in order to effect "a merger, capital stock exchange, asset acquisition or

other similar business combination." (D.I. ¶53).   Robbins, who was engaged in January, 2009 by

HKM, provided TM with a draft of its audit opinions on HKM's financial statements for fiscal

years 2006, 2007 and 2008.   According to the Amended Complaint, in May, 2009, Robbins

provided TM its audit opinions on HKM's financial statements for fiscal years 2006--2008

(http://sec.gov/Archives/edgar/data/1399067/000095012309020048/y78076prem14a.htm#297).

SEC filings reflect that on May 1, 2009 TM entered into a share exchange agreement with HKM.

(Marr Declaration Ex. A). On or before September 11, 2009, Robbins provided TM its review

opinion of financial statements of HKM's unaudited statement for the first six months of 2009, as

well as the first six months of 2008, indicating that Robbins was not aware of any material

modifications needed to conform the financial statements to generally accepted accounting

principles (Marr Declaration Ex. F).

During the period from May 1, 2009, when HKM and TM entered into their share exchange

agreement, until October 5, 2009, SEC records reflect that TM filed its initial proxy statement on

July 2, 2009, with five corrective amendments thereto as reflected in the Preliminary Statement,

*supra.*   The first comment letter contained two accounting comments about HKM financial

statements which requested information on accounting policies and how the audit was performed.

(See Marr Declaration Ex. C, p. 13, ¶67).  These comments were satisfactorily responded to by TM on August 12, 2009.  (Marr Declaration Ex. D, p.16 at ¶67).  On August 25, 2009, TM received its second comment letter asking two accounting questions regarding HKM financial statements requesting clarification of information on an accounting policy previously requested and an updated disclosure for another accounting policy.  These requests were promptly responded to on September 1, 2009.  (Marr Declaration Ex. E, p. 6, ¶20).  The remaining comment letters from the SEC and responses involve no comments on financial information or accounting.[9]

Each of TM's five amendments was filed as part of five amended proxy statements.[10]  On October 5, 2009, SEC completed its review of the fifth and final proxy statement with no further comments.  (Marr  Declaration Ex. M).  On October 15, 2009, TM announced shareholder approval of its business combination with HKM (Marr Declaration Ex. N).  On October 21, 2009, TM dismisses independent registered accounting firm Eisner, LLP and retains Robbins as its independent registered accounting firm (Marr Declaration Ex. O).  On November 16, 2009, CCME (f/k/a TM) files its third quarter Form 10-K, for which Robbins performed a review of TM activity only.  (Marr Declaration, Ex. P, pp. 2-6).  Also on November 16, 2009, CCME files its Form 8-K to include September 30, 2009 and 2008 reviewed financial statements.  (See Marr Declaration Ex. Q and particularly, p. 5 where Robbins discusses conducting its reviews filed with the SEC on November 16, 2009 in compliance with standards required by of the Public Company Accounting

---

[9]See e.g. Request No. 3 of September 11, 2009. (Marr Declaration Ex. G);  TM's response of September 18, 2009 to SEC request No. 3. (Marr Declaration Ex. H); SEC comment letter No. 4 received on September 25, 2009 (Marr Declaration Ex. I);  TM's response thereto of September 30, 2009 (Marr  Declaration Ex. J); SEC comment letter No. 5 received by TM on October 1, 2009 (Marr Declaration Ex. K) and responded thereto on October 2, 2009 (Haverly Declaration Ex. L).

[10]The SEC web addresses for the five amended proxy statements are identified in this Brief's Statement of Facts, Section I, above.

Oversight Board (United States) ("PCAOB").  Thereafter, on December 4, 2009, CCME dismissed Robbins as its auditor and engaged DTT as CCME auditors.  (See Marr Declaration Ex. R, p. 2, Item 4.01.).  Later, on December 16, 2009 and again on August 16, 2010, Robbins consented to references to his opinions in connection with SEC filings of those respective dates. (See Marr Declaration Ex. S, p.10 and Ex. T, p12).

## ARGUMENT

### THE AMENDED COMPLAINT FAILS TO COMPLY WITH THE PLEADING   REQIREMENTS IN CHARGING A SECTION 10(b) AND RULE 10b-5 CLAIM  AGAINST DEFENDANT A. J. ROBBINS, INC

**A.**       **Plaintiffs fail to plead a Section 10(b)/Rule 10b-5 claim with particularity by not complying with the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA")**

Plaintiffs have failed to state a claim for securities fraud against Robbins.  To state a claim under Section 10(b), Plaintiffs must allege with specificity - pursuant to the heightened pleading requirements of Rule 9(b)[11] and the Private Securities Litigation Reform Act of 1995 ("PSLRA") - "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,* 552 U.S. 148, 157 (2008).

A securities fraud plaintiff must plead "all allegations" with particularity.  *Institutional Investors Group v. Avaya, Inc.,* 564 F.3d 242, 263 (3d Cir. 2009).  In Third Circuit cases, "[t]his

---

[11]"The imposition of a heightened pleading requirement in fraud actions serves important objectives: "'Rule 9(b)'s heightened pleading standard gives defendants notice of the claims against them, provides an increased measure of protection for their reputations, and reduces the number of frivolous suits brought solely to extract settlements.'" *In re Rockefeller Center Properties, Inc. Securities Litigation*, 311 F.3d 198, 216 (3d Cir. 2002)(*qutoing In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1418 (3d Cir. 1997)

particularity requirement has been *rigorously applied* in securities fraud cases." *In re Rockefeller Center Properties, Inc. Securities Litigation*, 311 F.3d 198, 216 (3d Cir. 2002) (emphasis added) (*quoting In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1417 (3d Cir. 1997). For scienter, a securities fraud plaintiff must "*state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.*" 15 U.S.C. §78u-4(b)(2)(emphasis supplied). "To qualify as 'strong' . . . an inference of scienter must be more than merely plausible or reasonable - it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. V. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 314 (2007). Thus, a district court "must take into account plausible opposing inferences." *Id.* at 323.

### B. Plaintiffs fail to allege facts sufficient to establish scienter on the part of Robbins and that Robbins acted with motive and opportunity to commit fraud

"[C]ourts have consistently found incredible allegations of an auditor's purported participation in a client's fraud." *State of Wisconsin Investment Bd. V. KPMG LLP,* Civ. No. 01-751, slip op. At 14 (D.N.J. June 15, 2001)(*"SWIB"*)(Ex. 1)(dismissing Section 10(b) claim). Because an outside auditor "depends on its client to provide the information base for the audit," *Nappier v. Pricewaterhouse Coopers LLP,* 227 F. Supp. 2d 263, 279 (D.N.J. 2002), "[t]he standard for pleading auditor scienter is *demanding."  Meridian Horizon Fund, LP v. Tremont Group Holdings, Inc.,* 747 F. Supp. 2d 406, 412 (S.D.N.Y. 2010)(emphasis supplied). "Merely alleging that the auditor had access to the information by which it could have discovered the fraud is not sufficient." *Id.* at 413. Rather, Plaintiffs must identify conduct by Robbins "approximating *an actual intent to aid in the fraud* being perpetrated by the audited company" and "set forth facts sufficient to warrant a finding that the auditor did not actually hold the [audit] opinion it expressed or that it knew that it had no reasonable basis for holding it." *In re*

11

*Lehman Bros. Sec. & ERISA Litig.,* 2011 WL 3211364, at *29 (S.D.N.Y. July 27, 2011)(attached as Ex. 2)(emphasis supplied). *Accord McLean v. Alexander,* 599 F.2d 1190, 1198 (3d Cir. 1979); *Nappier v. Price Waterhouse Coopers LLP*, 227 F.Supp.2d 263, 275 (D.N.J. 2002); *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).

Plaintiffs do not come close to meeting this demanding standard.  In ¶¶ 7, 8, 35,72, 99, 101, 110, 111, 112, 113, 118, 119, 144, 145 and 146 of its Amended Complaint (D.I. 64) Plaintiffs allege unsupported wild conclusions about a failure of Robbins to properly conduct its audits, about Robbins possessing  knowledge about or recklessly disregarding that its audit reports of HKM 2006-2008 would be disseminated in TM's October 2009 Proxy and in CCME's 2009 10- K filing on March 31, 2010 (D.I. 64, ¶ 35); and by incompetently conducting its work, violating GAAS standards, ignoring material facts, ignoring red flags, making false claims, etc.(D.I. 64, ¶¶ 7, 8, 35, 72, 99, 101, 110, 111, 112, 113, 118, 119), and PCAOB violations (D.I. 64, ¶¶144, 145 and 146).

 None of these allegations by Plaintiffs is supported by any proof of what specific facts with particularity that Robbins knew and should be included in what amounts to Plaintiffs' information and belief.[12]  Plaintiffs fail to allege any facts showing that Robbins was aware that HKM 2006-2008 and CCME's 2009 financial statements were false when it allowed its audit opinion to be included in CCME's 2009 10-K filing on March 31, 2010.  Instead, Plaintiffs speculate that the issues DTT identified in 2011 during its audit procedures on CCME's 2010 financial statements would have been discovered earlier had DTT not violated GAAS (D.I. 64, ¶¶ 93-118).  Plaintiffs speculate throughout their Complaint that if the Auditor Defendants had properly performed confirmation procedures during

---

[12] *See* 15 U.S.C. §78u-4(b)(1) (securities fraud plaintiff must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed").

12

the 2008 and 2009 audits, they would have discovered similar issues to those identified in 2011.  (D.I.

64, ¶¶ 99-119).  This type of fraud-by-hindsight pleading against an auditor has been routinely rejected;

- *In re J.P. Jeanneret Assocs., Inc.,* 769 Supp. 2d 340, 377 (S.D.N.Y. 2011)("[A]lleging that [the auditor] 'would' or 'could' or even 'should' have known of Madoff's fraud if only it had paid attention to the 'red flags' is insufficient to make out a 10(b) claim.");[13]

- *SWIB,* slip op. at 16-18 ("Although SWIB asserts that KPMG should have done more, fraudulent intent cannot be inferred without evidence of an auditor's specific knowledge of a fraud. . . .  The assertion that KPMG would have learned that the list was incomplete had it compared PCN's list with actual invoices is unavailing.")(attached as Ex. 1);

- *In re SmarTalk Teleservs., Inc. Sec. Litig.,* 124 F. Supp. 2d 505, 518 (S.D. Ohio 2000)("At most, Plaintiffs' allegations amount to a speculative attempt to connect generally stated GAAS violations with information discovered after the fact, in an attempt to create the appearance of recklessness.  This attempt fails.").

- *Chiarenza v. IBSG Int'l, Inc.,* 2010 WL 3463304, at *5 (S.D. Fla. Sept. 2, 2010) ("[A] plaintiff cannot establish scienter by alleging that an auditor would have discovered the fraud had it not violated GAAP or GAAS)(attached as Ex. 3). [14]

What Plaintiffs  must plead, but have completely failed to plead, are contemporaneous facts

indicating that, at the time it issued  its review opinions, Robbins knew, but deliberately ignored,

---

[13] So called "red flags," which might be deemed to have put a defendant on notice of improprieties must be closer to "smoking guns" than mere warning signs, *See Nappier v. Pricewaterhouse Coopers LLP,* 227 F.Supp.2d 263, 278 (D.N.J. 2002).  Moreover, "allegations that an auditor must have known, by virtue of its role as auditor, are insufficient by themselves to permit an inference of recklessness." *Id., In re Royal Dutch/Shell Transport Securities Litigation,* 380 F.Supp.2d 509, 566 (D.N.J 2005) (quoting *Nappier,* 227 F.Supp.2d at 276).

[14] Indeed, a plethora of cases throughout the nation uniformly have held that allegations of scienter based on GAAP violations do not create the requisite strong inference of scienter unless plaintiffs complaint alleges "more." *See National Junior Baseball League v. Pharmanet Development Group, Inc:,* 720 F.Supp.2d 517,557 (D.N.J. 2010); *Wyser-Pratte Mgmt. Co.* v. *Telxon Corp.,* 413 F.3d 553, 563 (6th Cir. 2005); *Ferris, Baker Watts, Inc.* v. *Ernst & Young, L.L. P.,* 395 F.3d 851, 855 (8th Cir. 2005); *Saxton, Inc. Sec. Litig.,* 156 Fed.Appx. 917,920 (9th Cir. 2005); *Pirraglia* v. *Novell, Inc.,* 339 F.3d 1182, 1192 (10th Cir. 2003); *Abrams* v. *Baker Hughes, Inc.,* 292 F.3d 424, 432 (5th Cir. 2002); *Ziemba* v. *Cascade Int'l, Inc.,* 256 FJd 1194, 1208 (11th Cir. *2001); Stevelman* v. *Alias Research, Inc.,* 174 F.3d 79, 84-85 (2d Cir. 1999); *Malone* v. *Microdyne Corp.,* 26 F.3d 471, 479 (4th Cir. 1994).

that HKM's 2006, 2007, 2008 and September 2009 financial statements were misstated. The contemporaneous facts lead to the opposite conclusion. The "red flags" which Plaintiffs now claim, in hindsight, should have alerted auditors Robbins and DTT to that fraud. Plainly, the more compelling inference is that, to the extent that there was fraud at CCME and its predecessors HKM and TM and that the fraudulent activities were hidden from their board of directors, auditors and sophisticated investors, and that "the auditor's failure to discover the fraud [earlier] merely places it alongside . . . every other interested party." *Jeanneret,* 769 F. Supp. 2d 340 at 377.

Indeed, the thrust of Plaintiffs Complaint is that CCME repeatedly and in various ways concealed its wrongdoing (D.I. 64, ¶¶ 82 - 98), and that DTT resigned after it uncovered "serious issues" relating to CCME's financial statements and "CCME did not provide DTT with the information and documents it requested." (D.I. 64, ¶93, Ex. A). These facts undermine any plausible inference of fraud on the part of Robbins and DTT. See Pub. Emps.' Ret. Ass'n of Colorado v. Deloitte & Touche, LLP, 551 F.3d 305, 314 (4th Cir. 2009)("The most plausible inference that one can draw from the fact that [the company] concealed [its fraud] from its accountants is that the accountants were uninvolved in the fraud."); *Cheney*, 2000 WL 1140306, at *12 (attached as Ex. 4)("the fact that KPMG discovered and revealed the [improper] revenue recognition policy the following year counters an inference of scienter")(emphasis supplied).

Plaintiffs are ultimately reduced to arguing that Robbins should have done more when it audited HKM's 2006-2008 and reviewed September 2009 financial statements. That is patently insufficient.

C.    **The Court should not grant Plaintiffs leave to amend the Complaint.**

Without a basis to believe that an amendment would be anything but futile, a request for leave to amend is properly denied. *Oneida Indian Nation v. City of Sherrill*, 337 F.3d 139, 168 (2d Cir. 2003), *rev 'd on other grounds*, 544 U.S. 197 (2005); *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 499 (S.D.N.Y. 2011). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." In this case, for the reasons discussed at length above, the unassailable documents, including the October 2009 Proxy, demonstrate that any securities claim against Defendants would be meritless, and that any amendment would thus be futile.

## CONCLUSION

For all these reasons, Robbins respectfully requests that the Court dismiss Plaintiff's claims against it and grant such other and further relief as the Court deems appropriate.

Respectfully submitted,

/s/ *Michael E. Marr,*    Pro  Hac  Vice  .
Michael E. Marr (Pro Hac Vice)
**MICHAEL E. MARR, ATTORNEY-AT-LAW**
3107 Tyndale Avenue
Baltimore, Maryland 21214-3429
Telephone: 410-254-7000
Facsimile: 410-254-7220
E-Mail: mmarr@marrlaw.com

Attorney for Defendant A.J. Robbins,P.C.

Dated: February 6, 2012

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 6th day of February, 2012, I caused to be electronically filed the foregoing Memorandum of Law by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have registered to receive notices from the court under the CM/ECF system, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

/s/Michael E. Marr,       Pro Hac Vice       .
Michael E. Marr MD Federal Bar # 99
**Michael E. Marr, Attorney-at-law**
3107 Tyndale Avenue
Baltimore, Maryland 21214-3429
Telephone:     410-254-7000
Facsimile:     410-254-7220
E-mail:        mmarr@marrlaw.com

*Attorney for Defendant A.J. Robbins P.C,*

16

## MANUAL NOTICE LIST

Howard G. Smith
**SMITH & SMITH**
3070 Bristol Pike
Bensalem, PA  19020

Jeniphr Breckenridge
**HAGENS BERMAN SOBOL SHAPERO LLB**
1918 Eighth Avenue, Suite 3300
Seattle, Washington  98101

Michael Goldberg
**GLANCY BINKOW & GOLDBERG, LLP (CA)**
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067

Patrick Vincent Dahlstrom
**POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP**
100 Park Avenue, 26th Floor
New York, NY  10017