Eugene R. Licker (SBN EL-0334)
elicker@loeb.com
Laura M. Vasey (SBN 4158200)
lvasey@loeb.com
LOEB & LOEB LLP
345 Park Avenue
New York, NY  10154
Telephone: 212.407.4000
Facsimile: 212.407.4990

*Attorneys for Defendant China MediaExpress Holdings, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
                                     :

*IN RE CHINA MEDIAEXPRESS HOLDINGS,*  :   No. 11-CV-804-VM
*INC. SHAREHOLDER LITIGATION*        :

                                       :   **ORAL ARGUMENT REQUESTED**

                                       :
-------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CHINA MEDIAEXPRESS HOLDINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' AMENDED AND CONSOLIDATED COMPLAINT

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS .................................................................................... 4

     CCME Comes Under Attack By Self-Interested Short Sellers ......................... 4

     The Public Counterpoint to the Short Sellers' Reports ................................... 7

     Professionals and Others Are Scared Off by the Shorts .................................. 7

     Independent Investigation and Delisting ......................................................... 9

     This Action ....................................................................................................... 9

ARGUMENT ...................................................................................................... 10

I.     LEGAL STANDARDS ............................................................................... 10

     A.    The Standard for a Motion to Dismiss under 12(b)(6) ..................... 10

     B.    The Pleading Requirements. .............................................................. 10

II.    PLAINTIFFS' SECTION 10(b) CLAIM SHOULD BE DISMISSED FOR
      FAILURE TO SATISFY THE PLEADING REQUIREMENTS ................... 12

     A.    Plaintiffs Fail to Plead Facts Demonstrating Why CCME's SEC Filings
         Were Materially False or Misleading When Made ............................ 13

          1.    The Short Sellers' Allegations Do Not Support a Reasonable
               Inference of Falsity. ................................................................. 13

          2.    Neither the Issues Raised by DTT Nor DTT's Resignation
               Supports a Reasonable Inference of Falsity. ............................ 18

     B.    Plaintiffs Fail to Plead Facts Supporting a Strong Inference of Scienter. .......... 19

          1.    Plaintiffs Must Establish Scienter with Regard to an Individual
               Whose Intent May Be Imputed to CCME ................................. 19

          2.    Plaintiffs Fail to Establish A Strong Inference of Scienter with
               respect to Defendants Cheng and Lam. .................................... 20

i

III.    PLAINTIFFS' SECTION 20(A) CLAIM AGAINST DEFENDANTS CHENG
        AND LAM SHOULD BE DISMISSED.........................................................................22

CONCLUSION.....................................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Acito v. IMCERA Group, Inc.,*
  47 F.3d 4724 (2d Cir.1995)..................................................................................20

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009)........................................................................................10

*In re Astea Int'l Inc. Secs. Litig.,*
  No. 06-1467, 2007 WL 2306586 (E.D. Pa. Aug. 9, 2007) .......................................11

*In re Bausch & Lomb, Inc. Sec. Litig.,*
  592 F. Supp. 2d 323 (W.D.N.Y. 2008) ...............................................14, 17, 18, 19

*Bd. Of Trustees of City of Ft. Lauderdale Gen. Employees Ret. Sys. v. Mechel OAO,*
  09 Civ. 3617, 2011 3502016 (S.D.N.Y. Aug. 9, 2011) ...............................11, 14, 20

*California Public Employees' Ret. Sys. v. Chubb Corp.,*
  394 F.3d 126 (3d Cir. 2004)......................................................................... passim

*In re China Educ. Alliance, Inc. Secs. Litig.,* No. CV 10-9239 CAS (JCx),
  2011 WL 4978483 (C.D. Cal. Oct. 11, 2011) .........................................................17

*Citadel Equity Fund Ltd. V. Aquila, Inc.*
  168 F. App'x 474, 2006 WL 451986 (2d Cir. Feb. 22, 2006) ......................................4

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.,*
  686 F. Supp. 2d 404 (D. Del. 2009)......................................................15, 17, 19, 21

*Dean v. China Agritech, Inc.,* No.
  CV 11-01331-RGK (PJWx), 2011 WL 5148598 (C.D. Cal. Oct. 27, 2011) ...............17

*In re Doral Fin. Corp. Sec. Litig.,*
  563 F. Supp. 2d 461 (S.D.N.Y. 2008), *aff'd*, 344 F. App'x 717 (2d Cir. 2009).....................11

*Gary Redwen v. Sino Clean Energy, Inc.,*
  No. 11-CV-03936 PA (SSx) (C.D. Cal. Jan. 30, 2011) .........................................2, 17

*General Motors Corp. v. New A.C. Chevrolet, Inc.,*
  263 F.3d 296 (3d Cir. 2001)................................................................................11

*Goplen v. 51job, Inc.,*
  453 F. Supp. 2d 759 (S.D.N.Y. 2006).....................................................................11

*In re Health Mgmt. Sys., Inc. Sec. Litig.,*
    No. 97 CIV. 1865(HB), 1998 WL 283286 (S.D.N.Y. June 1, 1998) .......................................21

*Henning v. Orient Paper, Inc.,*
    No. CV 10-5887-VBF (AJWx), 2011 WL 2909322 (C.D. Cal. July 20, 2011) ......................17

*In re Initial Pub. Offering Sec. Litig.,*
    241 F. Supp. 2d 281, 328 (S.D.N.Y. 2003) .................................................................................10

*Kalnit v. Eichler,*
    264 F.3d 131 (2d Cir. 2001) .........................................................................................................20

*Katz v. China Century Dragon Media, Inc.,*
    No. CV 11-02769 JAK, 2011 WL 6047093 (C.D. Cal. Nov. 30, 2011) ...............................2, 17

*Local No. 38 Int'l Bhd. Of Elec. Workers Pension Fund v. Am. Exp. Co.,*
    724 F. Supp. 2d 447 (S.D.N.Y. 2010) ..........................................................................13, 17, 19

*Luminent Mortg. Capital, Inc. v. Merrill Lynch,*
    652 F. Supp. 2d 576 (E.D. Pa. 2009) ..........................................................................................19

*In re MBIA, Inc. Sec. Litig.,*
    700 F. Supp. 2d 566 (S.D.N.Y. 2010) .........................................................................................12

*In re NAHC Inc. Secs. Litig*
    306 F.3d 1314 (3d Cir. 2002) ........................................................................................................4

*Novak v. Kasaks,*
    216 F.3d 300 (2d Cir. 2000) .........................................................................................................21

*In re NYSE Specialists Sec. Litig.,*
    503 F.3d 89 (2d Cir. 2007) ...........................................................................................................10

*Slayton v. Am. Exp. Co.,*
    604 F. 3d 758 (2d Cir. 2010) ........................................................................................................22

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.,*
    531 F.3d 190 (2d Cir. 2008) .........................................................................................................21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ...............................................................................................................10, 12

*Winer Family Trust v. Queen,*
    503 F.3d 319 (3d Cir. 2007) .........................................................................................................19

**STATUTES**

15 U.S.C. § 78u-4(b)(1) ...............................................................................12, 13, 17

15 U.S.C. § 78u-4(b)(2) .........................................................................................1, 12

15 U.S.C. § 78u-4(b)(3)(A) .......................................................................................13

**OTHER AUTHORITIES**

Rule 9(b) ...................................................................................................................11

Rule 12(b)(6) ............................................................................................................10

Defendant China MediaExpress Holdings, Inc. ("CCME" or the "Company") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiffs' Amended and Consolidated Complaint filed on October 31, 2011 ("Amended Complaint" or "Am. Compl."),[1] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs have not and cannot state a claim for violation of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b) against CCME because the Amended Complaint fails to satisfy the pleading requirements imposed by Rule (9)(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(2) (the "PSLRA").[2]

## PRELIMINARY STATEMENT

CCME operates a video advertising network on inter-city and airport express buses in China. Last year at this time, short sellers Citron Research ("Citron") and Muddy Waters Research ("Muddy Waters") published "reports" accusing CCME of fraud. On January 30, 2011, Citron published a "report" questioning whether CCME was "too good to be true" and asserting that Citron had come across information "pointing to" CCME being a fraud. Then on February 3, 2011, Muddy Waters, a one-man short-selling outfit located in China, issued its own "report" regarding CCME. Based on assumptions, random alleged phone calls, and an otherwise unspecified "investigation," Muddy Waters declared CCME, in Muddy Waters' "opinion," to be a fraud. Muddy Waters disclosed that it had a short position in CCME's stock.

---

[1] A copy of Plaintiffs' Amended and Consolidated Complaint filed on October 31, 2011 (the "Amended Complaint" or "Am. Compl.") is attached as Exhibit A to the Declaration of Laura M. Vasey dated February 6, 2012 ("Vasey Declaration"), submitted herewith.

[2] To the extent applicable, incorporated herein by reference are the legal arguments set forth in the memoranda of law submitted by Defendants Theodore Green and Malcolm Bird, Deloitte Touche Tohmatsu ("DTT"), Deloitte Touche Tohmatsu Limited ("DTTL"), Deloitte LLP ("Deloitte"), and/or A.J. Robbins, P.C. in support of their respective motions to dismiss the Amended Complaint.

Other bloggers, with the same or similar motivation, followed suit.   Although the Company issued a factually-supported refutation of the charges, the Company's stock price plummeted, a wave of resignations followed, and the Company was delisted from the Nasdaq. Lawsuits like this one predictably followed.   In response to those lawsuits, the Company's stock price declined further, helping the short sellers to accomplish their goals.

The Amended Complaint is based entirely upon the short sellers' allegations and the resulting questions raised by the Company's independent auditor, Deloitte Touche Tohmatsu ("DTT"), in the wake of the short seller attacks.   Even taken together, these allegations come nowhere near satisfying the factual particularity required to state a claim for violation of Section 10(b) against CCME.

As a number of federal district courts have held, a complaint that simply points to and relies entirely on the unsubstantiated and uncorroborated allegations of short sellers is not sufficiently pleaded.   *See Katz v. China Century Dragon Media, Inc.*, No. CV 11-02769 JAK, 2011 WL 6047093 (C.D. Cal. Nov. 30, 2011) ("*China Century*") (Vasey Decl., Ex. B), and *Gary Redwen v. Sino Clean Energy, Inc.*, No. 11-CV-03936 PA (SSx) (C.D. Cal. Jan. 30, 2011) ("*Sino Clean*") (Vasey Decl., Ex. C).   Plaintiffs must plead **facts** from which a reasonable inference could be drawn that the Company's SEC filings contained material misstatements and supporting a strong inference that the CCME defendants knew or should have known this was the case.   Simply repeating short sellers' allegations, which frequently are based on multiple-level hearsay bottomed on information from unidentified and unqualified sources, is not alleging "facts." That the short seller reports traffic in hyperbole rather than facts is perhaps nowhere more evident than in Citron's statement that "No One in China Has Ever Heard of [CCME]." Am. Compl. ¶

2

82 (at p. 40). Can Plaintiffs really claim to have a good faith basis to allege in a federal complaint that none of the 1.3 billion residents of the PRC have heard of CCME?

Likewise, neither the fact that DTT raised issues in connection with its audit of the Company's 2010 financial statements, nor DTT's subsequent resignation supports the conclusion that the Company materially overstated its financial results. The questions DTT raised in its March 3, 2011 letter to CCME's Audit Committee are just that, questions, none of which were thought by DTT to be sufficiently important to raise prior to the publication of the short sellers' "reports." *See* Am. Compl. ¶¶ 122-143. While these questions may imply the need for additional audit procedures, as DTT concluded, Plaintiffs nowhere explain how they translate into the material overstatement of the Company's financial results for the years 2006 through 2009 and the first three quarters of 2010, as Plaintiffs contend (Am. Compl. ¶ 99). Once again, supposition and innuendo are not substitutes for well-pleaded facts.

As shown below, Plaintiffs' Section 10(b) claim against CCME should be dismissed because Plaintiffs have failed to plead specific facts either demonstrating that the Company's SEC filings contain materially false or misleading statements or giving rise to a strong inference that Messrs. Cheng or Lam or anyone else whose state of mind could be attributed to CCME knew or should have known that the Company's financial statements were materially false or misleading when made. Absent a primary violation of Section 10(b), which does not exist here, Plaintiffs' Section 20(a) claim necessarily fails and also should be dismissed.

**STATEMENT OF FACTS[3]**

CCME is a Delaware corporation with its principal executive offices in Wan Chai, Hong Kong. *See* Am. Compl. ¶ 13.[4]  CCME was founded by Defendant Zheng Cheng, who serves as its Chairman and Chief Executive Officer. *Id.* ¶ 14(a).  CCME operates through contractual arrangements with Fujian Fenzhong Media Co., Ltd., a PRC-company that generates revenue by selling advertisements on its network of video displays installed on inter-city and airport express buses originating in China's most prosperous regions, including the municipalities of Beijing, Shanghai, Tianjin, and Chongqing. *See id.* ¶¶ 56-59, 64.

**CCME Comes Under Attack By Self-Interested Short Sellers**

On January 30, 2011, on the eve of the Chinese New Year, Citron issued an "analyst" report on CCME alleging that CCME is "too good to be true."  In crafting the Amended Complaint, Plaintiffs have simply cut and pasted Citron's allegations that CCME misrepresented, among other things, the scope of the Company's operations, its financial performance, and the extent of the Company's claimed strategic partnership with a government-affiliated entity, and its conclusion that "the Company 'does not exist at the scale that they are reporting to the investing public.'" Am. Compl. ¶¶ 82-84.

Citron's conclusions are largely based upon the alleged lack of media and analyst coverage for CCME and comparisons between CCME's financial results and those of its

---

[3] These facts are derived from the allegations contained in the Plaintiffs' Amended Complaint, as well as from the Company's public filings.  The Court may take judicial notice of the Company's SEC filings. *See* FRE 201; *see also Citadel Equity Fund Ltd. v. Aquila, Inc.*, 168 F. App'x 474, 475-76, 2006 WL 451986, at *1 (2d Cir. Feb. 22, 2006) (unpublished decision) (SEC filings subject to judicial notice); *In re NAHC Inc. Secs. Litig.*, 306 F.3d 1314, 1331 (3d Cir. 2002) (on motion to dismiss, court may consider all documents "integral to or explicitly relied upon in the complaint," as well as public statements, SEC filings, and press releases).

[4] Of course, the well-pleaded facts are taken as true.  In fact, CCME's principal offices are in Fuzhou, not Hong Kong.  The error, however, has no impact on this motion.

supposed competitors. Citron claims that the "clearest example" of CCME's being a fraud is an 87-page report prepared by Analysis International on the Chinese Outdoor LCD Screen Market for the year 2010, which does not mention CCME.

> Citron's web site contains the following disclaimers:
>
> Citron Research makes no representations, and specifically disclaims all warranties, express, implied, or statutory, regarding the accuracy, timeliness, or completeness of any material contained in this site. ...
>
> The principals of Citron Research most always hold a position in any of the securities profiled on the site. ...

*See* http://www.citronresearch.com/index.php/disclamer [sic] (last visited on February 6, 2012).

On February 3, 2011, Muddy Waters, LLC issued a similar "research" report, question[ing] various aspects of CCME's business model and accounting practices." Am. Compl. ¶ 85. Plaintiffs once again have simply cut and pasted Muddy Waters' allegations, including that CCME 'is engaging in a massive 'pump and dump' scheme ... significantly inflating its revenue and earnings in order to pay management earn-outs and inflate the stock price so insiders can sell." *Id.*

Muddy Waters also "questions CCME's legitimacy" by suggesting that CCME "exaggerates the number[] of buses" in its advertising network and claiming that "over half of CCME's network buses do not actually play CCME content." *Id.* This claim purportedly is based upon "advertiser kits" that CCME allegedly provided to prospective advertisers. Muddy Waters Report at 5 (Vasey Decl., Ex. D). However, Muddy Waters does not identify the prospective advertiser that supposedly supplied the information upon which it relies, the accuracy of which CCME challenged (as discussed below).

The Muddy Waters Report (at 1) also contains disclaimers in fine print. Those disclaimers make clear that Muddy Waters should be assumed to hold a short position in the stock covered and that it makes no warranty as to the accuracy of the information provided.

Thereafter, on March 12, 2011, an article was published on the web site Seeking Alpha, entitled "The End of CCME's Fairy Tale." The author purports to have "traveled to China and literally knocked on the door of the Company's corporate headquarters in Hong Kong." *Id.* ¶ 90. The author claims to have taken a tour of the CCME office and that no one was working. *Id.* at ¶¶ 91-92. The author concludes that the "in the main, China MediaExpress is a big fraud." *Id.* ¶ 91. As noted above, the Company's actual headquarters and principal executive offices are in Fuzhou, not Hong Kong, as disclosed in the Company's 2009 Form 10-K. *See* Form 10-K at 53.

**The Public Counterpoint to the Short Sellers' Reports**

CCME promptly responded to the attacks by Citron and Muddy Waters. On February 1, 2011, the Company issued a press release stating that it "strongly disagrees with the views expressed [by Citron Research] and believes that investors should rely on the Company's public reports filed with the Securities and Exchange Commission." Am. Compl. ¶ 84.

On February 7, 2011, the Company issued a press release announcing that it had made available on its investor web site a detailed seven-page letter to shareholders from the Company's Founder and CEO, Mr. Zheng Cheng, refuting the allegations lodged by the short sellers, including refuting Muddy Waters' allegations that CCME has fewer than half the buses under contract compared to CCME's representations; that fewer than half the buses in CCME's network actually show CCME content; and that CCME did not have certain contractual relationships as represented. *Id.* ¶ 87. Copies of the February 7, 2011 press release and letter are

attached as Exhibit E to the Vasey Declaration. The Company's response to the short sellers' allegations was not appended to the Amended Complaint.

In the February 7, 2011 letter, CCME demonstrated the unreliability of the information provided by Muddy Waters. For example, the "media kits" upon which Muddy Waters based its allegation that the Company had less than half of the buses it reported was not prepared by the Company. The Company pointed out the significant discrepancies between the "media kit" relied upon by Muddy Waters, the source of which is unknown, and the Company's official advertising kit. *See* Feb. 7, 2011 Letter at 3 (Vasey Decl., Ex. E). CCME also identified the companies alleged to be "competitors" of CCME and demonstrated that those companies were not in the same industry group as CCME.

On February 17, 2011, Global Hunter Securities, LLC issued a seven-page report reiterating its Buy rating for CCME's stock. *See* Global Hunter LLC Report (Vasey Decl., Ex. F). The report states that it is based upon Global Hunter's due diligence regarding CCME, including reviewing CCME contracts with advertising clients and bus operators, tax filings and bank statements for the last three years, calling or meeting with CCME's top advertising clients and bus operators, meeting with CCME management, and visiting the Shanghai office of CCME's equity investor, CV Starr. The Global Hunter Report was not appended to the Amended Complaint, but it is publicly available.

**Professionals and Others Are Scared Off by the Shorts**

In light of the attacks upon CCME, DTT, on March 3, 2011, disclosed that it encountered certain issues in the course of its year-end audit, including issues related to the "authenticity of bank statements [and] a loss of confidence in bank confirmation procedures carried out under circumstances which DTT believed to be suspicious." *See* 3/29/11 Form 8K/A at 2 and Exhibit

16.2 (DTT letter concurring with description) (Vasey Decl., Ex. G). DTT therefore requested that the bank confirmation process be re-done at the banks' head office and that the issues it raised, all of which were bottomed on the short seller attacks, be addressed by an independent forensic investigation. *See id.*

On March 11, 2011, DTT resigned. Am. Compl. ¶ 88. DTT's letter stated that "no tangible progress" had been made with respect to the issues raised in its March 3, 2011 letter and that it had "lost confidence in the representations of management." *See* 3/17/11 Form 8-K and Exhibit 17.2 (Dorothy Dong Resignation Letter) (Vasey Decl., Ex. H). As disclosed in the Company's Form 8K/A filed on March 29, 2011 (Vasey Decl., Ex. G), the Company believed that it was working to address the issues raised by DTT at the time of its resignation.

Shortly following DTT's resignation as CCME's independent auditor, on March 15, 2011, CCME's Chief Financial Officer Jacky Lam resigned, effective immediately. *See* 3/17/11 Form 8-K and Exhibit 17.1 (Vasey Decl., Ex. H). In his resignation letter, Mr. Lam cited the Chairman and CEO's failure to deal appropriately with DTT's concerns or the short sellers' allegations.

On March 16, 2011, CCME director Dorothy Dong also resigned. *See* 3/17/11 Form 8-K and Exhibit 17.2 (Dorothy Dong Resignation Letter) (Vasey Decl., Ex. H) Ms. Dong did not cite any issues with the Company as a reason for her resignation, but rather expressed her disagreement the conduct of CCME's management resulting in DTT's resignation and the resistance of management to some protective measures that she and other independent directors proposed at a board meeting on March 13, 2011. *Id.*

These defections by professionals, officers, and directors is hardly surprising or unique. In fact, the pattern has repeated itself throughout China since the shorts realized that China-based

U.S. public companies are easy targets upon which they can ply their trade and make significant, and easy, money. In fact, the pattern of short report, lawsuit, defections, government investigations, trading suspension, and delisting, has been repeated myriad times in this sector over the last year. Even where companies have conducted independent investigations, and those investigations have revealed that the short reports are vacuous – including one such situation where the "reporter" was Muddy Waters – the damage done by the short sellers, including the inevitable defections and, in some cases, delisting, is irreversible.

**Independent Investigation and Delisting**

On May 2, 2011, CCME announced that it had retained the law firm DLA Piper to assist in its investigation of the concerns raised by DTT at the time of its resignation as the CCME's independent accounting firm on March 11, 2011. *See* 5/2/11 Form 8-K and Exhibit 99.1 (annexed hereto as Exhibit I). That investigation is ongoing.

On May 17, 2011, the Nasdaq Stock Market ("NASDAQ") notified CCME that it would suspend trading of the Company's shares effective May 19, 2011. *See* 5/19/11 Form 8-K and Exhibit 99.1 (annexed hereto as Exhibit J).

**This Action**

In this action, Plaintiffs contend that CCME made material misstatements in its SEC filings allegedly by: (1) overstating the Company's financial results; (2) overstating the number of buses in its television advertising network; (3) falsely representing the identity of the Company's advertising clients; and (4) falsely representing that the Company's disclosure controls and procedures were effective. *See* Am. Compl. ¶¶ 60, 62-67, 74-78, 81. As shown below, the Amended Complaint fails to plead specific facts supporting any of these claims.

<u>**ARGUMENT**</u>

## I.    LEGAL STANDARDS

Under any pleading standard, Plaintiffs' factual allegations fail to state a claim upon which relief may be granted.

### A.    The Standard for a Motion to Dismiss Under Rule 12(b)(6).

In determining whether a claim should be dismissed for failure to state a claim under Rule 12(b)(6), only the well-pleaded facts are accepted as true, and only the logical inferences from those facts may be drawn.  Conclusory statements without any disclosed basis in fact can be ignored.  *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) ("we need not accord '[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness'").

As shown below, Plaintiffs' allegations fail to satisfy even the most lenient pleading standard and come nowhere near satisfying the heightened pleading requirements applicable here.

### B.    The Pleading Requirements under Rule 9(b) and the PSLRA.

Where claims sound in fraud, as here, the heightened pleading requirements of Rule 9(b) apply.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318 (2007).  Rule 9(b) requires that the circumstances constituting fraud must be stated with particularity.  At a minimum, "[t]o pass muster under [R]ule 9(b), the complaint must allege the time, place, speaker, and sometimes even the content of the alleged misrepresentation."  *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 328 (S.D.N.Y. 2003).  Rule 9(b) further requires that

plaintiffs "specifically plead those events which they assert give rise to a strong inference that the defendants had knowledge of the facts contained in . . . the complaint or recklessly disregarded their existence [and] fix the time when these particular events occurred." *Id.* Failure to satisfy Rule 9(b)'s pleading requirements is grounds for dismissal of the claims. *See Goplen v. 51job, Inc.*, 453 F. Supp. 2d 759, 766 (S.D.N.Y. 2006).

Rule 9(b) requires that where a plaintiff's allegations are based upon information supplied by anonymous witnesses, the plaintiff must plead corroborating details sufficient to demonstrate that the witness was in a position to know the information provided. *See Bd. Of Trustees of City of Ft. Lauderdale Gen. Employees Ret. Sys. v. Mechel OAO*, No. 09 Civ. 3617 (RJS), 2011 WL 3502016, at *22 (S.D.N.Y. Aug. 9, 2011) (confidential sources should be "described . . . with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged"); *In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008) (allegations that confidential witness attended Audit Committee meetings where audit reports were discussed were "so vague as to be meaningless" where they did not state the times of the meetings, what was discussed, or the names and contents of documents circulated at such meetings), *aff'd*, 344 F. App'x 717 (2d Cir. 2009).

Plaintiffs here rely on functionally anonymous reports. The short sellers hide behind pseudonyms and assumed names. They base their allegations on information farmed from anonymous sources who themselves do not account for the source of their information. Plaintiffs are required to plead facts demonstrating that these sources have sufficient indicia of reliability to be credited as true on a motion to dismiss. They have not done so, and cannot do so.

11

To state a claim for violation of Section 10(b), Plaintiffs must satisfy not only Rule 9(b)'s pleading requirements, but also those imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). <u>First</u>, the PSLRA requires that plaintiffs "specify each statement alleged to have been misleading, *the reason or reasons why the statement is misleading*, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1) (emphasis added). <u>Second</u>, the PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," § 78u–4(b)(2). If these pleading requirements are not met, the complaint must be dismissed.

In order for the plaintiff to demonstrate a strong inference of scienter, the plaintiff must allege either motive and opportunity to commit fraud or facts that constitute circumstantial evidence of or reckless or conscious behavior. *See In re MBIA, Inc. Sec. Litig.*, 700 F. Supp. 2d 566, 587 (S.D.N.Y. 2010). However, a plaintiff cannot plead motive and opportunity by alleging "merely the achievement of goals 'possessed by virtually all corporate insiders.'" *Id.* When considering whether the facts alleged give rise to a "strong" inference of scienter, "the court must take into account plausible opposing inferences." *Tellabs, Inc.*, 551 U.S. at 323. "A complaint will survive ... only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

## II.   PLAINTIFFS' SECTION 10(B) CLAIM SHOULD BE DISMISSED FOR FAILURE TO SATISFY THE PLEADING REQUIREMENTS.

As demonstrated below, Plaintiffs' allegations are not nearly sufficient to satisfy their obligation to plead facts – not innuendo or speculative hearsay – sufficient to demonstrate that CCME's financial statements were materially false or misleading when made, much less facts

raising a strong inference that Messrs. Cheng or Lam (or anyone else at CCME) knew or should have known that was the case.

**A.    Plaintiffs Fail to Plead Facts Demonstrating Why CCME's SEC Filings Were Materially False or Misleading When Made.**

The Amended Complaint is rife with the kind of boilerplate pleading that has long been rejected as insufficient to state a claim for fraud (or any other claim). The vast majority of the 77-page Amended Complaint consists of quotations from the Company's SEC filings and press releases regarding its financial results and the size of its bus network, paired with conclusory assertions that those statements were materially false and misleading when made. The only supposed support offered for these assertions is that bloggers, short sellers, and others, all of whom rely on anonymous sources, said so. *See* Am. Compl. ¶¶ 82-85, 90-92. Missing from the Amended Complaint are the very allegations necessary to satisfy the PSLRA's threshold pleading requirement – **specific facts** establishing **why** CCME's SEC filings were false when made. *See* 15 U.S.C. § 78u-4(b)(1).

**1.    The Short Sellers' Allegations Do Not Support an Inference of Falsity.**

When applying the PSLRA's particularity standards for allegations made on "information and belief," 15 U.S.C. § 78u-4(b)(1), based on confidential witnesses, courts must examine the detail provided by the confidential sources, the sources' basis of knowledge, the reliability of the sources, the corroborative nature of other facts alleged, including from other sources, the coherence and plausibility of the allegations, and similar indicia. *See Local No. 38 Int'l Bhd. Of Elec. Workers Pension Fund v. Am. Exp. Co.*, 724 F. Supp. 2d 447, 460 (S.D.N.Y. 2010) (confidential witness' anecdotes and conclusory statements insufficient to prove scienter, especially where the confidential witnesses were employed in "rank-and-file" positions and had

no contact with the individual defendants); *In re Bausch & Lomb, Inc. Sec. Litig.*, 592 F. Supp. 2d 323, 342 (W.D.N.Y. 2008), *aff'd*, 430 F. App'x 63 (2d Cir. 2011).

That same standard applies here, as the purpose underlying the Second Circuit's test is to determine whether plaintiffs "fall[] far short of the particularity needed to substantiate the confidential witness's knowledge" by assessing the "probability that a person in the position occupied by the source would possess the information alleged." *Trustees of City of Ft. Lauderdale Gen. Employees Ret. Sys.*, 2011 WL 3502016, at *22. Plaintiffs make no attempt to plead any facts to satisfy this burden. Instead, Plaintiffs merely engage in wholesale adoption of Muddy Waters' conclusions, which are based on, among other things: (i) discussions with unidentified employees at CCME's advertisers and bus operators (Muddy Waters Report at 4, 6, 10); and (ii) discussions with unidentified employees at CCME's competitors (which Muddy Waters ironically believed "was one of the most telling aspects of [its] work" on CCME) (*id.* at 14-15). Such sources are, however, inherently unreliable because Muddy Waters does not explain when or how they acquired the information they purportedly possess or even, in the case of the unidentified employees, what positions they held at their companies. Thus, Plaintiffs utterly fail to demonstrate that short sellers Citron and Muddy Waters had access to any reliable information supporting their accusations.

Muddy Waters' conclusions also should be rejected because they stem from an utterly false premise. The central thesis of the Muddy Waters report is that CCME is a classic "pump and dump" scheme. However, the public filings – which are critical to Muddy Waters' story but conspicuously absent from its report – flatly contradict Muddy Waters' claim because they show that management has not sold a single share of Company stock.

14

Moreover, Muddy Waters relies heavily on information contained in an "advertiser kit," which purportedly contradicts CCME's disclosures regarding the number of buses for which it has advertising contracts. Muddy Waters Report at 4-5, 16 (Vasey Decl., Ex. D). But Muddy Waters fails to identify "who authored the alleged [kit], when it was authored, who reviewed the [kit], and what data its conclusions were based on" – as plaintiffs are required to do when pleading based on documentary evidence like internal company reports.

Instead, Muddy Waters alleges only that an unidentified "salesperson" at CCME "stated that the spreadsheet . . . is current and accurate." Muddy Waters Report at 5. That allegation is, however, insufficient because Muddy Waters offers no facts to support the reliability of that supposed salesperson or to corroborate that salesperson's statements about the "advertiser kit." *See City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 422 (D. Del. 2009) (explaining that where the allegations of a confidential witness lack sufficient indicia of reliability, courts "must discount them steeply"). Muddy Waters' description of the "advertiser kit" thus utterly fails to meet the PSLRA's particularity requirements. *California Public Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 146-47 (3d Cir. 2004) (dismissing allegations based on a barebones description of a single company memorandum provided by two former employees of the corporate defendant).

Equally unavailing are the allegations by Muddy Waters and Citron regarding the alleged lack of media and analyst coverage for CCME and comparisons between CCME's financial results and those of its supposed competitors. Citron claims that the "clearest example" of CCME's being a fraud is an 87-page report prepared by Analysis International on the Chinese Outdoor LCD Screen Market for the year 2010, which does not mention CCME. However, as CCME pointed out in its February 7, 2011 letter, the companies identified as "competitors" of

CCME are not even in the same industry group as CCME.  VISN and Bus Online are in the intra-city bus segment, not the intercity and airport express bus segment where CCME operates.  *See* Feb. 7, 2011 Ltr at 6 (Vasey Decl., Ex. E).  Muddy Waters attempts to compare CCME to FMCN and AMCN.  However, FMCN focuses on the commercial real estate, retail, outdoor billboard, and Internet advertising platforms in China.  AMCN is in the airport and airplane segment.  *Id.*[5]

Even if the underlying sources were sufficiently reliable, and they are not, Plaintiffs' claims still would fail because Muddy Waters and Citron are inherently unreliable.  Citron admitted in one of its many caveats and disclaimers that it "does not guarantee in any way that it is providing all of the information that may be available."  Muddy Waters likewise warns that it "makes no representations, express or implied as to the accuracy, timeliness, or completeness of any [] information [contained in its report], or with regard to the results to be obtained from its use."  In fact, on their web sites, the short sellers specifically tell their readers that they cannot rely on these reports in making investment decisions.  Likewise, this Court should not rely on their allegations in determining whether or not to sustain the Amended Complaint.

Both Muddy Waters and Citron also warn that they may hold short positions in CCME's stock.  Muddy Waters cautions that readers should assume that it, "along with [its] clients and/or investors has a short position in the stock (and/or options of the stock) . . . and therefore stands to realize significant gains in the event that the price of [the] stock declines."  Muddy Waters

_____

[5] CCME does not mean to suggest that the Court should, on this motion, resolve factual disputes. The point is being raised for entirely different reasons: (a) to demonstrate the dangers of Plaintiffs' reliance on the unproven and unreliable allegations of the short sellers; and (b) to highlight the inherent unfairness of, essentially, giving the short sellers the bootstrap credibility afforded to facts well pleaded by the Plaintiffs when there exists at least equally strong, if not stronger, factual averments on the other side that do not get the benefit of the presumption of accuracy. Where, as here, Plaintiffs do not have any good-faith basis for making the allegations in the Amended Complaint and base them solely on the fact that others have articulated the claims, those second- or third-hand claims should not be presumed accurate.

Report at 1.   Similarly, Citron's web site discloses that its principals "most always" hold a position in the stocks profiled on the site.

The short-seller reports, which are, as to this litigation, entirely unreliable multiple level hearsay, also should be rejected as insufficient under the PSLRA because Plaintiffs apparently are unable to allege any facts that corroborate the short-sellers' accusations.   *See City of Roseville Employees' Ret. Sys.*, 686 F. Supp. 2d at 422 (dismissing statements made by a confidential source where plaintiff alleged no facts to corroborate that testimony).   Nor does it appear that Plaintiffs' counsel made any attempt to conduct their own investigation to independently verify the short-sellers' allegations, even though they had **nearly nine months** between the posting of the short-seller reports and the filing of the Amended Complaint.

Two recent federal district court decisions establish that a complaint that simply points to and relies entirely on the unsubstantiated and uncorroborated allegations of short sellers cannot satisfy even the pleading requirements of Rule 9(b).   In *Katz v. China Century Dragon Media, Inc.*, No. CV 11-02769 JAK, 2011 WL 6047093 (C.D. Cal. Nov. 30, 2011), and *Gary Redwen v. Sino Clean Energy, Inc.*, No. 11-CV-03936 PA (SSx) (C.D. Cal. Jan. 30, 2011), the Central District of California dismissing claims against China-based issuers for alleged violations of Sections 11 and 15 of the Securities Act where plaintiffs' allegations were based upon accusations by short sellers and alleged discrepancies between SEC and PRC regulatory filings.[6]   In those cases, as

---

[6] The cases in which courts have recently denied motions to dismiss by China-based issuers – *Henning v. Orient Paper, Inc.*, No. CV 10-5887-VBF (AJWx), 2011 WL 2909322 (C.D. Cal. July 20, 2011); *In re China Educ. Alliance, Inc. Secs. Litig.*, No. CV 10-9239 CAS (JCx), 2011 WL 4978483 (C.D. Cal. Oct. 11, 2011); and *Dean v. China Agritech, Inc.*, No. CV 11-01331-RGK (PJWx), 2011 WL 5148598 (C.D. Cal. Oct. 27, 2011) – are readily distinguishable.   None of those cases were premised exclusively on the repetition of allegations made in short-sellers' reports, as here.   In each case, the investigation conducted by counsel was alleged to include interviews of witnesses with personal knowledge of relevant facts or the complaint pleaded other facts corroborating allegations made in short-seller reports.

here, the plaintiffs failed to plead any facts whatsoever to corroborate the allegations of the short sellers. The courts held that such allegations failed to satisfy Rule 9(b)'s heightened pleading requirements; the same allegations asserted by Plaintiffs here thus come nowhere near satisfying the more stringent pleading requirements imposed by the PSLRA.

> **2.  Neither the Issues Raised by DTT Nor DTT's Resignation Supports a Reasonable Inference of Falsity.**

Plaintiffs likewise fail to demonstrate that any of the issues DTT raised in connection with its audit of the Company's 2010 financial statements – or DTT's subsequent resignation – support the conclusion that the Company materially overstated its financial results.  The issues DTT raised in its March 3, 2011 letter to CCME's Audit Committee included: (i) alleged anomalies that arose in the course of DTT confirming bank balances of CCME subsidiary, Fujian Fenzhong Media Co. Ltd. ("Fujian Fenzhong"); (ii) alleged discrepancies between Fujian Fenzhong's audited financials and information it reported to PRC authorities; (iii) insufficient retention of documents concerning employee salary payments and the advertising schedules and programs produced by Fujian Fenzhong; and (iv) DTT's inability to verify the existence of all 22,206 buses in CCME's advertising network without the engine numbers of the buses. *See* Am. Compl. 122-143.  Plaintiffs do not explain, as they must, how any of these "issues" supports a reasonable inference that the Company materially overstated its financial results for the first three quarters of 2010, much less the results reports in the years 2006 through 2009.

That DTT resigned likewise does not support a reasonable inference that the Company's prior financial statements were materially false or misleading when made.  DTT simply raised questions, not factual conclusions, and those questions were also derivative of the short-seller attacks.  DTT's stated reasons for resigning were its conclusion that the Company was "minded not to proceed in good faith on the basis of our requested course of action" (Vasey Decl. Ex. H)

– to conduct an independent forensic investigation – and its loss of confidence in the representations of management and the commitment of the Board and the Audit Committee "to good governance and reliable financial reporting" Am. Compl. ¶¶ 88, 95. These issues go to the relationship between the Company and its auditor, and they certainly do not evidence material misstatements in SEC filings. Moreover, the Company has, in fact, proceeded with DTT's requested course of action and an independent investigation is underway.

Having failed to plead any facts demonstrating the falsity of the disclosures regarding the Company's financial results, Plaintiffs' Section 10(b) claim must be dismissed.

**B.      Plaintiffs Fail to Plead Facts Supporting a Strong Inference of Scienter.**

Plaintiff's Section 10(b) claim also must be dismissed because the Amended Complaint utterly fails to plead facts sufficient to give rise to a strong inference that of scienter by any individual whose state of mind could be attributed to CCME.

**1.      Plaintiffs Must Establish Scienter with Regard to an Individual Whose Intent May Be Imputed to CCME.**

A corporate entity can act only through its employees. While materially false or misleading statements of executives can be attributed to the corporation, *City of Roseville*, 686 F. Supp. 2d at 425-26, the requisite mental state of scienter must be found within the mind of an employee who either made, or participated in the making of, such a statement. *Id.* (citing *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 365-67 (5th Cir. 2004)). To plead scienter against the Company, Plaintiffs must identify facts raising a strong inference that false or misleading statements were made or otherwise promoted by an individual acting on behalf of the company and who knew or was reckless in not knowing that the statements were false or misleading at the time they were made. *See Winer Family Trust v. Queen*, 503 F.3d 319, 335 (3d Cir. 2007); *Luminent Mortg. Capital, Inc. v. Merrill Lynch*, 652 F. Supp. 2d 576, 594-96

(E.D. Pa. 2009). Here, Plaintiffs contend that CCME's Chairman and CEO, Defendant Zheng Cheng, and its former CFO, Defendant Jacky Lam acted with scienter. However, Plaintiffs have failed to plead any facts whatsoever supporting a strong inference of scienter as to either Cheng or Lam.

### 2.   Plaintiffs Fail to Establish a Strong Inference of Scienter with respect to Defendants Cheng and Lam.

Plaintiffs' allegations of motive on the part of Defendants Cheng and Lam fail to support any inference of scienter. Plaintiffs contend that Cheng and Lam made misstatements in the Company's 2009 financial statements so that they would trigger generous "earn out" payments under the terms of the reverse-merger agreement. Am. Compl. ¶ 120. However, the law is well established that "the existence, without more, of executive compensation dependent upon stock value does not give rise to a strong inference of scienter." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995). If scienter could be pleaded solely on the basis of executive compensation, "virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions." *Id.* at 54. Plaintiffs thus have failed to plead facts supporting an inference of motive on the part of Messrs. Cheng or Lam.

In the absence of motive, a plaintiff may also raise a strong inference of scienter based upon circumstantial evidence of conscious misbehavior or recklessness, but "the strength of the circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001). Conscious misbehavior encompasses "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id.* Because Plaintiffs allege no facts to support an inference that Cheng or Lam

engaged in such behavior, the relevant question is whether Plaintiffs have adequately pleaded recklessness.

Recklessness is sufficiently pleaded where the plaintiff specifically alleges that defendants either (1) knew facts or had access to information contradicting their public statements, or (2) failed to review or check information they had a duty to monitor. *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000). "'[W]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information.'" *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) (quoting *Novak*, 216 F.3d at 309).

Plaintiffs here do not specify any information available to Cheng or Lam that contradicts the disclosures in the Company's SEC filings. To the contrary, Plaintiffs generically allege access to information that Cheng and Lam, because of their positions in the company, "must have known" a statement was false or misleading are deficient as a matter of law. Such allegations are deficient as a matter of law. *See In re Health Mgmt. Sys., Inc. Sec. Litig.*, No. 97 CIV. 1865(HB), 1998 WL 283286, at *6 (S.D.N.Y. June 1, 1998). "A plaintiff cannot establish scienter on the part of defendant executives by 'loosely describing the managerial hierarchy by which fraudulent conduct could have come to their attention.'" *City of Roseville*, 686 F. Supp. 2d at 422 (citation omitted). That is precisely what Plaintiffs have alleged here as to Defendants Cheng and Lam. *See* Am. Compl. ¶¶ 15, 119.

That Messrs. Cheng and Lam signed Sarbanes-Oxley Act certifications for the challenged SEC filings does not cure the deficiencies in Plaintiffs' scienter allegations. *See* Am. Compl. ¶ 68. The Sarbanes-Oxley Act does not make officers "guarantors" of the truth of a company's financial statements. *City of Roseville*, 686 F. Supp. 2d at 420. Rather, officers must certify only

that "they personally have no *knowledge* of such misleading statements or omissions" in the report. *Id.* (emphasis in original). This means that "they can only certify the truthfulness of their reports based on the information they know, or of which they should reasonably have been aware, at the time." *Id.*

Having failed to establish scienter on the part of Messrs. Cheng or Lam, Plaintiffs cannot establish scienter on the part of the Company.

## III.    PLAINTIFFS' SECTION 20(A) CLAIM AGAINST DEFENDANTS CHENG AND LAM SHOULD BE DISMISSED.

Plaintiffs also assert claims against Defendants Cheng and Lam for alleged violation of Section 20(a) of the Exchange Act.  However, a primary violation of Section 10(b) is a prerequisite to finding control person liability under section 20(a).  Because Plaintiffs have failed to adequately allege a primary violation of Section 10(b), Plaintiffs' Section 20(a) claims also should be dismissed. *See Slayton v. Am. Exp. Co.*, 604 F. 3d 758, 778 (2d Cir. 2010).

## <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiffs' claim against Defendant China MediaExpress Holdings, Inc. for alleged violations of Sections 10(b) of the Securities Exchange Act of 1934 should be dismissed.

Dated:   New York, New York          Respectfully submitted,
        February 6, 2012

                                                LOEB & LOEB LLP

                                                By: /s/ Laura M. Vasey
                                                    Eugene R. Licker (SBN EL-0334)
                                                    elicker@loeb.com
                                                    Laura M. Vasey (SBN 4158200)
                                                    lvasey@loeb.com
                                                    345 Park Avenue
                                                    New York, NY  10154
                                                    Telephone: 212.407.4000
                                                    *Attorneys for Defendant*
                                                    *China MediaExpress Holdings, Inc.*