**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
                                                        :
*IN RE CHINA MEDIAEXPRESS HOLDINGS,*   :   No. 11-CV-804-VM
*INC. SHAREHOLDER LITIGATION*            :
                                                        :
                                                        :
--------------------------------------------------------X

## DEFENDANTS' OMNIBUS REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF THEIR MOTIONS TO DISMISS
## PLAINTIFFS' AMENDED AND CONSOLIDATED COMPLAINT

| | |
|---|---|
| LOEB & LOEB LLP<br>Eugene R. Licker (EL-0334)<br>John A. Piskora (JP-1224)<br>345 Park Avenue<br>New York, NY  10154<br><br>*Attorneys for Defendant China MediaExpress*<br>*Holdings, Inc.* | HUGHES HUBBARD & REED LLP<br>William R. Maguire<br>Savvas A. Foukas<br>Jesse James<br>One Battery Park Plaza<br>New York, New York  10004<br><br>*Attorneys for Defendant Deloitte LLP* |
| MORRISON COHEN LLP<br>Donald H. Chase (DC-6708)<br>Edward P. Gilbert (EG-3730)<br>909 Third Avenue<br>New York, New York  10022<br><br>*Attorneys for Defendants*<br>  *Theodore Green and Malcolm Bird* | LATHAM & WATKINS LLP<br>Miles N. Ruthberg<br>Christopher Harris<br>Kevin M. McDonough<br>885 Third Avenue<br>New York, NY  10022-4834<br><br>KRAMER LEVIN NAFTALIS &<br>FRANKEL LLP<br>Michael J. Dell<br>1177 Avenue of the Americas<br>New York, NY  10036<br><br>*Attorneys for Defendant Deloitte Touche*<br>*Tohmatsu Limited* |
| MICHAEL E. MARR, ATTORNEY-AT-LAW<br>Michael E. Marr (*pro hac vice*)<br>3107 Tyndale Avenue<br>Baltimore, Maryland  21214-3429<br><br>*Attorneys for Defendant A.J. Robbins P.C.* | |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ iii

ARGUMENT ............................................................................................ 1

I.   PLAINTIFFS' SECTION 10(B) CLAIM AGAINST CCME SHOULD BE
     DISMISSED ..................................................................................... 1

II.  PLAINTIFFS' CLAIMS AGAINST GREEN AND BIRD SHOULD BE
     DISMISSED ..................................................................................... 6

     A.   PLAINTIFFS FAIL TO PLEAD FRAUD WITH THE REQUISITE
          PARTICULARITY AGAINST DEFENDANTS GREEN AND BIRD ............... 6

     B.   PLAINTIFFS' ALLEGATIONS OF SCIENTER AGAINST
          DEFENDANTS GREEN AND BIRD ARE INSUFFICIENT TO STATE
          A CLAIM ...................................................................................... 9

III. PLAINTIFFS' CLAIM AGAINST ROBBINS SHOULD BE DISMISSED ................. 11

     A.   FAILURE OF PLAINTIFFS' FACTUAL ALLEGATIONS TO
          CONSTITUTE INFERENCES OF PROPERLY PLED FALSE
          STATEMENTS BY DEFENDANT ROBBINS ................................... 11

     B.   PLAINTIFFS' IMPROPER RELIANCE ON CITED CASE LAW IN
          SUPPORT OF ITS ASSERTIONS AGAINST DEFENDANT ROBBINS ....... 12

     C.   ROBBINS' ALLEGED PCAOB VIOLATIONS ARE IRRELEVANT ........... 13

IV.  THE OPPOSITION PROVIDES NO BASIS TO SUSTAIN PLAINTIFFS'
     CLAIMS AGAINST DTTL OR DELOITTE U.S. ....................................... 15

     A.   THE SECTION 20(A) CLAIMS AGAINST DTTL AND DELOITTE
          U.S. ARE INADEQUATE ................................................................ 15

     B.   THE OPPOSITION PROVIDES NO SUPPORT FOR THE SECTION
          10(B) CLAIMS .............................................................................. 18

          1.   Vicarious Liability Claims Do Not Survive *Janus* ................................. 18

          2.   The Amended Complaint Fails To Adequately Allege Respondeat
               Superior Liability .................................................................. 19

i

3.    The Alter Ego Theory Against Deloitte U.S. Fails .................................. 20

C.    THERE IS NO BASIS FOR PLAINTIFFS' IMPROPER REQUEST FOR
DISCOVERY ...................................................................................................... 21

V.    LEAVE TO AMEND SHOULD BE DENIED .............................................................. 22

CONCLUSION ........................................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C<small>ASES</small>

*Am. Fuel Corp. v. Utah Energy Dev. Co.*,
   122 F.3d 130 (2d Cir. 1997) …………………......................................................... 21

*Anwar v. Fairfield Greenwich Ltd.*,
   728 F. Supp. 2d 372 (S.D.N.Y. 2010) …………………............................................ 17, 18, 19

*Anwar v. Fairfield Greenwich Ltd.*,
   Nos. 09 Civ. 0118, 10 Civ. 2878, __ F. Supp. 2d __,
   2011 WL 6288406 (S.D.N.Y. Dec. 14, 2011) …………………................................ 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ………………….................................................................... 22

*Arfa v. Mecox Lane Ltd.*,
   No 10 Civ. 9053, 2012 WL 697155 (S.D.N.Y. Mar. 5, 2012) …………………..................... 4

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007) …………………....................................................... 17

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007), *rev'g*,
   *Twombly v. Bell Atlantic Corp.*, 425 F.3d 99 (2d Cir. 2005) ………………….................... 22

*Beno Varghese et al. v. China Shenghuo Pharmaceutical Holdings, Inc., et al.*,
   672 F. Supp. 2d 596 (S.D.N.Y. 2009) …………………..............................................12-13

*Bd. of Trustees of City of Ft. Lauderdale Gen. Employees Ret. Sys. v. Mechel OAO*,
   No. 09 Civ. 3617 (RJS), 2011 WL 350201 (S.D.N.Y. Aug. 9, 2011) …………………......1-2

*City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*,
   No. 10 Civ. 2835, 2011 WL 4357368 (S.D.N.Y. Sept. 19, 2011) …………………............ 22

*City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*,
   686 F. Supp. 2d 404 (D. Del. 2009) ………………….................................................. 6

*Compudyne Corp. v. Shane*,
   453 F. Supp. 2d 807 (S.D.N.Y. 2006) ………………….......................................... 18

*Dean v. China Agritech, Inc.*,
   No. CV 11-01331, 2011 WL 5148598 (C.D. Cal. Oct. 27, 2011) …………………............... 5

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*,
   595 F. Supp. 2d 1253 (M.D. Fla. 2009) …………………................................14-15

*Fidel v. Farley*,
   392 F.3d 220 (6th Cir. 2004) …………………......................................................... 15

*Fin. One, Inc. v. Timeless Apparel, Inc.*,
   No. 09 Civ. 9397, 2011 WL 1345030 (S.D.N.Y. Mar. 29, 2011) …………………............. 21

*Freudenburg v. E\*Trade Financial Corporation*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010) …………………........................................... 14

*Fulton County Employees Ret. Sys. v MGIC Inv. Corp.*,
   675 F.3d 1047 (7th Cir. 2012)  …………………..................................................... 19

*Gary Redwen v. Sino Clean Energy Inc.*,
   No. 11-CV-03936 PA (SSx) (C.D. Cal. Jan. 20, 2011) ………………… ...................... 3, 4, 5

*Henning v. Orient Paper, Inc.*,
   No. CV 10-5887, 2011 WL 2909322 (C.D. Cal. July 20, 2011) ………………… ................. 3

*In re Alstom SA Sec. Litig.*,
   406 F. Supp. 2d 433 (S.D.N.Y. 2005) …………………..................................... 16, 18, 21, 22

*In re China Educ.*,
   No. CV 10-9239, 2011 WL 4978483 (C.D. Cal. Oct. 11, 2011) ………………… ............. 3, 5

*In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*,
   No. CV 11-2768 (C.D. Cal. Feb 16, 2012) ………………… .................................... 4

*In re Doral Fin. Corp. Sec. Litig.*,
   563 F. Supp. 2d 461 (S.D.N.Y. 2008),
   *aff'd*, 344 F. App'x 717 (2d Cir. 2009) …………………....................................... 2

*In re Health Mgmt. Inc. Sec. Litig.*,
   970 F. Supp. 192 (E.D.N.Y. 1997) ………………… ........................................... 10

*In re KeySpan Corp. Sec. Litig.*,
   383 F. Supp. 2d 358 (E.D.N.Y. 2003) …………………........................................ 10

*In re Optimal U.S. Litig.*,
   No. 10 Civ. 4095,
   2011 U.S. Dist. LEXIS 119141 (S.D.N.Y. Oct. 14, 2011) ………………… ....................... 19

*In re NTL Inc. Sec. Litig.*,
   347 F. Supp. 2d 15 (S.D.N.Y. 2004) …………………....................................... 11

*In re Scottish Re Group Sec. Litig.*,
   524 F. Supp. 2d 370 (S.D.N.Y. 2007) …………………........................................13-14

*In re Sotheby's Holdings, Inc. Sec. Litig.*,
   No. 00 Civ. 1041,
   2000 U.S. Dist. LEXIS 12504 (S.D.N.Y. Aug. 31, 2000)………………… ......................... 10

*In re Take-Two Interactive Sec. Litig.*,
   551 F. Supp. 2d 247 (S.D.N.Y. 2008) …………………........................................... 8

*In re Tronox, Inc. Sec. Litig.*,
   No. 09 Civ. 6220, 2010 WL 2835545 (S.D.N.Y. June 28, 2010) ………………… ............... 2

*Janus Capital Group, Inc. v. First Derivative Traders*,
   _ U.S. _, 131 S. Ct. 2296 (2011) ………………….......................................8, 18-19

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001) ………………….......................................... 5, 10

*Katz v. China Century Dragon Media, Inc.*, No. CV 11-02769 JAK,
   2011 WL 6047093 (C.D. Cal. Nov. 30, 2011) …………………......................................3, 4-5

*Kerr v. Exobox Tech. Corp.*,
   No. H-10-4221, 2012 WL 201872 (S.D. Tex. Jan. 23, 2012) …………………..................... 19

*Munoz v. China Expert Tech., Inc.*,
   No. 07 Civ. 10531,
   2011 U.S. Dist. LEXIS 128539 (S.D.N.Y. Nov. 4, 2011) ………………… ......................... 22

*Orlan v. Spongetech Delivery Sys., Inc.*,
   No. 10-CV-4093,
   2012 U.S. Dist. LEXIS 44253 (E.D.N.Y. Mar. 29, 2012)………………… ........................... 8

*Scott v. ZST Digital Networks, Inc.*,
   No. CV 11-03531, 2012 WL 538279 (C.D. Cal. Feb. 14, 2012) ………………… ................. 5

*SEC v. Youmans*,
   729 F.2d 413 (6th Cir. 1984) …………………....................................................... 14

*STMicroelectronics v. Credit Suisse Grp.*,
   775 F. Supp. 2d 525 (E.D.N.Y. 2011) …………………....................................................... 18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ………………….................................................... 1, 5, 10

Defendants China MediaExpress Holdings, Inc. ("CCME"); Theodore Green and Malcolm Bird; A.J. Robbins, P.C. ("Robbins"); Deloitte Touche Tohmatsu Limited ("DTTL") and Deloitte LLP ("Deloitte U.S.") respectfully submit this omnibus reply memorandum of law in further support of their respective motions to dismiss Plaintiffs' Amended and Consolidated Complaint pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## ARGUMENT

## I.  PLAINTIFFS' SECTION 10(B) CLAIM AGAINST CCME[2] SHOULD BE DISMISSED

Plaintiffs do not dispute that their Section 10(b) claims must satisfy the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA").  *See* Opp. Mem. at 21-22.  Accordingly, Plaintiffs not only must "set forth what is false or misleading about a statement, and why it is false" (15 U.S.C. § 78u-4(b)(1); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 318 (2007)), but Plaintiffs must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." § 78u–4(b)(2).  Further, because Plaintiffs' allegations are based upon information supplied by anonymous witnesses (*i.e.*, "Muddy Waters"), Plaintiffs must plead corroborating details sufficient to demonstrate that the witness was in a position to know the information provided.  *See Bd. of Trustees of City of Ft. Lauderdale Gen. Employees Ret. Sys. v. Mechel OAO*, No. 09 Civ. 3617 (RJS), 2011 WL 3502016, at *22 (S.D.N.Y. Aug. 9, 2011); *In re Doral*

---

[1] Defendants submit this single omnibus reply pursuant to the Court's order of March 15, 2012.

[2] Plaintiffs feign "confusion" as to whether CCME's counsel represents and has appeared on behalf of defendants Zheng Cheng and Jacky Lam.  *See* Opp. Mem. at 1 and n.1.  CCME's counsel, however, has repeatedly informed Plaintiffs' counsel that CCME's counsel does not now and has never represented Lam or Cheng (neither of whom has been served) in connection with this litigation (indeed, Lam has been represented by different counsel in the related shareholder and derivative litigations pending in Delaware state and federal courts).  Similarly, CCME's counsel has also repeatedly advised Plaintiffs that the Company's motion to dismiss was erroneously filed on Cheng's behalf, an error that CCME's counsel promptly corrected by amendment and prior to any opposition.

*Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008), *aff'd*, 344 F. App'x 717 (2d Cir. 2009).  As set forth in CCME's moving papers and further below, Plaintiffs have fallen woefully short of meeting these heightened pleading requirements here.  Accordingly, Plaintiffs' claims against the Company should be dismissed.

Plaintiffs simply do not dispute that their allegations are almost entirely derived from self-interested short seller "reports."[3]  Plaintiffs nonetheless argue in opposition that these allegations should be accepted as true, and that the anonymous sources are somehow reliable because they contain statements detailing the short-sellers' purported investigations.  *See, e.g.*, Opp. Mem. at 22 & n.20, 22; at 39.[4]  While Plaintiffs would abdicate their duties and responsibilities (under Fed. R. Civ. P. 11, and otherwise) to conduct an independent investigation of the allegations of falsity contained in the short sellers' reports and invite this Court to condone their failure to do so, this Court should decline Plaintiffs' invitation and dismiss the Complaint.  *See In re Tronox, Inc. Sec. Litig.*, No. 09 Civ. 6220, 2010 WL 2835545, at *6 (S.D.N.Y. June 28, 2010) (documentary evidence must qualify as a "reliable source for pleading purposes").  Plaintiffs' wholesale recitation of the accusations of self-interested short sellers (who disclaim the accuracy of these very statements) does not begin to satisfy Plaintiffs' obligation to plead a violation of the Securities Act with particularity.  *See, e.g.*, *Katz v. China Century Dragon*

---

[3] Plaintiffs' arguments that the uninvestigated short seller accusations have purportedly been "confirmed" by DTT HK (CCME's former auditor), the resignations of former directors, and/or SEC administrative proceedings must be rejected.  As set forth in CCME's moving papers (at 18), the resignation of directors and DTT HK simply raised questions, and did not present factual conclusions.  Nor does the *initiation* of SEC administrative proceedings provide Plaintiffs with factual conclusions – especially where, as here, those proceedings were commenced solely based upon allegations that the Company has not timely submitted all required financial statements and reports.

[4] Fatal here is that Plaintiffs' allegations not only rely entirely on pseudonymous short sellers' reports – but also the short sellers' anonymous sources and "investigators" without pleading any facts demonstrating that such pseudonymous and anonymous sources are reliable or are likely to possess the information they claim.  Plaintiffs, having conducted no independent investigation, have no idea whether or not what the short sellers are saying is true, and they are simply not in a position to vouch for the accuracy of those statements.

*Media, Inc.*, No. CV 11-02769 JAK, 2011 WL 6047093 (C.D. Cal. Nov. 30, 2011); *Gary Redwen v. Sino Clean Energy Inc.*, No. 11-CV-03936 PA (SSx) (C.D. Cal. Jan. 20, 2011) (dismissing claims against China-based issuers where allegations were based upon short seller accusations).

Plaintiffs' arguments in opposition (Opp. Mem. at 39) that a challenge to the reliability of unsubstantiated short-seller accusations is somehow "irrelevant" is flatly wrong, and Plaintiffs' reliance in opposition upon the decisions in *Henning v. Orient Paper, Inc.*, No. CV 10-5887, 2011 WL 2909322 (C.D. Cal. July 20, 2011) and *In re China Educ.*, No. CV 10-9239, 2011 WL 4978483 (C.D. Cal. Oct. 11, 2011) is entirely misplaced.  In *Henning*, defendant did not even challenge (and, thus, the court did not consider) the propriety of allegations based upon a short-seller report.  *See In re China Educ.*, 2011 WL 2909322 at *4 (noting that "the authorship of the [short seller] report was not explicitly challenged" in *Henning*).  In *China Educ.*, which relied solely upon *Henning*, the court concluded, based upon the facts presented, that a report by Kerrisdale Capital "[did] not implicate the same skepticism as a 'traditional' anonymous source." *Id.* at *4.  Such skepticism is surely present here.  In any event, if these decisions purport to stand for the proposition that plaintiff may rely wholesale on *any* published "report," regardless of its source and without any independent factual investigation, then they must be rejected.  *See, e.g.*, *Katz*, 2011 WL 6047093; *Sino Clean*, No. 11-CV-03936 PA.

Plaintiffs also wrongly argue (Opp. Mem. at 22-25) that their Complaint adequately alleges that CCME purportedly overstated its revenue and cash balances in the Company's SEC filings, as evidenced by certain filings made to the China State Association of Industry and Commerce ("SAIC") which reported lower amounts of revenues and cash for a CCME operating subsidiary.  While Plaintiff attempts to make much of this "apples to oranges" comparison,

Plaintiffs have not alleged (and cannot allege) that these financial filings (*i.e.*, disclosures to different government regulators pursuant to different laws and applying different accounting methods and rules) should be the same. Without a factual basis to support the conclusion that the SEC and SAIC filings should be the same, any purported "inconsistency" between them means nothing, and Plaintiffs' allegations as to a difference between these filings does not satisfy Plaintiffs' burden of pleading facts in support of their claim that CCME's revenue statements were false when made, let alone satisfy the heightened pleading requirements for fraud claims under Rule 9(b) and the PSLRA. *See, e.g.*, *Arfa v. Mecox Lane Ltd.*, No 10 Civ. 9053, 2012 WL 697155 (S.D.N.Y. Mar. 5, 2012) (dismissing claims under lower Rule 8 standard); *China Century Dragon*, 2011 WL 6047093 (dismissing complaint); *Sino Clean*, No. 11-CV-03936 (same).

In *Arfa* – a decision from this District wholly ignored by Plaintiffs – Judge Sweet considered SAIC-based allegations and granted dismissal despite allegations that the company reported net income of $3.5 million for 2008 in its SEC registration statement, but only $825,544 for the same year to the SAIC. *See Arfa*, 2012 WL 697155 at *12. Concluding that plaintiffs "[did] not allege that the registration statement's 2008 figures to be false, only that a different figure was filed with the Chinese government," the court dismissed plaintiffs' claim holding that "the Amended Complaint fails to plead how this discrepancy [with the SAIC filing] makes the … registration [statement] untrue or misleading." *Id*. Contrary to Plaintiffs' selective citation to California case law (Opp. Mem. at 23-24), the vast majority of California District Court opinions are in accord and have squarely held that a purported inconsistency between Chinese regulatory filings and SEC filings is ***not sufficient*** to plead falsity. *See In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, No. CV 11-2768 (C.D. Cal. Feb 16, 2012); *Katz v. China Century Dragon*

*Media, Inc.*, No. CV 11-02769 JAK, 2011 WL 6047093 (C.D. Cal. Nov. 30, 2011); *Sino Clean*, No. 11-CV-03936.[5]

Independently, Plaintiffs have failed to plead facts supporting a "strong inference of scienter." *See Tellabs*, 551 U.S. at 324 ("[T]he inference of scienter must be more than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong ***in light of other explanations***.") (emphasis added); *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (In the absence of motive, a plaintiff may also raise a strong inference of scienter based upon circumstantial evidence of conscious misbehavior or recklessness, but "the strength of the circumstantial allegations must be correspondingly greater."). Plaintiffs here simply attempt to "bootstrap" a finding of scienter based upon their allegations of purported falsity (arguing that their "smoking gun" is the difference between the SEC and SAIC filings) and upon the after-the-fact resignation of auditors and directors, and the Company's delisting (which do not establish either falsity or scienter). *See* Opp. Mem. at 29-30. As set forth above, however, Plaintiffs have failed to establish that the Company made any material misstatements in its SEC filings and, thus, those allegations cannot support an inference of scienter. Nor do subsequent events (resignations or delisting) establish a "strong inference" of scienter here, because such events may just as easily be based upon "other explanations." Plaintiffs' Complaint fails to make any

---

[5] In both *China Educ.*, 2011 WL 4978483, and *Dean v. China Agritech, Inc.*, No. CV 11-01331, 2011 WL 5148598 (C.D. Cal. Oct. 27, 2011), the courts simply accepted the inconsistent filings without any analysis as to whether such accounting inconsistencies were sufficient to create a plausible inference that the SEC filings were false. In *Scott v. ZST Digital Networks, Inc.*, No. CV 11-03531, 2012 WL 538279 (C.D. Cal. Feb. 14, 2012), the court did not uphold the sufficiency of a complaint "solely" upon alleged discrepancies between a company's SEC and Chinese filings, as Plaintiffs claim. Rather, the court in *ZST Digital* construed the particular allegations before it, denying dismissal where (a) plaintiffs alleged a marked difference between the SEC filings and Chinese filings "along with the Company's subsequent and ambiguous explanation of those discrepancies;" and (b) plaintiffs expressly and factually alleged that differences in accounting standards could not be the reason for the differences in the SAIC and SEC filings. *See ZST Digital*, 2012 WL 538279 at *8-9. Thus, even if *ZST Digital* were controlling, which it is not, Plaintiffs have failed to make any such factual allegations here.

factual allegation concerning scienter, other than wholly conclusory allegations that the Company's directors and officers "had knowledge" and "were aware of the problems." Opp. Mem. at 31, *citing* Compl. at ¶¶ 6, 66, 113. Similar allegations that defendants "must have known" lack the specificity required to establish a strong inference of scienter. *See City of Roseville Employees' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 422 (D. Del. 2009).

Because Plaintiffs have failed to adequately allege scienter, their Section 10(b) claim against the Company should be dismissed.[6]

## II.   PLAINTIFFS' CLAIMS AGAINST GREEN AND BIRD SHOULD BE DISMISSED

### A.   PLAINTIFFS FAIL TO PLEAD FRAUD WITH THE REQUISITE PARTICULARITY AGAINST DEFENDANTS GREEN AND BIRD

In their Opposition Brief, Plaintiffs merely rehash the conclusory fraud-by-hindsight allegations set forth in their deficient pleading, and fail to point to a single fraudulent misrepresentation directly attributable to Defendants Green and Bird. Plaintiffs' minimal allegations against Defendants Green and Bird are simply insufficient to make out a claim of securities fraud as a matter of law and, accordingly, the Complaint should be dismissed as to these Defendants with prejudice.

First, Plaintiffs gloss over the significant fact that the October 2009 Proxy clearly and expressly stated that the information supplied by Hong Kong Mandefu was solely Hong Kong Mandefu's representation and did not constitute a representation by TM Entertainment and Media, Inc. ("TM"), and hence, could not possibly be attributed to Defendants Green or Bird. *See* Chase Declaration, Ex. B at 193. Without citation to any relevant authority, Plaintiffs now

---

[6] In its moving brief, CCME argued that Plaintiffs' Section 20(a) claims against Mr. Cheng and Mr. Lam based on the Company's purported violation of Section 10(b) should be dismissed because it is axiomatic that there can be no Section 20 liability where Plaintiffs fail to state the underlying claim against the Company for the violation of Section 10(b). Although Plaintiffs presented argument in opposition on this issue, as explained above (at n.1), CCME's counsel does not represent Mr. Cheng or Mr. Lam in connection with this action.

merely argue that Defendants "should not be allowed to disclaim responsibility by stating that they were not involved in the preparation of the financial information in the October 2009 Proxy." Opp. Mem. at 45. Plaintiffs, however, do not explain why Defendants should be responsible for information they did not provide in connection with the proposed reverse merger and which TM expressly disclaimed in the Proxy. Nor do they cite a single legal authority to support their position that company officers should be liable for information supplied by a different company in these circumstances, particularly when they expressly note that fact and disclaim responsibility to the public. The authorities that Plaintiffs do cite are uniformly inapposite because they do not address any analogous disclaimer in a proxy or other public filing, or even a situation where the information at issue was not within the officer's knowledge but rather concerned facts about a separate company's prior finances and operations. This is not a situation where officers are seeking to shield themselves from responsibility for matters within their knowledge or control by not signing a public filing. Here, they expressly disclaimed responsibility for statements as to the finances and operations of another company as to which they had limited knowledge. Accordingly, dismissal of the Complaint is warranted as a matter of law on this basis alone since Plaintiffs simply cannot properly tie Defendants Green and Bird to a single alleged misstatement.

Second, Plaintiffs' attempt to tie Defendant Bird to the October 2009 Proxy – a document he did not sign – likewise fails on its face as a matter of law. As Plaintiffs acknowledge (Opp. Mem. at 44), in order to invoke the group pleading doctrine, they must at least allege facts establishing that defendants were corporate insiders with direct involvement in the day-to-day affairs of the company when the allegedly false statements were made. Yet, as to Bird, Plaintiffs have not come close to pleading the requisite "insider" status. Plaintiffs' boilerplate allegations

regarding Bird's position within TM only speak to the question of control, but fail altogether to support an inference that he had direct involvement in TM's day-to-day affairs, much less the "insider" status to warrant an inference of knowledge of Hong Kong Mandefu's finances and operations as alleged here. *See, e.g.*, *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 266-67 (S.D.N.Y. 2008) (group pleading doctrine inapplicable where plaintiffs failed to allege with particularity that directors were sufficiently involved in the day-to-day operations or drafting of company statements).   Plaintiffs also fail altogether to address, much less to confront and satisfy, the Supreme Court's new standard as set forth in *Janus Capital Group, Inc. v. First Derivative Traders*, _ U.S. _, 131 S. Ct. 2296, 2302 (2011), as noted in the initial submission of Defendants Green and Bird.  *See Orlan v. Spongetech Delivery Sys., Inc.*, No. 10-CV-4093, 2012 U.S. Dist. LEXIS 44253 (E.D.N.Y. Mar. 29, 2012) (questioning the viability of the group pleading doctrine following *Janus*).

Third, Plaintiffs' Opposition fails to point to any particularized facts in the Complaint to demonstrate that material representations expressly attributed to Hong Kong Mandefu in the October 2009 Proxy were false at the time they were made, much less that Defendants Green and Bird were aware, or even could have been aware, of such alleged falsity.   While Plaintiffs' opposition (Opp. Mem. at 42-43) cites information to show that figures represented by Hong Kong Mandefu were different at a ***much later*** point in time, Plaintiffs do not point to any facts in the Complaint which definitively demonstrate that Hong Kong Mandefu's October 2009 representations were false at the time they were made.   Thus, for example, Plaintiffs again point to a Muddy Waters report released on February 3, 2011, itself based largely on unsubstantiated and anonymous sources, but nothing in that report demonstrates that any statement made in the Proxy by Hong Kong Mandefu as of October 2009 was in fact false.   Likewise, Plaintiffs allege

that there was a second set of books, but there is no allegation as to the knowledge of Defendants Green and Bird of the existence of such books, or even that they had any reason to be aware of such books.  Moreover, at best, Plaintiffs refer to 2009 year-end financial representations but make no effort to address the financial information stated by Hong Kong Mandefu in the October 2009 Proxy covering a separate time period.  Plaintiffs also fail to identify what specifically Defendants Green and Bird failed to do at the time in connection with any due diligence.

### B.   PLAINTIFFS' ALLEGATIONS OF SCIENTER AGAINST DEFENDANTS GREEN AND BIRD ARE INSUFFICIENT TO STATE A CLAIM

Plaintiffs fail to provide the requisite factual support to demonstrate the scienter of Defendants Green and Bird.  Indeed, as previously demonstrated, Plaintiffs' entire theory of scienter makes no sense.  Plaintiffs' putative theory is that Defendants Green and Bird knowingly participated in a fraud in October 2009, with the apparent hope that a major accounting firm and all of CCME's professional advisors, sophisticated investors, and market analysts, would not discover the fraud for at least a year when they could finally sell their unregistered shares.  On its face, this theory is nonsensical and nothing in Plaintiffs' Opposition serves to clarify or dispel the specious nature of their theory.

Initially, Plaintiffs cannot demonstrate that Defendants Green and Bird had the requisite motive and opportunity to commit fraud.  Plaintiffs continue to press that "if the transaction with Hong Kong Mandefu did not go through, Green and Bird's approximately $17.2 million of shares in TM would become 'worthless.'"  Opp. Mem. at 46.  Plaintiffs concede, however, that "TM's prospectus for its IPO provided that the company had just two years (until October 17, 2009) to effect such a transaction, or the company would dissolve by operation of law, forcing the company to return to its investors' $77 million, and rendering Defendants Green and Bird's shares (which were in theory valued at $17.2 million on April 23, 2009) worthless."  Opp. Mem.

at 5.   Thus, Plaintiffs acknowledge that Defendants' alleged "motive" to commit fraud was openly disclosed to TM's investors two *years* prior to Defendants' alleged misrepresentations and two *years* before anyone had so much as mentioned the existence of Hong Kong Mandefu. Simply stated, and contrary to the Plaintiffs' implication, TM's endeavor to effectuate a merger was perfectly legal and proper.   One cannot reasonably infer from such an event that the conduct of Defendants Green and Bird is anything but legal and proper.  *See Tellabs*, 551 U.S. at 314.

Plaintiffs' reliance on the positions of Defendants Green and Bird as directors and officers of TM to establish their scienter likewise fails.   Opp. Mem. 46.   Scienter allegations of this type have been repeatedly and consistently rejected in the Second Circuit.  *See Kalnit*, 264 F.3d 131; *In re KeySpan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 387 (E.D.N.Y. 2003) (plaintiffs' allegations that defendants may be charged with knowledge of activities by virtue of their high level positions are insufficient); *In re Sotheby's Holdings, Inc. Sec. Litig.*, No. 00 Civ. 1041, 2000 U.S. Dist. LEXIS 12504 at *22 (S.D.N.Y. Aug. 31, 2000) ("[B]oilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board memberships or executive positions are insufficient to plead scienter"); *In re Health Mgmt. Inc. Sec. Litig.*, 970 F. Supp. 192, 204-05 (E.D.N.Y. 1997) (defendant's position as a director, her responsibility for "monitoring the overall management and direction" of the company, and her access to inside information were insufficient to establish inference of scienter).

Finally, Plaintiffs still do not point to anything unusual whatsoever in the conduct of Defendants Green and Bird in connection with their shares, and fail otherwise to demonstrate any conscious misbehavior or recklessness on their part.   Although Plaintiffs repeatedly talk about "red flags" in conclusory terms (Opp. Mem. 46-47), nowhere do Plaintiffs state specifically what "red flags" Defendants Green and Bird allegedly saw or should have seen.

Instead, Plaintiffs impermissibly rely on these Defendants' positions with TM to state in conclusory fashion that they must have had access to Hong Kong Mandefu information relevant to the alleged fraud. Courts in this Circuit, however, have repeatedly rejected this "access to information" theory of recklessness, requiring instead particularized allegations of what information was available to defendants. *See In re NTL Inc. Sec. Litig.*, 347 F. Supp. 2d 15, 28, 33 (S.D.N.Y. 2004). Such a requirement is, of course, even more compelling in this instance where the information at issue relates to Hong Kong Mandefu's finances and operations at a time when Defendants Green and Bird had no involvement or knowledge of same.

III.   **PLAINTIFFS' CLAIM AGAINST ROBBINS SHOULD BE DISMISSED**

   A.   **FAILURE OF PLAINTIFFS' FACTUAL ALLEGATIONS TO CONSTITUTE INFERENCES OF PROPERLY PLED FALSE STATEMENTS BY DEFENDANT ROBBINS**

In their Opposition to Defendant Robbins' Motion to Dismiss Plaintiffs seem to suggest that Defendant Robbins believes that Plaintiffs have adequately alleged that Robbins made materially false and misleading statements in an audit opinion covering CCME's financial statements for the years ending December 31, 2008 and December 31, 2007. Opp. Mem. at 47. Such an opinion is belied by a careful consideration of CCME's Memorandum in support of its Motion to Dismiss ("Doc 103"), with the more plausible explanation that short sellers had engaged in an attack upon CCME's financial status for their own benefit as CCME stockholders. Indeed, in its robust defense against Plaintiffs' allegations, CCME pointed out that reliance on "a complaint that simply points to and relies entirely on the unsubstantiated and uncorroborated allegations of short sellers is not sufficiently pleaded." (citations omitted), Doc 103, p. 2. Rule 9(b), case law, and the PSLRA teach that rather than pleading opinions, Plaintiffs must plead facts from which a reasonable inference can be drawn that CCME's SEC filings, in fact, contain

material misstatements supporting a strong inference that the CCME Defendants, as well as its auditors, knew or should have known that the filings contained material misstatements. CCME points out that repetition of short sellers' allegations frequently based on multiple level hearsay based upon unidentified and unqualified sources cannot constitute "facts". Doc 103, p. 2. Moreover, as CCME articulates in its memorandum, (Doc 103) the questions by its auditor DTT HK, (Defendant Robbins successor), raised in its March 3, 2011 letter to CCME's audit committee:

> are just that, questions, none of which were thought by DTT to be sufficiently important to raise prior to the publication of the short sellers' "reports." . . . While these questions may imply the need for additional audit procedures, as DTT concluded, Plaintiffs nowhere explain how they translate into the material overstatement of the Company's financial results for the years 2006 through 2009 and the first three quarters of 2010, as Plaintiffs contend . . . . **Once again, supposition and innuendo are not substitutes for well pleaded facts.** (Doc 103, p. 3) (emphasis supplied).

Plaintiffs' opinions about the failures of Defendant Robbins are even more tarnished. In fact, nowhere has Plaintiffs' continual drum beat against Defendant Robbins produced anything except flailing opinions lacking any factual basis.

## B.    PLAINTIFFS' IMPROPER RELIANCE ON CITED CASE LAW IN SUPPORT OF ITS ASSERTIONS AGAINST DEFENDANT ROBBINS

In the five-page Opposition to Robbins' Motion to Dismiss, Plaintiffs cite this Court to nine (9) judicial opinions in an effort to bolster their claims against Defendant Robbins. Quite naturally, they attempt to rely most heavily upon this Court's Opinion in *Beno Varghese et al. v. China Shenghuo Pharmaceutical Holdings, Inc., et al.*, 672 F. Supp. 2d 596 (S.D.N.Y. 2009). However, Plaintiffs seem to have missed the crucial distinction that the individual defendants charged, collectively known as the CSP Defendants, admitted that disclosed financial results were false and presented in violation of GAAP. CSP also announced that it was re-stating

financials for fiscal years ending December 31, 2007 and the first quarter of 2008. *See id.* at 603, 604. As a consequence of CSP's admissions, affecting both CSP Defendants and auditor, Hansen Barnett and Maxwell, P.C., ("HB&M"), this Court concluded that the Plaintiffs had properly alleged GAAS violations made by HB&M while conducting its audit. *See id.* at 609. This Court also concluded that the Plaintiffs properly pled scienter inasmuch as Plaintiffs alleged that HB&M was aware through CSP's own disclosures and CSP's SEC filing that there were ongoing serious problems with CSP's financial reporting.

However, such was not the case with Defendant Robbins. Not one fact pled by Plaintiffs shows an admission by CCME that it made any false or misleading statements. Not one fact pled by Plaintiffs shows that Defendant Robbins made any false or misleading statement of fact constituting an admission or other inference that its audits were not conducted in accordance with GAAS, and that its financial statements were not in conformity with GAAP. Accordingly, Plaintiffs have not properly pled in accordance with Rule 9(b) and PSLRA's particularity requirements. Nor have they properly pled scienter. Under the stringent standards for alleging scienter against auditors, as this Court observed in *Varghese*:

> In the context of fraud claims against an auditor, plaintiffs must allege that the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts.

*Id*. at 609-10 (*citing In re Scottish Re Group Secs. Litig.,* 524 F. Supp. 2d 370, 398 (S.D.N.Y. 2007) (internal quotation marks omitted).

## C.    ROBBINS' ALLEGED PCAOB VIOLATIONS ARE IRRELEVANT

In their Opposition and without particularization, Plaintiffs cite this Court to *Freudenburg v. E*Trade Financial Corporation*, 712 F. Supp. 2d 171 (S.D.N.Y. 2010), and *SEC*

*v. Youmans*, 729 F.2d 413, 415 (6th Cir. 1984) as support for their contention that Robbins'
PCAOB violations provide a relevant factor in determining the likelihood of future securities
laws violations.  Neither case is persuasive.  In *Freudenburg*, the complaint pled multiple facts of
defendants involved in fraudulent activities that were properly alleged and based upon a plethora
of material facts, unlike the instant case where Plaintiffs engage in "[s]imply repeating short
sellers' allegations, which frequently are based on multiple-level hearsay bottomed on
information from unidentified and unqualified sources, . . . [where] . . . the short seller reports
traffic in hyperbole rather than facts . . . ."  Doc 103, p. 2.  Perusal of the opinion in *Freudenburg*
reveals that there is no relationship between the activities in that case with anything regarding
any of the Defendants in this case.  *SEC v. Youmans* also fails to provide a helpful analysis and
there is no basis to compare the Robbins PCAOB decisions with the facts and circumstances set
forth in *Freudenburg.*  Accordingly, *Freudenburg* is simply inapposite to the instant case.  *See*
Complaint, Doc 1, and Consolidated Amended Class Action Complaint, Doc 68, in CM/ECF
S.D.N.Y. Civil Docket No. 1:07-cv-08538-JPO-MHD.

  In *SEC v. Youmans*, the facts are also inappropriate to argue in this case.  The Sixth
Circuit opinion reveals that the record on appeal established that two defendants, Holliday and
Chepul, with scienter, engaged in serious and repeated violations of the securities laws over a
four-year period.  Such is not the instant case.  Plaintiffs' PCAOB citations about the alleged
behavior of Defendant Robbins are inapposite and inappropriate.  *See also Edward J. Goodman
Life Income Trust v. Jabil Circuit, Inc*., 595 F. Supp. 2d 1253, 1285-86 (M.D. Fla. 2009)
(PCAOB finding of previous deficiency involving different company insufficient to satisfy
strong inference test); *Fidel v. Farley*, 392 F.3d 220, 231 (6th Cir. 2004) (settlement of claims

arising from one audit fails to create strong inference of scienter involving different financial records).

## IV.   THE OPPOSITION PROVIDES NO BASIS TO SUSTAIN PLAINTIFFS' CLAIMS AGAINST DTTL OR DELOITTE U.S.

Plaintiffs fall far short of stating a claim against either DTTL or Deloitte U.S. under Sections 20(a) and 10(b).  As to Section 20(a), the Amended Complaint fails to allege facts showing any of the three required elements:  (1) that DTTL had actual control over DTT HK, or that Deloitte U.S. had actual control over DTTL, (2) that either DTTL or Deloitte U.S. had actual control over DTT HK's audit of CCME, much less (3) that they culpably participated in that audit.  Instead, the Opposition relies almost exclusively on *Parmalat*, even though this Court and the Second Circuit have recently rejected the standard applied in *Parmalat*, and, in marked contrast to the current case, *Parmalat* alleged specific involvement in the audit itself.  (DTTL Br. at 11-14; Deloitte U.S. Br. at 13-14.)  As to Section 10(b), not only does *Janus* strongly suggest that Plaintiffs can no longer state a vicarious liability claim, but, even if they could, the Section 10(b) claims would still fail because the Amended Complaint does not and cannot allege that DTTL or Deloitte U.S. had any involvement in the CCME audit.  Plaintiffs' last-ditch request for "targeted discovery" is barred by the PSLRA, and the claims against DTTL and Deloitte U.S. should be dismissed with prejudice.[7]

### A.   THE SECTION 20(A) CLAIMS AGAINST DTTL AND DELOITTE U.S. ARE INADEQUATE

To state a Section 20(a) claim against DTTL or Deloitte U.S., Plaintiffs must adequately allege (in addition to a primary violation by the allegedly controlled person):  (1) actual control over a primary violator, (2) actual control over the audit at issue, and (3) culpable participation in

---

[7] We understand that DTT HK will shortly file its motion to dismiss, which if granted would require dismissal of the claims against DTTL and Deloitte U.S. as well.

the audit.  *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 486-87 (S.D.N.Y. 2005) (*Alstom III*).  The Amended Complaint satisfies none of these elements.

  *Actual Control Over A Primary Violator.*  As explained in DTTL's opening brief, the Amended Complaint's broad allegations that DTTL promulgates and enforces quality control standards and that DTTL and its members are one firm—the only "control" allegations the Opposition cites as to DTTL—are insufficient to create a plausible inference of actual control over DTT HK.  (DTTL Br. at 8-11.)[8]  Similarly, as explained in Deloitte U.S.'s opening brief, the Amended Complaint's generic allegations raise no plausible inference that Deloitte U.S. had actual control over DTTL.  (Deloitte U.S. Br. at 9-12.)  The Opposition simply fails to address the cases cited by DTTL and Deloitte U.S., including decisions from this Court and the Second Circuit demonstrating the insufficiency of Plaintiffs' allegations.

  *Actual Control Over The Audit.*  The Opposition refuses to recognize (Opp. Mem. at 69 and n.61) what this Court has made clear:  that Section 20(a) requires Plaintiffs to allege facts sufficient to support a plausible inference that DTTL and Deloitte U.S. had "actual control over the transaction in question."  *Alstom III*, 406 F. Supp. 2d at 487 (quotation omitted).  There is not a single allegation in the Amended Complaint that DTTL or Deloitte U.S. played *any* role whatsoever in the CCME audit, much less a controlling role.  As to DTTL, the conclusory allegations that DTTL established quality control standards for Deloitte member firms are clearly insufficient to support an inference that DTTL had actual and specific control over DTT HK's audit of CCME.  (*See* DTTL Br. at 11-14.)  Recognizing this weakness, Plaintiffs now suggest

---

[8] Indeed, accepting Plaintiffs' theory of control against DTTL would mean that every membership accounting organization would be liable for all conduct of all of its members, and more generally every membership organization that promulgates and enforces quality control standards would be liable for any alleged misconduct by its members.  For instance, a state bar association could have vicarious liability for member attorneys' ethical violations or malpractice.  This never has been the law, nor is it sound policy to discourage membership organizations from promulgating quality standards.

for the first time in their Opposition that DTTL undertook a role with respect to DTT HK's CCME engagement *after* the audit was completed and *after* CCME's alleged fraud was revealed. Opp. Mem. at 60-61, 69. Apart from the fact that this assertion is not pleaded in the Amended Complaint, it is irrelevant. To state a claim, the pleading must allege involvement in and control over the audit itself, not involvement after the fact. As to Deloitte U.S., there is simply no allegation at all in the Amended Complaint (or Opposition) that Deloitte U.S. had any involvement in, much less actual control over, DTT HK's audit of CCME. (Deloitte U.S. Br. at 12-13.)

*Culpable Participation*. The Opposition's argument that culpable participation is not an element of a Section 20(a) claim plainly contradicts the law of the Second Circuit and this Court, and should be rejected. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007); *Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 413-14 (S.D.N.Y. 2010). Plaintiffs' alternative argument—that culpable participation has somehow been pleaded under the theory that DTTL failed to supervise DTT HK's audit of CCME in the face of red flags, and that Deloitte U.S. failed to supervise DTTL (Opp. Mem. at 68, 74)—is meaningless. The allegation that two entities who played no role whatsoever in the audit failed to supervise it—who indeed are not even alleged to have been *aware* of the audit—can hardly be spun into an inference of "culpable participation." There is simply no way to transform a complete lack of participation into culpable participation. Plaintiffs' internally inconsistent, unpleaded, conclusory allegations thus do not come close to meeting the requirement to plead particularized facts sufficient to support a strong inference that DTTL and Deloitte U.S. acted with scienter. *See Alstom III*, 406 F. Supp. 2d at 491. Simply put, this alternative theory suffers from the same fatal flaw as the Opposition's other arguments as to DTTL and Deloitte U.S.: there is no

allegation that either entity was aware at the time of, much less involved in, the audit in issue. There is thus nothing in the pleading to show—nor do Plaintiffs allege—that either entity was aware of the supposed red flags concerning the CCME audit, much less that either acted with scienter.[9]

## B. THE OPPOSITION PROVIDES NO SUPPORT FOR THE SECTION 10(B) CLAIMS

### 1. Vicarious Liability Claims Do Not Survive *Janus*

As the Opposition concedes (*see* Opp. Mem. at 66), the Amended Complaint does not allege that either DTTL or Deloitte U.S. was the "maker" of any statement, *i.e.*, "the person or entity that ultimately has authority over a false statement." *See Janus Capital*, 131 S. Ct. at 2303; *see also* DTTL Br. at 17-19; Deloitte U.S. Br. at 16-20. Plaintiffs argue that they need not satisfy *Janus*, but make no attempt to reconcile their position with *Janus*'s holding—that the Court would "not expand liability" beyond the party with ultimate authority over the statement. *Id.* The Opposition instead makes the meaningless observation that *Janus* does not contain the words "vicarious," "respondeat superior," or "alter ego," and cites only to pre-*Janus* authority (Opp. Mem. at 61-63) without addressing the *Janus* Court's explicit refusal to expand Section 10(b) to permit Plaintiffs "to disregard the corporate form," 131 S. Ct. at 2304, which is exactly what Plaintiffs seek to do here.[10]

---

[9] The cases Plaintiffs cite in support of their "failure to supervise" argument are inapposite. *See STMicroelectronics v. Credit Suisse Grp.*, 775 F. Supp. 2d 525, 533, 537, 538 (E.D.N.Y. 2011) (stating in dicta that culpable participation was met where bank participated in and benefitted financially from the fraud committed by its brokers); *Anwar*, 728 F. Supp. 2d at 427 (finding Section 20(a) claim where the control person (Citco Group) allegedly was aware of numerous, specific red flags such as "that Madoff served as the investment manager, sub-custodian, and trade execution agency of the Funds, 'hugely increasing this risk of fraud, and the need for independent verification'"); *Compudyne Corp. v. Shane*, 453 F. Supp. 2d 807, 830-31 (S.D.N.Y. 2006) (broker-dealer had "affirmative duty" under the federal securities laws to supervise employees).

[10] Other courts have applied *Janus*'s directive beyond its specific facts. *See In re Optimal U.S. Litig.*, No. 10 Civ. 4095, 2011 U.S. Dist. LEXIS 119141, at *18-*19 (S.D.N.Y. Oct. 14, 2011) (following *Janus*'s

18

### 2. The Amended Complaint Fails To Adequately Allege Respondeat Superior Liability

Even if vicarious liability under Section 10(b) had survived *Janus*, the Amended Complaint fails to state any respondeat superior/agency claim, again because it fails adequately to allege that either DTTL or Deloitte U.S. had any involvement in the CCME audit. *See Anwar*, 728 F. Supp. 2d at 459-60 (finding that plaintiff must allege specific involvement in the audit at issue); *see also* DTTL Br. at 21-24.

Nor have Plaintiffs sufficiently alleged—as they concede they must—that either DTTL or Deloitte U.S. manifested an intent to grant DTT HK authority to act on their behalf. Opp. Mem. at 63-64. As to DTTL, the Opposition points only to the conclusory allegations that DTT HK is a "member firm" of DTTL and that DTTL promulgated quality control standards for its members to follow. *See Id.* at 59-60, 69. These allegations do not create a plausible inference that DTTL agreed that DTT HK would be its agent for the CCME audit. *See Anwar*, 728 F. Supp. 2d at 459 (requiring allegations of manifestation by principal that agent shall act for him, acceptance of undertaking by agent and understanding that principal will control undertaking). Indeed, the only statements *by DTTL* referenced in the Amended Complaint are from DTTL's website, in which DTTL publicly and expressly disclaims any agency relationship, stating that

---

instruction not to expand liability "where Congress already imposed liability under other statutory provisions," and concluding that a 100% owner was not liable for its subsidiary's statements); *see also Fulton County Employees Ret. Sys. v MGIC Inv. Corp.*, 675 F.3d 1047, 1051-52 (7th Cir. 2012) (rejecting, under *Janus*, argument that company that invited others to speak at press conference can be liable under Section 10(b)); *Kerr v. Exobox Tech. Corp.*, No. H-10-4221, 2012 WL 201872, at *11 (S.D. Tex. Jan. 23, 2012) (finding that defendant could not be liable under Section 10(b) simply because he controlled the "maker" of a statement and that, under *Janus*, such a claim is properly brought only under Section 20(a)).

"DTTL and each DTTL member firm are separate and distinct legal entities, *which cannot obligate each other*." (Ex. 2 to DTTL Br.) (emphasis added).[11]

As to Deloitte U.S., Plaintiffs assert for the first time in their Opposition that Deloitte U.S. is liable under an agency theory. Opp. Mem. at 72. Nowhere in the Amended Complaint is there any assertion of an agency theory against Deloitte U.S., nor is there any factual allegation that a principal-agent relationship existed between Deloitte U.S. and any other entity. Instead, the only theory of vicarious liability mentioned with respect to Deloitte U.S. is alter ego. (Compl. ¶ 32.) But even if Plaintiffs had attempted to plead an agency theory against Deloitte U.S., it would fail for the same reasons that the agency claim against DTTL fails: there are no allegations that Deloitte U.S. had any involvement in the CCME audit, much less that it manifested any intention for DTTL or DTT HK to act as its agent with respect to that audit.

Finally, the Amended Complaint fails to allege, as it must, that DTT HK's allegedly false statements are attributable to DTTL and Deloitte U.S. The Opposition instead argues that attribution is an issue of fact. Opp. Mem. at 66. However, the Amended Complaint is devoid of any factual allegations to support the inference that anyone attributed DTT HK's audit opinion to DTTL or Deloitte U.S. To the contrary, the undisputed (and public) facts, as well as Plaintiffs' own pleading, make clear that DTT HK alone performed the audit and issued the audit opinion. (DTTL Br. at 4-5; Compl. ¶¶ 23, 70, 71, 88, 101, 114, 122-43.)

### 3.   The Alter Ego Theory Against Deloitte U.S. Fails

As explained in Deloitte U.S.'s opening brief (Deloitte U.S. Br. at 20-24), the only vicarious liability theory against Deloitte U.S. even mentioned in the Amended Complaint—an

---

[11] For purposes of this motion, this statement need not be considered for its truth, but rather for the fact that DTTL made the statement. *Cf. Anwar v. Fairfield Greenwich Ltd.*, Nos. 09 Civ. 0118, 10 Civ. 2878, --- F. Supp. 2d ----, 2011 WL 6288406, at *2 (S.D.N.Y. Dec. 14, 2011) (court may consider documents attached to, incorporated by reference in, or otherwise integral to complaint when reviewing a motion to dismiss).

"alter ego" theory—fails because there is no allegation that Deloitte U.S. had any involvement in the "transaction at issue," *i.e.*, the CCME audit, and therefore there can be no allegation that Deloitte U.S. completely dominated DTTL and DTT HK with respect to that audit. *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997); *see also Fin. One, Inc. v. Timeless Apparel, Inc.*, No. 09 Civ. 9397, 2011 WL 1345030, at *5 (S.D.N.Y. Mar. 29, 2011) (rejecting alter ego theory as, "[e]ven if the record was sufficient to support a domination theory," it was insufficient to show domination "with respect to the transaction at issue") (quotation omitted)).

Nor does the Opposition address the cases cited by Deloitte U.S. establishing that the Amended Complaint fails to meet the high standard for pleading domination.  (Deloitte U.S. Br. at 21-23.)  Indeed, the Opposition cites no precedent at all for asserting alter ego liability against Deloitte U.S. on the bare facts alleged.[12]

### C.     THERE IS NO BASIS FOR PLAINTIFFS' IMPROPER REQUEST FOR DISCOVERY

Plaintiffs' request to take "targeted discovery" is without merit.  To begin, it violates the PSLRA discovery stay.  *See* 15 U.S.C. § 78u-4(b)(3)(B) (2012).  Moreover, there are simply no factual allegations on which "targeted discovery" could proceed here because Plaintiffs have failed to allege any involvement at all by DTTL or Deloitte U.S. in the CCME audit, let alone "culpable participation."   *See Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009) ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or

---

[12]  The only case Plaintiffs cite is *In re Alstom SA Sec. Litig.*, 454 F. Supp. 2d 187 (S.D.N.Y. 2006), where the Court found that, "by a narrow margin," an alter ego claim could proceed against the parent company of a wholly-owned subsidiary given allegations that the corporations disregarded corporate formalities and the parent used its control of the subsidiary to carry out the fraud at issue. *Id.* at 216. Here, by contrast, Deloitte U.S. does not own DTTL, and there are no allegations of a disregard of corporate formalities or of any involvement by either entity in the CCME audit.

otherwise.").  Plaintiffs' request for discovery is a last-ditch effort to construct a claim against DTTL and Deloitte U.S., for which they can plead no factual basis at all.[13]

## V.     LEAVE TO AMEND SHOULD BE DENIED

In one sentence on the last page of their Opposition, Plaintiffs make a perfunctory suggestion that they should be allowed to file a Second Amended Complaint.  *See* Opp. Mem. at 75.  Plaintiffs do not provide any description of the content of any new pleading, nor do they explain how any additional complaint would cure the fatal deficiencies detailed above.  Leave to amend is properly denied in such circumstances.  *See, e.g.*, *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, No. 10 Civ. 2835, 2011 WL 4357368, at *23 n.61 (S.D.N.Y. Sept. 19, 2011).

---

[13]  The two cases cited in the Opposition are inapposite.  *See Munoz v. China Expert Tech., Inc.*, No. 07 Civ. 10531, 2011 U.S. Dist. LEXIS 128539 (S.D.N.Y. Nov. 4, 2011) (not even addressing "targeted discovery" to cure inadequate pleading but denying motion to dismiss given factual allegations that defendant participated in audit and had ultimate authority over audit opinion); *Alstom III*, 406 F. Supp. 2d at 503-04 (dismissing several control person claims *without* permitting discovery, but allowing limited discovery to resolve "close call" regarding whether two corporate officer defendants, who had culpably participated in fraud at issue, had actual control over their company, which was the primary violator).  Notably, in granting discovery in *Alstom III*, the Court relied upon the pleading standard set out in the Second Circuit's decision in *Twombly v. Bell Atlantic Corp.*, 425 F.3d 99 (2d Cir. 2005), which was later reversed in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

## <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants (and each of them) respectfully request that the Court grant their respective motions dismissing Plaintiffs' Amended and Consolidated Complaint as against them and granting such other and further relief as the Court deems just and equitable.

Dated: New York, New York
      May 14, 2012

Respectfully submitted,

As to Sections I and V
LOEB & LOEB LLP

By:   /s/ Eugene R. Licker
Eugene R. Licker (EL-0334)
elicker@loeb.com
John A. Piskora (JP-1224)
jpiskora@loeb.com
345 Park Avenue
New York, NY  10154
Telephone: 212.407.4000
*Attorneys for Defendant*
*China MediaExpress Holdings, Inc.*

As to Sections II and V
MORRISON COHEN LLP

By:   /s/ Donald H. Chase
Donald H. Chase (DC-6708)
dchase@morrisoncohen.com
Edward P. Gilbert (EG-3730)
egilbert@morrisoncohen.com
909 Third Avenue
New York, New York  10022
Telephone: (212) 735-8600
*Attorneys for Defendants*
*  Theodore Green and Malcolm Bird*

23

As to Sections III and V
MICHAEL E. MARR, ATTORNEY-AT-LAW
By:_____/s/ Michael E. Marr (*pro hac vice*)
Michael E. Marr (MD Federal Bar # 99)
mmarr@marrlaw.com
3107 Tyndale Avenue
Baltimore, Maryland 21214-3429
Telephone: 410-254-7000
*Attorneys for A.J. Robbins P.C.*

As to Sections IV and V
HUGHES HUBBARD & REED LLP

By:_____/s/ William R. Maguire_____
William R. Maguire
maguire@hugheshubbard.com
Savvas A. Foukas
foukas@hugheshubbard.com
Jesse James
jamesj@hugheshubbard.com
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 837-6000
*Attorneys for Deloitte LLP*

As to Sections IV and V
LATHAM & WATKINS LLP

By:_____/s/ Miles N. Ruthberg
Miles N. Ruthberg
Miles.Ruthberg@lw.com
Christopher Harris
Christopher.Harris@lw.com
Kevin M. McDonough
Kevin.McDonough@lw.com
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Michael J. Dell
mdell@kramerlevin.com
1177 Avenue of the Americas
New York, NY  10036
Telephone: (212) 715-9100
*Attorneys for Deloitte Touche Tohmatsu Limited*