UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE CHINA MEDIAEXPRESS HOLDINGS,
INC. SHAREHOLDER LITIGATION

Civil Action No. 11-cv-0804 (VM)

This Document Relates to:

ALL ACTIONS

CLASS ACTION

ECF Case
Electronically Filed

## NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF
## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs respectfully submit the following supplemental authority, *IBEW Local 98
Pension Fund v. Best Buy Co., Inc.*, No. 11-429 (D. Minn.) (Order dated Aug. 6, 2014), attached
hereto as Exhibit A.

This opinion, one of the first district court opinions to interpret *Halliburton Co. v. Erica
P. John Fund, Inc.*, __ U.S. __, 134 S. Ct. 2398 (2014), is relevant to Plaintiff's argument that a
misrepresentation or omission may cause the requisite "price impact" by *maintaining* existing
market expectations and the existing price:

> Even though the stock price may have been inflated prior to the earnings phone
> conference, the alleged misrepresentations could have further inflated the price,
> *prolonged the inflation of the price*, or slowed the rate of fall. This impact on
> price can support a securities fraud claim. [Exhibit A at 13 (emphasis added).]

This supplemental authority should be added to the authorities cited in footnote 36 on
page 9 of Plaintiff's *Memorandum of Law in Opposition to DTT's Consolidated Surreply to
Plaintiffs' Motion for Class Certification and Reply in Support of DTT's Motion to Strike the
Opinions of Cynthia L. Jones* ("Pltf's Surr. Opp.") (ECF No. 219).

This supplemental authority is also relevant to Plaintiff's argument that the decline in
share price following a corrective disclosure "is significant evidence of 'price impact' at the time

of the false statement." Pltf's Surr. Opp. at 9 n.38 (ECF No. 219). This issue is addressed on

page 13 of the Supplemental Authority ("Moreover, price impact can be shown by a decrease in

price following a revelation of the fraud."). Exhibit A at 13.

DATED: August 11, 2014

**HAGENS BERMAN SOBOL SHAPIRO LLP**

By _____*Karl P. Barth*_____
            Steve W. Berman
            Karl P. Barth
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
karlb@hbsslaw.com

Jason A. Zweig (JZ-8107)
HAGENS BERMAN SOBOL SHAPIRO LLP
One Penn Plaza, 36th Floor
New York, NY 10119
Telephone: (212) 752-5455
Facsimile: (917) 210-3980
jasonz@hbsslaw.com

Reed R. Kathrein
Peter E. Borkon
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
peterb@hbsslaw.com

*Lead Counsel for the Proposed Class*

Michael Eisenkraft (ME-6974)
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
meisenkraft@cohenmilstein.com

- 2 -

Steven J. Toll
Julie Goldsmith Reiser
S. Douglas Bunch (SB-3028)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3964
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
stoll@cohenmilstein.com
jreiser@cohenmilstein.com
dbunch@cohenmilstein.com

*Co-counsel for the Proposed Class*

010244-11  710409 V1

## **CERTIFICATE OF SERVICE**

I hereby certify that I am the ECF User whose ID and password are being used to electronically file the foregoing with the Clerk of the Court using the CM/ECF system on August 11, 2014, which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*/s/ Karl P. Barth*

KARL P. BARTH

## Mailing Information for a Case 1:11-cv-00804-VM-GWG

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Karl P. Barth**
  karlb@hbsslaw.com

- **Gary Frederick Bendinger**
  gbendinger@sidley.com,nyefiling@sidley.com

- **Jeffrey A. Berens**
  jeff@dyerberens.com

- **Steve W. Berman**
  steve@hbsslaw.com,carrie@hbsslaw.com,jeniphr@hbsslaw.com

- **Jeniphr Breckenridge**
  jeniphr@hbsslaw.com

- **Stephen Douglas Bunch**
  dbunch@cohenmilstein.com,efilings@cohenmilstein.com

- **Donald Howard Chase**
  dchase@morrisoncohen.com,courtnotices@morrisoncohen.com

- **Patrick Vincent Dahlstrom**
  pdahlstrom@pomlaw.com

- **Marshall Pierce Dees**
  mdees@holzerlaw.com

- **Michael Benjamin Eisenkraft**
  meisenkraft@cohenmilstein.com,efilings@cohenmilstein.com

- **Robert Craig Finkel**
  rfinkel@wolfpopper.com,cdunleavy@wolfpopper.com,mgianfagna@wolfpopper.com,nmackiel@wolfpopper.com

- **Michael Ira Fistel , Jr**
  michaelf@johnsonandweaver.com,paralegal@johnsonandweaver.com

- **Savvas Antonios Foukas**
  foukas@hugheshubbard.com

- **Lionel Z. Glancy**
  lglancy@glancylaw.com,mmgoldberg@glancylaw.com,csadler@glancylaw.com,pbinkow@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com

- **David Andrew Gordon**
  dgordon@sidley.com,efilingnotice@sidley.com

- **Marc Ian Gross**
  migross@pomlaw.com

- **Jonathan Richard Horne**
  jhorne@rosenlegal.com

- **Elizabeth Leanne Howe**
  ehowe@sidley.com,nyefiling@sidley.com

- **Jesse James**
  jamesj@hugheshubbard.com

- **Reed Richard Kathrein**
  reed@hbsslaw.com,peterb@hbsslaw.com,pashad@hbsslaw.com,sf_filings@hbsslaw.com

- **Phillip C. Kim**
  pkim@rosenlegal.com

- **Eugene R. Licker**
  elicker@loeb.com,nydocket@loeb.com,tcummins@loeb.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,lpvega@pomlaw.com

- **William R. Maguire**
  maguire@hugheshubbard.com

- **Michael Edward Marr**
  mmarr@marrlaw.com

- **Kim Elaine Miller**
  kim.miller@ksfcounsel.com,kimmiller225@yahoo.com

- **David S. Nalven**
  davidn@hbsslaw.com,Seanh@hbsslaw.com

- **Julie Goldsmith Reiser**
  jreiser@cohenmilstein.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Miles Norman Ruthberg**
  miles.ruthberg@lw.com,jessica.bengels@lw.com,jason.grossman@lw.com

- **Gazeena Kaur Soni**
  gsoni@sidley.com,nyefiling@sidley.com

- **Steven Jeffrey Toll**
  stoll@cohenmilstein.com,efilings@cohenmilstein.com

- **Laura Maines Vasey**
  lvasey@loeb.com,nydocket@loeb.com,tcummins@loeb.com

- **Michael Dana Warden**
  mwarden@sidley.com,nyefiling@sidley.com,lkelemen@sidley.com,dcefilingnotice@sidley.com,lsolie@sidley.com

- **Jason Allen Zweig**
  jasonz@hbsslaw.com,peterb@hbsslaw.com,reed@hbsslaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Michael              Goldberg
Glancy Binkow & Goldberg, LLP (CA)
1801 Avenue of the Stars
Suite 311
Los Angeles, CA 90067

Howard               G. Smith
Smith & Smith
3070 Bristol Pike
Bensalem, PA 19020
```

# Exhibit A

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

IBEW Local 98 Pension Fund,
Marion Haynes, and Rene LeBlanc,
individually and on behalf of all others
similarly situated,

        Plaintiffs,

v.

Best Buy Co., Inc.; Brian J. Dunn;
Jim Muehlbauer; and Mike Vitelli,

        Defendants.

Civil No. 11-429 (DWF/FLN)

**MEMORANDUM
OPINION AND ORDER**

---

Clayton D. Halunen, Esq., and Melissa W. Wolchansky, Esq., Halunen & Associates;
Shawn J. Wanta, Esq., Baillon Thome Jozwiak & Wanta LLP; Aelish M. Baig, Esq.,
Kenneth J. Black, Esq., Daniel J. Pfefferbaum, Esq., and Shawn A. Williams, Esq.,
Robbins Geller Rudman & Dowd LLP; and Vernon J. Vander Weide, Esq., Lockridge
Grindal Nauen PLLP, counsel for Plaintiffs IBEW Local 98 Pension Fund and Marion
Haynes, Lead Plaintiff.

Clayton D. Halunen, Esq., Halunen & Associates; Shawn J. Wanta, Esq., Baillon Thome
Jozwiak & Wanta LLP; D. Seamus Kaskela, Esq., and David M. Promisloff, Esq.,
Barroway Topaz Kessler Meltzer & Check, LLP; and Garrett D. Blanchfield, Jr., Esq.,
Reinhardt Wendorf & Blanchfield, counsel for Plaintiff Rene LeBlanc, individually and
on behalf of all others similarly situated.

Amy Slusser Conners, Esq., David W. Beehler, Esq., Jan M. Conlin, Esq., Michael V.
Ciresi, Esq., Nicole S. Frank, Esq., Patricia Furlong, Esq., and Stephen P. Safranski, Esq.,
Robins Kaplan Miller & Ciresi LLP, counsel for Defendants.

---

# INTRODUCTION

This matter is before the Court on a Motion to Certify Class, Appoint Class

Representative and Appoint Class Counsel brought by Lead Plaintiff Marion Haynes

(Doc. No. 126); and a Motion to Stay brought by Defendants Best Buy Co., Inc. ("Best Buy" or the "Company"), Brian J. Dunn ("Dunn"), Jim Muehlbauer ("Muehlbauer"), and Mike Vitelli ("Vitelli") (collectively, "Defendants") (Doc. No. 158). For the reasons set forth below, the Court grants the motion to certify and denies the motion to stay as moot.[1]

## BACKGROUND

This is a securities class action brought by Plaintiffs on behalf of all persons who purchased or otherwise acquired Best Buy common stock between September 14, 2010 and December 13, 2010 (the "Class Period"), against Defendants, for violations of the Securities Exchange Act of 1934 (the "Exchange Act"). The background facts of this case have been set forth in prior orders and the Court need not fully discuss the facts here. Instead, the Court summarizes and supplements the relevant facts below.

In February 2011, Plaintiffs filed this action. (Doc. No. 1 ("Compl.").) On October 29, 2012, Plaintiffs filed their First Amended Class Action Complaint ("FAC"), asserting two causes of action: (1) Violation of Section 10(b) of the Exchange Act and Rule 10b-5; and (2) Violation of Section 20(a) of the Exchange Act. (Doc. No. 61 ("FAC") ¶¶ 185-91.) In this action, Plaintiffs allege that thousands of investors, including Lead Plaintiff Marion Haynes ("Lead Plaintiff"), purchased or acquired Best Buy common stock during the Class Period at artificially inflated prices and subsequently

---

[1]    Defendants moved to stay the present action pending the Supreme Court's decision in *Halliburton Co. v. Erica P. John Fund, Inc.*, -- U.S. --, 134 S. Ct. 2398 (2014) (*Halliburton II*). (Doc. No. 158.) The decision in *Halliburton II* was issued on June 23, 2014, and therefore the request to stay is moot. Both parties have since submitted notice of the supplemental authority of *Halliburton II*. (Doc. Nos. 195, 197.)

suffered economic loss by the decline in the price of Best Buy stock when Best Buy's true financial condition was revealed on December 14, 2010. (*Id*. ¶¶ 116-125.) Plaintiffs' claims are based on two allegedly fraudulent statements relating to Best Buy's 2011 fiscal year projections. These statements are: (1) that Best Buy was "on track to deliver and exceed [the] annual [earnings per share ("EPS")] guidance"; and (2) that Best Buy's earnings "are essentially in line with [Best Buy's] original expectations for the year." (*Id*. ¶ 66.)[2] These two statements were made by Muehlbauer on September 14, 2010, during an earnings conference call that included Dunn, Muehlbauer, and Vitelli, and that began at 10:00 a.m. Eastern Daylight Time ("EDT"). (*Id*. ¶¶ 7, 72, Ex. 15 at 1, 6.)[3]

At 8:00 a.m. EDT on September 14, 2010 (prior to the opening of the stock market at 9:30 a.m. EDT), the Company issued a press release reporting: a decline of 0.1% in comparable store sales growth; lower sales across home theater, and entertainment

---

[2]    By Order dated August 5, 2013, the Court partially granted Defendants' Motion to Dismiss Plaintiffs' FAC. (Doc. No. 78.) Specifically, the Court found two allegedly fraudulent statements were not actionable, but concluded that the "on track" and "in line" statements were not "forward-looking" statements subject to the Private Securities Litigation Reform Act's ("PSLRA") safe harbor, and that the statements were sufficiently pled so as to survive Defendants' motion to dismiss. (*Id*. at 15-21.)

[3]    On March 25, 2010 (several months prior to the September earnings conference call), Best Buy reported positive fourth quarter 2010 and fiscal year 2010 ("FY10") financial results and issued fiscal year 2011 ("FY11") revenue guidance: revenues of $52 to $53 billion, same store sales growth of 1% to 3%, and EPS of $3.45 to $3.60. (FAC ¶¶ 3, 38-40.) The Company's stock price increased from $41.18 on March 24, 2010 to $42.66 on March 25, 2010. (*Id*. ¶ 3.) However, first quarter 2011 ("1Q11") results missed expectations. (*Id*. ¶ 4.)

hardware and software; decreased traffic in stores; and its first decline in market share in eighteen quarters. (*Id.* ¶ 6; Doc. No. 131 ("Steinholt Decl.") ¶ 20, Ex. D.) As a result, Defendants reduced its FY11 revenue forecast by $1 billion. (FAC ¶¶ 6, 67-69.) Even so, the Company announced a $0.20 EPS increase over 2Q11 Wall Street EPS expectations and increased EPS guidance to $3.55–$3.70. (*Id.*)

Plaintiffs allege, however, that by September 14, 2010, Defendants knew of multiple significant indicators that the Company was not in fact "on track" to achieve its FY11 targets, but was actually off pace, and that Defendants made statements concerning Best Buy's financial state that were knowingly false or made with no reasonable basis in fact. (*Id.* ¶¶ 9-13, 97-100.) Plaintiffs further allege that, despite these known facts, Defendants reassured investors during the 10:00 a.m. EDT earnings conference call that earnings were "in line with . . . original expectations" and that the Company was "on track" to make its new increased FY11 guidance of $3.55–$3.70. (*Id.* ¶¶ 7, 66, 72.)

Three months later, on December 14, 2010, the Company reported 3Q11 EPS of $0.54, falling short of 3Q11 estimates. (*Id.* ¶¶ 16, 114.) The Company also reported a decline in comparable store sales of 5%, and a decline in market share of 110 basis points. (*Id.* ¶¶ 16, 114.) At that time, Defendants reduced FY11 EPS guidance to $3.20–$3.40. (*Id.* ¶¶ 16, 115.) Also on December 14, 2010, Defendants Dunn, Muehlbauer, and Vitelli hosted a conference call, during which they explained the earnings report, claiming that it was a result of lower-than-expected sales in notebooks, gaming, and 3DTV. (*Id.* ¶ 18.) Defendants also explained that they had failed to be "sufficiently promotional" in televisions. (*Id.* ¶ 117.) Defendants admitted that their "top

line growth assumptions earlier in the year turned out to be too aggressive based on the environment that we see for demand, specifically in the TV industry, and the computing industry overall." (*Id.* ¶ 116.)

Plaintiffs allege that when Best Buy's true financial condition and revenue and earnings prospects for FY11 were revealed on December 14, 2010, investors transacted more than 64 million Best Buy shares. (*Id*. ¶ 20.) Best Buy stock declined from $41.70 per share on December 13, 2010 to $35.52 per share on December' 14, 2010, a 14% decline. (*Id.* ¶¶ 20, 120.)

In this action, Plaintiffs argue that Defendants made false and misleading statements concerning the Company's financial status and revenue and earnings prospects for FY11, deceiving investors and the market about the Company's true financial condition. (*Id*. ¶ 148.) Plaintiffs assert that these false and misleading statements were intended to cause and did cause Best Buy's stock to trade at artificially inflated prices throughout the Class Period, reaching a high of $45.63 on November 23, 2010. (*Id.* ¶ 149.) When Best Buy's stock price fell after the true state of its financial condition became known, Plaintiffs allege that they and other members of the class suffered considerable economic damages under the federal securities laws. (*Id.*)

Plaintiffs now move the Court for an order certifying this case as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following proposed class of investors (the "Class"):

> All persons or entities who purchased or otherwise acquired the publicly traded common stock of Best Buy between September 14, 2010 and December 13, 2010, and who were damaged by defendants' alleged

violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934.
Excluded from the class are: (i) Best Buy; (ii) Brian Dunn, Michael Vitelli,
James Muehlbauer (collectively, the "Individual Defendants");
(iii) members of the families of each Individual Defendant; (iv) any entity
in which any Defendant has a controlling interest; (v) officers and directors
of Best Buy; and (vi) the legal representatives, heirs, successors or assigns
of any such excluded party.

(Doc. No. 128 at 1.) Plaintiffs also move the Court for an order appointing Lead Plaintiff

as representative of the Class and appointing Robbins Geller Rudman & Dowd LLP

("Robbins Geller") as Lead Class Counsel for the Class.

## DISCUSSION

### I.      Class Certification Under Rule 23

A class action serves to conserve the resources of the court and the parties by

permitting an issue that may affect every class member to be litigated in an economical

fashion. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). Rule 23 of the

Federal Rules of Civil Procedure governs class certification and requires that:

> [t]o be certified as a class, plaintiffs must meet all of the requirements of
> Rule 23(a) and must satisfy one of three subsections of Rule 23(b). The
> Rule 23(a) requirements for class certification are: (1) the putative class is
> so numerous that it makes joinder of all members impracticable;
> (2) questions of law or fact are common to the class; (3) the class
> representatives' claims or defenses are typical of the claims or defenses of
> the class; and (4) the representative parties will fairly and adequately
> protect the interests of the class.

*In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005) (citing Fed. R. Civ. P.

23(a)) (additional citations omitted).

District courts retain broad discretion in determining whether to certify a class.

*Prof'l Firefighters Ass'n of Omaha, Local 385 v. Zalewski*, 678 F.3d 640, 645 (8th Cir.

2012). When considering a motion for class certification, a court need not ask "whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Beckmann v. CBS, Inc.*, 192 F.R.D. 608, 613 (D. Minn. 2000) (citation omitted). The party seeking class certification carries the burden of proof regarding the requirements of Rule 23. *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994).

Defendants do not appear to dispute that the proposed class satisfies the numerosity or typicality requirements of Rule 23(a); nor do Defendants contest the adequacy of Lead Plaintiff to act as a class representative, or that of Robbins Geller to act as Class Counsel.[4] Instead, Defendants oppose certification on three primary grounds: (1) Plaintiffs are not entitled to the presumption of reliance because the "on track" and "in line" statements had no impact on Best Buy's share price; (2) Plaintiffs have not demonstrated that damages are susceptible to proof on a class-wide basis; and (3) the proposed class is overbroad and fails the commonality requirement. Below, the Court

---

[4]     Even so, the Court notes that Plaintiffs have demonstrated that: the claims of the class representative are typical of the claims of the class as a whole; the proposed class representative's interests are sufficiently similar to those of the proposed class; and Lead Plaintiff and his counsel are able and willing to competently and vigorously prosecute the action, thus satisfying Rule 23(a)(3) and (4). Moreover, Plaintiffs have submitted evidence that Best Buy shares were traded on the New York Stock Exchange ("NYSE") and that during the proposed Class Period more than 370 million shares were traded. (Steinholt Decl. ¶ 17.) Thus, the numerosity requirement of Rule 23(a)(1) is also satisfied.

considers whether Plaintiff meets the commonality and predominance requirements of Rule 23(a)(2) and Rule 23(b)(3) in the context of Defendants' arguments.

### A. Commonality and Predominance

A class has sufficient commonality under Rule 23(a) if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a). Under Rule 23(b)(3), a court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members" in order to certify a class. Fed. R. Civ. P. 23(b)(3). When considering the facts of a given case, "a claim will meet the predominance requirement when generalized evidence proves or disproves the elements of the claim on a class-wide basis, because such proof obviates the need to examine each class member's individual position." *Buetow v. A.L.S. Enters., Inc.*, 259 F.R.D. 187, 190 (D. Minn. 2009) (citation and quotations omitted). The purpose of the predominance requirement is to "achieve economy and efficiency in the settlement of disputes." *Vernon J. Rockler & Co., Inc. v. Graphic Enters., Inc.*, 52 F.R.D. 335, 344 (D. Minn. 1971) (citing Fed. R. Civ. P. 23 advisory committee's note).

To recover damages in a private securities-fraud action under Section 10(b) and Rule 10b-5, a plaintiff must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1192 (2013) (citing *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1317 (2011)). Relevant to the present motion is the element of reliance.

### 1.      Fraud-on-the-Market Theory and Reliance

The element of reliance normally shows how false statements cause loss in a securities fraud case.  *See, e.g., Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988).  The most direct way of demonstrating reliance is for a plaintiff to show that he was aware of a company's statement and engaged in a transaction based on a specific misrepresentation.  *See Amgen,* 133 S. Ct. at 1192.  However, in *Basic*, the Supreme Court recognized that requiring direct proof of reliance by a plaintiff who has traded on an impersonal market would "place an unnecessarily unrealistic evidentiary burden" on that plaintiff.  *Basic*, 485 U.S. at 245.  In response, the Supreme Court held that a plaintiff could satisfy the reliance element by invoking a rebuttable presumption of reliance on material misrepresentations aired to the general public—what is known as the "fraud-on-the-market" theory.  *Id*. at 241-49.  *See also Amgen*, 133 S. Ct. at 1192 ("If a market is generally efficient in incorporating publicly available information into a security's market price, it is reasonable to presume that a particular public, material misrepresentation will be reflected in the security's price.")  The rebuttable presumption is important in securities class actions because class certification would be virtually impossible without it, as individual questions related to reliance would overwhelm common questions.  *See Amgen*, 133 S. Ct. at 1193.

Based on the "fraud-on-the market" theory, a plaintiff must show the following to invoke the presumption:  "(1) that the alleged misrepresentations were publicly known, (2) that they were material, (3) that the stock traded in an efficient market, and (4) that the plaintiff traded the stock between the time the misrepresentations were made and

when the truth was revealed." *Halliburton II*, 134 S. Ct. at 2414 (citing *Basic*, 485 U.S. at 248 n.27). Also under the "fraud-on-the-market" theory, any presumption of reliance is rebuttable, not conclusive, and any showing "that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price, will be sufficient to rebut the presumption of reliance." *Id*. at 2408.

Recently, the Supreme Court issued its decision in *Halliburton II*, wherein the Supreme Court considered "a conflict among the Circuits over whether securities fraud defendants may attempt to rebut the *Basic* presumption at the class certification stage with evidence of a lack of price impact" and "accepted [the] invitation to reconsider the presumption of reliance for securities fraud claims" adopted in *Basic*. *Halliburton II*, 134 S. Ct. at 2407. In *Halliburton II*, the Supreme Court declined to overrule the fraud-on-the-market presumption of reliance under *Basic*. *Id.* at 2408. The Supreme Court did, however, hold that the *Basic* presumption may be defeated at the class certification stage "through evidence that an alleged misrepresentation did not actually affect the market price of the stock," which would, in turn, preclude certification of a class. *Id*. at 2417.

Plaintiffs assert that the primary questions of law and fact alleged in this case are common to all of the proposed Class members, namely: (1) whether defendants intentionally or recklessly made materially false and misleading statements and omissions in violation of the federal securities laws; and (2) whether those materially false and misleading statements and omissions caused damages to members of the Class. (FAC

¶ 181.)  Plaintiffs also assert that there are no individual issues that preclude certification. In particular, Plaintiffs argue that the "fraud-on-the-market" theory should apply, entitling the members of the proposed Class to a presumption that they relied upon each of the false and misleading statements and, in turn, demonstrating that individual issues will not predominate.  Plaintiffs base this argument on both the facts alleged in the FAC, along with publicly available information, which they claim demonstrates that Best Buy stock traded in an open and efficient market.  (*See generally* Steinholt Decl.)  In this regard, Plaintiffs point out that Best Buy was widely traded on the NYSE prior to, during, and after the Class Period.

In their opposition brief, Defendants do not challenge market efficiency.  Nor could they reasonably dispute that Best Buy stock traded in an open and efficient market. (*See* Steinholt Decl. ¶¶ 12-32.)  Indeed, Plaintiffs have made a sufficient showing of market efficiency.  Defendants do, however, argue that Plaintiffs are not entitled to the presumption of reliance because the "on track" and "in line" statements had no impact on Best Buy's share price.  In support of their argument, Defendants argue that an event study[5] submitted by Plaintiffs (the "Steinholt event study") improperly compares Best Buy's closing price on September 13, 2010, with the closing price on September 14, 2010, to reflect the potential impact of the alleged misrepresentations.  Defendants argue that Steinholt's analysis improperly reflects the potential impact of non-actionable

---

[5]    An event study is a method used to estimate the relation between a particular event (such as the release of information) and changes to a company's stock price.

information.  Specifically, Defendants submit that the allegedly actionable statements

(the "on-track" and "in line" statements) occurred *after* the market opened and that the

Steinholt event study does not provide a reliable basis to conclude that the alleged

misrepresentations had the effect of inflating Best Buy's stock price.  Defendants also

maintain that the event study performed by its expert properly distinguished the two

alleged misrepresentations from the pre-open, non-actionable information, and further

shows that there was no price impact caused by the actionable statements.  (*See* Doc.

No. 157 ("Lehn Decl.") ¶ 16.)  Defendants contend that this evidence severs the link

between the alleged misrepresentations and the price received (or paid) by the Plaintiffs,

or their decision to trade at a fair market price.

    First, the Court finds that Plaintiffs have made a sufficient showing that Best

Buy's stock price rose after the alleged misstatements and later declined after Best Buy

revealed information on December 14, 2010.  Thus, Plaintiffs have made a sufficient

showing that the alleged misrepresentations affected the market price of Best Buy stock,

and the Court finds that Plaintiffs are entitled to the presumption of reliance.  As the

Seventh Circuit in *Schleicher v. Wendt*, 618 F.3d 679 (7th Cir. 2010) explained:

> When an unduly optimistic false statement causes a stock's price to rise, the
> price will fall again when the truth comes to light.  Likewise when an
> unduly optimistic statement stops a price from declining (by adding some
> good news to the mix):  once the truth comes out, the price drops to where
> it would have been had the statement not been made.

*Id*. at 683.

    Second, the Court concludes that Defendants have not submitted evidence

sufficient to rebut the presumption of reliance.  The fact that non-actionable statements

made in the press release may have caused initial upward movement in Best Buy's stock

price does not necessarily mean that misrepresentations made during the earnings

conference call that occurred shortly thereafter did not also impact the stock price.

Indeed, Plaintiffs allege that the stock price rose generally (if not in a straight line)

throughout the class period, and then fell sharply after Best Buy revealed its true financial

condition on December 13, 2010. (FAC ¶ 20.) Even though the stock price may have

been inflated prior to the earnings phone conference, the alleged misrepresentations could

have further inflated the price, prolonged the inflation of the price, or slowed the rate of

fall. This impact on the stock price can support a securities fraud claim. *See, e.g.*,

*FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1315, 1317 (11th Cir. 2011)

("[I]t is irrelevant to securities fraud liability that the stock price was already inflated

before a defendant's first actionable misrepresentation; fraudulent misstatements that

prolong inflation can be just as harmful . . ."); *In re Pfizer Inc. Sec. Litig.*, 936 F. Supp.

2d 252, 264 (S.D.N.Y. 2013) ("a misstatement may cause inflation simply by maintaining

existing market expectations") (citation omitted); *Schleicher*, 618 F. 3d at 683-84

(explaining that a public misrepresentation may impact the stock price by causing the

price to rise or stopping it from declining). Moreover, price impact can be shown by a

decrease in price following a revelation of the fraud. *Schleicher*, 618 F.3d at 683-84.

That is exactly what Defendant maintains occurred here, namely that the relevant

damages in this case occurred on December 14, 2010, when the alleged truth concealed

by the alleged misrepresentations came to light and Best Buy's stock price declined as a

result. Defendants, however, have not offered evidence to show that Best Buy's stock

price did not decrease when the truth was revealed.[6] Thus, the Court concludes that Defendants have not submitted evidence sufficient to rebut the presumption of reliance.

### 2.    Calculation of Damages on a Class-Wide Basis

Defendants also maintain that Plaintiffs have not met the burden of demonstrating that common issues predominate because Plaintiffs failed to propose a model that calculates damages caused by the alleged fraud on a class-wide basis. Defendants rely primarily on *Comcast Corp. v. Behrend*, --- U.S ---, 133 S. Ct. 1426 (2013). In *Comcast*, the Supreme Court held that, to satisfy their burden under Rule 23(b)(3), the plaintiffs in an antitrust action were required to proffer a damages model that is consistent with their theories of liability and that demonstrates that damages are capable of measurement on a class-wide basis. *Comcast*, 133 S. Ct. at 1433.

Defendants contend that Plaintiffs have failed to present a damages methodology that satisfies their burden under Rule 23(b)(3) and *Comcast*. Specifically, Defendants submit that Plaintiffs' model does not isolate the damages caused by the "in line" and "on track" statements, which were made after the opening of the market on September 14, 2010. Defendants submit that any increase in Best Buy's stock price that took place between the close of the market on September 13, 2010, and the time that the statements were made during the 10:00 a.m. phone conference, cannot be attributed to the

---

[6]    In his Declaration, Professor Lehn explains that he was asked to analyze whether the alleged misrepresentations "had a positive impact on Best Buy's price," but does not mention the stock price's reaction to the information revealed on December 14, 2010. (Lehn Decl. ¶ 12.)

statements and should not be included in a damages calculation. Further, Defendants contend that from 9:30 a.m. forward, there was no statistically significant movement of Best Buy's stock that can be attributed to the statements. (Lehn Decl. ¶¶ 17-18.) In sum, Defendants appear to argue that because there could be persons who purchased Best Buy shares on September 14, 2010, before the conference call (and therefore should not recover damages), individual damages issues would predominate over the common issues.

In this case, Plaintiffs' expert, Bjorn I. Steinholt, performed an event study using methodology for the quantification of damages to show that damages are capable of calculation on a class-wide basis. (Steinholt Decl. ¶ 4; Doc. No. 173 ("Supp. Steinholt Decl.") ¶¶ 18-24.) Steinholt explains that he focused on "two Company specific disclosure dates"—September 14, 2010 and December 14, 2010—to determine whether new, material information was quickly incorporated into Best Buy's stock price. (Steinholt Decl. ¶ 29.) Steinholt also submits that the statements made on September 14, 2010, caused a positive price impact, and that the December 14, 2010 report caused a negative price impact. (*Id.* ¶¶ 30-31.) Steinholt asserts that the relevant damages in this case occurred on December 14, 2010, "when the alleged truth concealed by the misrepresentations was disclosed and Best Buy's stock price declined as a result." (Supp. Steinholt Decl. ¶ 19.)

The Court notes that while Defendants have validly pointed out the potential gap in damages from the time of the opening of the market on September 14, 2010, until the time of the false statements during the earnings phone conference, the Court does not find

that this gap would make the calculation of damages difficult or improper. While there will likely be issues regarding the timing of a particular investor's purchase in relation to the fraudulent statements, these issues will not predominate over the common ones. As the Seventh Circuit has explained:

> There will be some person-specific issues, such as when (and how many shares) a given investor purchased or sold. Timing of each person's transactions, in relation to the timing of the supposedly false statements, determines how much a given investor lost (or gained) as a result of the fraud. But these questions can be resolved mechanically. A computer can sort them out using a database of time and quantity information.

*Schleicher*, 618 F.3d at 681; *see also Gaudin v. Saxon Mortg. Servs. Inc.*, 297 F.R.D. 417, 429 (N.D. Cal. 2013) (citation omitted) ("Courts in every circuit have . . . uniformly held that the [Rule] 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations."). Whether Plaintiffs will ultimately prevail in proving damages is not an issue presently before the Court. Instead, the Court must consider whether Plaintiffs have met the burden of establishing that damages can be proven on a class-wide basis. On the record before the Court, the Court concludes that Plaintiffs have sufficiently demonstrated that damages are capable of measurement on a class-wide basis such that individual issues of damages calculations will not overwhelm the predominate questions common to the class.

## B. Superiority

Rule 23(b)(3) further requires the court to find that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R.

Civ. P. 23(b)(3). The rule provides four nonexclusive factors to help determine if a class action is superior:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.* Having considered the relevant factors, the Court finds that a class action is the superior method of adjudication. First, as to the class members' interests in individually controlling the prosecution of separate actions, the Court finds that such interests are minimal and outweighed by the greater interest in having the claims heard as a class action. Second, thus far there has been no showing of other litigation against these defendants for the same claims. Furthermore, minimizing the number of individual lawsuits filed on this basis promotes the interests of judicial economy and efficiency. Third, concentrating the litigation of these claims in one forum is desirable and will help avoid inconsistent adjudications. Finally, the Court is not aware of any unusual difficulties that would hamper the management of this class action.

In light of the relevant considerations, the Court concludes that a class action is the superior method for adjudicating these claims pursuant to Rule 23(b)(3).

## II.     Class Definition

In keeping with their overarching concern about the gap in time between the opening of the market and the false statements, Defendants contend that Plaintiffs' proposed class is overbroad. Defendants point out that the proposed class includes those

who purchased Best Buy shares before the time at which the actionable statements were made.  Defendants submit that none of those who purchased shares after the opening of the market and before the statements were made could have relied on those statements.

The Court agrees that those who purchased Best Buy stock on September 4, 2010, prior to the false statements, should be excluded from the class definition.  Accordingly, the class definition should be modified as follows (changes in bold):

> All persons or entities who purchased or otherwise acquired the publicly traded common stock of Best Buy **between 10:00 a.m. EDT** on September 14, 2010 and December 13, 2010, and who were damaged by defendants' alleged violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934.  Excluded from the class are:  (i) Best Buy; (ii) Brian Dunn, Michael Vitelli, James Muehlbauer (collectively, the "Individual Defendants"); (iii) members of the families of each Individual Defendant; (iv) any entity in which any Defendant has a controlling interest; (v) officers and directors of Best Buy; and (vi) the legal representatives, heirs, successors or assigns of any such excluded party.

## CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has satisfied the requirements of Rules 23(a) and 23(b)(3) with respect to the securities fraud claims.  A class action in this matter will prevent further, duplicative litigation of the relevant claims and will serve to conserve the resources of the Court and the parties by permitting the issues to be litigated in an economical fashion.  The Court further notes that a class action will likely minimize the costs and expenses of litigation without compromising the rights of the parties.  Therefore, the Court certifies the proposed class with respect to Counts I and II of Plaintiff's FAC, subject to the modification of the defined class as described above.

# ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1.     Plaintiffs' Motion for Class Certification (Doc. No. [126]) is **GRANTED** as to Counts I and II of Plaintiffs' FAC (Doc. No. [61]).

2.     The following class is certified pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All persons or entities who purchased or otherwise acquired the publicly traded common stock of Best Buy between 10:00 a.m. EDT on September 14, 2010 and December 13, 2010, and who were damaged by defendants' alleged violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934.  Excluded from the class are:  (i) Best Buy; (ii) Brian Dunn, Michael Vitelli, James Muehlbauer (collectively, the "Individual Defendants"); (iii) members of the families of each Individual Defendant; (iv) any entity in which any Defendant has a controlling interest; (v) officers and directors of Best Buy; and (vi) the legal representatives, heirs, successors or assigns of any such excluded party.

3.     The parties shall negotiate the content of the class notice.  Within twenty-one (21) days of the date of this Order, the parties shall submit a joint proposed notice to the Court.  If the parties are unable to agree on the content of the notice, the parties shall each submit a proposed notice, together with briefing not to exceed ten (10) pages per side, within thirty (30) days of the date of this Order.

4.     Having considered the requirements of Rule 23(a)(4), the Court appoints Marion Haynes as class representative.

5.      Having considered the requirements of Rule 23(g) of the Federal Rules of

Civil Procedure, the Court appoints Robbins Geller Rudman & Dowd LLP as class

counsel.

6.      Defendants' Motion to Stay (Doc. No. [158]) is **DENIED AS MOOT**.


Dated:  August 6, 2014                          s/Donovan W. Frank
                                                DONOVAN W. FRANK
                                                United States District Judge