T 206.623.7292   F 206.623.0594



Karl P. Barth
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WA 98101
www.hbsslaw.com
Direct (206) 268-9313
karlb@hbsslaw.com

August 25, 2014



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/26/14

**Via Facsimile**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Suite 660
New York, NY 10007

    Re:   *In re China MediaExpress Holdings, Inc. Litig.*, No. 11-cv-804 (VM)

Dear Judge Marrero:

    We write on behalf of the Class in this action (the "Judgment Creditor") in response to the letter dated August 22, 2014 (the "Kunstler Letter") from counsel for Starr Investments Cayman II, Inc. ("Starr"). Starr's argument against appointing Judgment Creditor as receiver fails for three independent reasons: (A) there is no conflict preventing the Judgment Creditor's counsel to act as receiver; (B) Starr itself suffers from an undisclosed disabling conflict of interest; and (C) Starr has no standing to challenge the appointment of the receiver.

**A.    The Judgment Creditor Has No Conflicts of Interest**

    Quite ironically (given its own conflict as described below), Starr argues that the appointment of the Judgment Creditor's counsel as a receiver in this action "presents numerous potential conflicts of interest." But Starr fails to identify any actual conflict. Although the Kunstler Letter asserts that "numerous" courts have held that appointment of a creditor as receiver creates "an impermissible conflict" that should cause the Court to depart from the authority cited in our previous letter, Starr cites no controlling authority, relying on two district court opinions from other circuits. But even these authorities do not support Starr's proposition.

    In *Fleming v. Bank of Boston Corp.*, 127 F.R.D. 30, 34 (D. Mass. 1989), the court denied a motion to intervene as being untimely. The court also noted, *in dicta*, that acting as both class counsel and receiver (where a judgment had not yet been obtained on the class claims against a receivership entity) could lead to the inconsistent objectives of: 1) maximizing class recovery; and 2) maximizing the value of the receivership. *Id.* at 37. But even this dicta is not relevant to the facts of this action. In this case, the class action against CCME has concluded, and the liability of CCME is fixed in the amount of the judgment of $535.5 million. There are no decisions left to be made by class counsel that could impact the size of this judgment. The receiver will have one remaining duty: to maximize the value of CCME's assets, and will have no conflicting objectives in doing so. In contrast, Starr has not yet obtained a money judgment against CCME, and does have the goal of maximizing its recovery against CCME – which is in

The Honorable Victor Marrero
August 25, 2014
Page 2

conflict with maximizing the value of the receivership.[1] Accordingly, it is Starr and not the Judgment Creditor that could have the conflict described by the dicta in Starr's own authority.

In *Scholes v. Tomlinson*, 1991 WL 152062 (N.D. Ill. July 29, 1991), the court specifically refused to remove an attorney and his law firm as receiver and receiver's counsel, but did not allow the attorney to act as class representative in an ongoing class action claim against the receivership entity. The court found that ethical rules prohibited an attorney from acting as both class counsel and class representative – which is plainly not the case in this action.[2] Further, the *Scholes* court ruled that a conflict may exist in the Judgment Creditor's counsel acting as receiver when there is an additional creditor. *See* Kunstler Letter at 1. But this unreported district court opinion from another circuit is not controlling authority, and should be disregarded to the extent that it conflicts with the authorities cited in our opening letter interpreting Section 5228(a) of the New York CPLR.[3] However, should the Court view the allocation of recovered proceeds as an actual conflict for the receiver, Judgment Creditor agrees to limit the role of the proposed receiver to marshaling the assets of CCME, and will leave the decision on allocation of any recovery among the various creditors to the Court.[4]

## B. Starr's Undisclosed and Disabling Conflict of Interest

As described in our previous letter to the Court, the Judgment Creditor seeks the appointment of a receiver to marshal the assets of CCME and investigate potential claims against third parties, including claims related to the denial of insurance coverage. The primary layer of insurance (a $5 million policy) was underwritten jointly by Torus Executive Risks, Ltd. (50%), and Lloyd's Syndicate 1919 CVS (50%).[5] In the Kunstler Letter, Starr fails to disclose to the Court that a related entity (Starr Underwriting Agents Limited) is the manager of this Lloyd's syndicate, and presumably made the decision to deny coverage.[6] Further, Lloyd's Syndicate 1919 CVS appears to have been capitalized entirely by Starr entities, including C.V. Starr (25%) and Starr International Investments Limited (75%). Indeed, *Starr Underwriting Agents Limited executed the insurance policy in dispute on behalf of the insurer.*

As disclosed in the Kunstler Letter, Starr filed a securities fraud action against CCME in Delaware. Unsurprisingly, counsel for CCME in that action (as well as this case) sought to draw on the insurance policies to fund the defense of CCME, but coverage was denied, presumably by Starr Underwriting Agents Limited, as managing agent for the underwriter, Lloyd's Syndicate 1919 CVS. It is easy to see why Starr would rather not fund the defense of an action in which its affiliate was the plaintiff, but this alone would not be a sufficient reason to deny coverage in

---

[1] *See also Marwil v. Ent & Imler CPA Grp., PC*, 2004 WL 2750255, at *7-8 (S.D. Ind. Nov. 24, 2004) (potential conflicts "do not disqualify one of plaintiffs' law firms from representing both the noteholder and the receiver" because the potential conflict is "so remote that there is simply no basis for disqualification");

[2] *Scholes*, 1991 WL 152062 at *5 ("ethical considerations counsel against allowing [an attorney] to serve as class representative while his law firm represents both him and the class").

[3] *See also Friedman v. Wahrsager*, 848 F. Supp. 2d 278, 291 (E.D.N.Y. 2012) ("N.Y. CPLR § 5228, specifically allows for the appointment of the judgment creditor as receiver to the judgment debtor.").

[4] There is no possible conflict at this point because Starr has no money judgment against CCME.

[5] "CVS" are the initials of Cornelius Vander Starr, the founder of Starr. The company was founded in 1919.

[6] Judgment Creditor has not attached copies of the relevant insurance policies, but will provide documents confirming the factual assertions in this paragraph upon request from the Court.

The Honorable Victor Marrero
August 25, 2014
Page 3

either the Delaware Action or this case. Without other available assets, CCME stopped paying its counsel, who promptly withdrew as counsel, leading to the $535.5 million default judgment in this action, and the liability judgment (without damages) in the Delaware Action.

There may be a strong claim for improper denial of coverage against various Starr entities, and possibly also against Starr Investments Cayman II, Inc. for aiding and abetting or conspiring with the other Starr entities to bring about the improper denial of insurance coverage. The circumstances surrounding the denial of coverage are suspicious, and should be investigated by a receiver that is not a hand-picked lackey of Starr. The Court should disregard Starr's self-serving attempt to hinder a thorough investigation of potential claims related to the denial of insurance coverage by inserting itself into the receivership decision-making process.

### C. Starr Does Not Have a Damage Judgment

Starr declines to disclose in the Kunstler Letter that its judgment is for liability only, and that no damages have been awarded. *See* Kunstler Letter, Ex. 2. Accordingly, *Starr does not currently have a judgment that could be enforced against assets recovered by the receiver* and, thus, no incentive to maximize recovery and no standing to challenge the appointment of a receiver.[7]

### D. Conclusion

In conclusion, Starr does not contest the necessity of appointing a receiver, but only the *identity* of the receiver. But Starr's objection to the appointment of Judgment Creditor's counsel as the receiver is meritless and should be disregarded. Starr should not be allowed to hand-pick the receiver that will investigate potential claims against Starr and its corporate affiliates. The Judgment Creditor has no such conflicts of interest, and has demonstrated its understanding of the facts of this case and its willingness to vigorously pursue investigation and litigation. Further, counsel for the Judgment Creditor has agreed to forego any fee for its service as a receiver in this action, which will save significant assets for the receivership.

---

The Clerk of Court is directed to enter into the public record of this action the letter above submitted to the Court by Plaintiff Class.

SO ORDERED.

8-26-14
DATE    VICTOR MARRERO, U.S.D.J.

Sincerely,

Karl Barth

Karl P. Barth

cc: All counsel of record (via e-mail)

---

[7] If Starr obtains any type of damage award (which it has not yet), it will be very small in comparison to the $535 million judgment obtained by the Judgment Creditor. The Court should disregard Starr's attempt to have the "tail wag the dog" by giving its much smaller (if any) damage claim the right to require a "consensus" before appointment of a receiver.