ORIGINAL

F 206.623.7292   F 206.623.0594

# HAGENS BERMAN

Karl P Barth
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WA  98101
www.hbsslaw.com
Direct (206) 26~~~~
karlb@hbsslaw.com

RECEIVED

JUL 07 2016

CHAMBERS OF
JUDGE MARRERO

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7/8/16__

July 5, 2016

<u>Via U.S. Mail</u>

The Honorable Victor Marrero
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, Suite 1040
New York, NY  10007

Re:     *In re China MediaExpress Holdings*, No. 11-0804 (VM)

Dear Judge Marrero:

As the Court is aware, I am the Receiver for China MediaExpress Holdings, Inc. ("CCME").  I am writing to request the Court's approval for payment of attorneys' fees to (and reimbursement of expenses incurred by) Gilbert, LLP, which represents CCME in litigation and arbitration against its former insurance carriers.  The requested fees related to the settlement of CCME's claims against Starr Underwriting Agents Limited ("Starr") and Torus Executive Risks, Ltd. ("Torus"), the underwriters of CCME's first layer of Director and Officer Liability ("D&O") coverage.

## I.     INSURANCE COVERAGE CLAIMS

CCME had a total of $20 million of Director and Officers' insurance coverage in three layers of coverage.  The primary layer of $5 million dollars of coverage was underwritten jointly by Starr Underwriting Agents Limited ("Starr") and Torus Executive Risks, Ltd. ("Torus").  A secondary layer of an additional $ 5 million was underwritten by AIG Insurance Hong Kong Limited, and a third, $10 million excess layer was underwritten by China Pacific Insurance Co., (H.K.), Ltd. and China Ping an Insurance (Hong Kong) Co. Ltd.

## II.     RETENTION OF GILBERT, LLP

After being appointed Receiver, I subpoenaed and reviewed documents from the various insurance carriers and other sources related to the ongoing coverage dispute between CCME and its insurance carriers.  In light of the complex coverage issues, I determined that the Receivership would be best served in its pursuit of insurance coverage claims by retaining lawyers with a significant expertise in representing policyholders and sought to retain a highly qualified firm at the most advantageous price to the Receivership.

The Honorable Victor Marrero
July 5, 2016
Page 2

## A.   Gilbert LLP is Highly Qualified

Gilbert, LLP is one of the leaders in insurance recovery litigation, recovering more than $40 billion on behalf of its clients (primarily policyholders).[1]  In this action, the Receiver was represented by a team led by Scott Gilbert (the managing partner of the firm) and Hunter Winstead (a partner in the firm), both of whom have significant experience representing policyholders in complex insurance coverage disputes.

## B.   Court Approval of Retention of Gilbert LLP

On June 9, 2015, I requested confirmation from the Court that it was authorized to retain Gilbert as "outside counsel on a contingent-fee basis to pursue certain claims for improper denial of insurance coverage." (June 9, 2015 Letter, Dkt. No. 245 at 1).  On June 18, 2015, the Court entered an Order confirming that "the activities proposed by Barth [including his retention of insurance counsel] fall within his authority as conferred by the August 26 Letter to serve as Receiver 'for the limited purpose of marshaling CCME's assets.'" (June 18, 2015 Order, Dkt. No. 246 at 3).

## C.   Terms of Retention of Gilbert LLP

I subsequently entered into a contingent-fee arrangement whereby Gilbert agreed to "advance and pay all costs and expenses related to this matter," with the further understanding that "all of the costs and expenses listed [in the retention letter] will be deducted from the gross amount that the Receiver recovers and shall be reimbursed to the Firm."  The Gilbert retention agreement further provides that "if the Receiver recovers money through judgment, settlement, or other means as a result of any work done by Gilbert LLP on this matter, then, in addition to reimbursing the Firm for costs and expenses as described below, the Receiver will pay the Firm a contingency fee of fifty percent (50%) of the net amount of any sum that the Receiver recovers." A copy of the retention agreement with Gilbert is attached hereto as Exhibit A.

A detailed explanation of the reasons that I believe a 50% contingency fee was both required and reasonable under the circumstances is attached hereto as Exhibit B.  In order to protect various strategic and tactical positions taken in ongoing litigation against CCME's other former insurers, **confidential treatment is requested for Exhibit B.**

## D.   Work Performed by Gilbert, LLP

Gilbert was instrumental in obtaining the recovery from Torus and Starr.  Gilbert reviewed documents obtained by the Receiver from the various insurance carriers, CCME's insurance broker Marsh, and its former legal counsel Loeb & Loeb, evaluating the course of

---

[1] A more comprehensive description of the firm's capabilities is available on its website at: http://www.gotofirm.com

The Honorable Victor Marrero
July 5, 2016
Page 3

dealing between CCME and its insurance carriers going back five years (through which, despite
repeated requests for coverage from CCME, Torus and Starr had refused to pay a penny).
Gilbert further researched and formulated a strategy for pursuing Starr, Torus, and CCME's
other insurers, preparing highly detailed mediation statements addressing the complex insurance
coverage issues surrounding CCME, under both U.S. and Hong Kong law. Gilbert participated
in a day-long mediation with Starr and Torus on June 24, 2015. This mediation did not result in
a settlement, and on October 26, 2015, Gilbert filed a complaint against CCME's insurers in this
District.[2] As this Court is aware, the following months brought an ill-advised attempt by Starr
and Torus to avoid this Court by filing a declaratory judgment action in Hong Kong, followed by
numerous motions and opposing letters and memoranda regarding the proper jurisdiction for the
action. Gilbert assisted in my successful efforts to quash the declaratory judgment action, while
negotiating the favorable settlements with Starr and Torus. In my opinion, Gilbert's knowledge,
expertise and connections throughout the insurance coverage world were vital to the successful
resolution of these claims.

The October 26, 2015 Complaint also asserted coverage claims against the remaining
second and third layers of D&O coverage.[3] Gilbert also researched and drafted legal memoranda
in opposition to these insurers' motions to dismiss and to compel arbitration. Ultimately, this
Court stayed the claims against the remaining insurers in favor of arbitration in Hong Kong. To
date, these efforts have required over 400 hours of Gilbert attorney time. Gilbert incurred this
time on a contingent fee basis. Gilbert continues to represent the Receivership against these
insurers, and is preparing to assert claims in the Hong Kong arbitration forum.

### III.    SETTLEMENT OF CLAIMS AGAINST STARR AND TORUS

As counsel for CCME, Gilbert has obtained gross settlements of $3.3 million from Starr
and Torus ($1.65 million each). These settlements have been previously approved by the Court,
and the entire balance remains in the Receivership account established at Union Bank.[4] As
described in my previous submissions to the Court seeking approval of these settlements, I
believe them to be an excellent result for the Receivership because they recovered a significant
percentage (66%) of the policy limits of the primary layer of coverage in the face of significant
legal challenges, while eliminating the risks, expenses, and delays that would have arisen from
further litigation.

---

[2] Complaint, *China MediaExpress Holdings, Inc., by Karl P. Barth as Receiver v. Nexus Executive Risks, Ltd. et al,* Case No. 15-cv-08429-VM (U.S.D.C. S.D.N.Y.), filed Oct. 26, 2015 (Dkt. No. 1).

[3] *Id.*

[4] See, Dkt. No. 272 (approving settlement with Starr); Dkt. No. 284 (approving settlement with Torus).

The Honorable Victor Marrero
July 5, 2016
Page 4

## IV.    REQUESTED FEES AND REIMBURSEMENT OF EXPENSES

Based on the foregoing, as Receiver of CCME, I respectfully request that the Court approve the payment from the receivership account to Gilbert of: (a) $20,066.15 to reimburse Gilbert for costs and expenses advanced to date in connection with its representation of the Receiver; and (b) $1,639,966.92 to compensate Gilbert for the Receiver's recoveries from Starr and Torus consistent with the contingent fee arrangement agreed to by the Receiver. This distribution is consistent with the fee arrangement agreed to by the Receiver and will afford Gilbert a reasonable and fair fee for the services that it has provided.

| | |
|---|---|
| Total Gross Settlement Amount | $3,300,000.00 |
| Gilbert, LLP Expenses | 20,066.15 |
| Net recovery | 3,279,933.85 |
| Requested Fee (50% of Net recovery) | $1,639,966.92 |

I have reviewed the expenses and hours of Gilbert, and believe them to be reasonable under the circumstances. The largest category of these expenses is for CCME's portion of the mediation expenses ($10,000), and the remainders of these expenses relate to travel, online research fees, filing fees and other typical litigation costs.

## V.    GILBERT'S FEE IS REASONABLE AND FAIR

Gilbert was able to obtain substantial recoveries from Starr and Torus despite the significant procedural and substantive obstacles described above, and the significant risks undertaken by the firm in bringing this action on a purely contingent basis and agreeing to advance all expenses. In light of these risks, and the fact that the other similar firms that I contacted would not represent the Receivership on a contingent-fee basis, the agreement between CCME and Gilbert was fair and reasonable.

Gilbert performed admirably as counsel to CCME, obtaining a gross recovery of $3.3 million from Starr and Torus (66% of their policy limits), which was a favorable result for CCME. Accordingly, and particularly in light of its continuing representation of CCME against the remaining insurers in the Hong Kong forum at additional risk and expense to the firm, in my opinion, Gilbert is entitled to the payment of attorneys' fees and reimbursement of expenses as set forth in its retainer agreement.

## VI.    NOTICE TO OTHER CREDITORS

I do not have access to CCME's books and records, which I believe to be in the People's Republic of China, outside the subpoena power of this Court. Without these records, I am aware of only two other creditors that may be entitled to a portion of the net recovery obtained by the

The Honorable Victor Marrero
July 5, 2016
Page 5

Receiver: 1) Starr Investments Cayman II, Inc., which previously filed an objection to my
appointment as Receiver (Dkt. No. 225); and ii) Loeb & Loeb, LLP, which claims to be owed
unpaid legal fees.

I have provided each Starr Investments Cayman II, Inc. and Loeb & Loeb with a copy of
this letter (excepting Exhibit B, for which confidential treatment is requested), prior to sending it
to the Court.

## VII.   CONCLUSION

As Receiver, it is my opinion that payment of the requested amounts is reasonable and
fair and in the best interests of the receivership estate. Accordingly, I respectfully seek approval
from the Court to pay Gilbert LLP attorneys' fees of $1,039,966.92 and reimbursement of its
expenses of $20,066.15 from the Receivership's funds.

Sincerely,

Karl P. Barth

*As Receiver of CCME*

Attachments

cc: Marilyn Kunstler, Esq. (counsel for Starr Investments Cayman II, Inc.) (by fax and e-mail)
Nicholas Gravante, Esq. (counsel for Starr Investments Cayman II, Inc.) (by fax and e-mail)
Robert A. Meyer, Esq. (Loeb & Loeb) (by fax and e-mail)
Michael Zweig, Esq. (Loeb & Loeb) (by fax and e-mail)

The Clerk of Court is directed to enter into the public record
of this action the letter above submitted to the Court by the
Receiver for China Media Express Holdings, Inc.

**SO ORDERED.**

7-7-16
DATE

VICTOR MARRERO, U.S.D.J.

# Exhibit A

 **Gilbert** LLP

1100 New York Avenue, NW
Suite 700
Washington, DC 20005
O 202.772.2200
F 202.772.3333
gotofirm.com

•

**Scott D. Gilbert**
O 202.772.2277
C 202.669.2966
gilberts@gotofirm.com

September 9, 2015

**VIA ELECTRONIC MAIL AND OVERNIGHT DELIVERY**

Karl Barth, Esq.
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue
Suite 3300
Seattle, WA 98101

Re:     Engagement of Gilbert LLP

Dear Karl:

We are pleased that Karl Barth, Receiver for China Media Express Holdings, Inc. (the "Receiver") has retained Gilbert LLP ("Gilbert LLP" or the "Firm") to provide legal services.  Karl Barth is entering into this engagement solely in his capacity as Receiver and not individually, nor as a partner in the law firm of Hagens Berman Sobol Shapiro LLP.  This letter will confirm our agreement as to the scope and nature of the legal services to be provided, as well as the basis on which the Firm's fees and related expenses will be charged.

**Scope of Representation**

Gilbert LLP undertakes to advise and represent the Receiver as special insurance counsel in connection with the Receiver's efforts to recover insurance coverage under primary and excess directors' and officers' liability policies.  The scope of the representation includes litigation or arbitration in the United States with one or more of the insurers that issued such insurance policies to or for the benefit of China MediaExpress Holdings, Inc. ("CME").

If this matter requires the Receiver to pursue litigation or arbitration with CME's insurers outside of the United States, Gilbert LLP shall not be required to undertake any representation of the Receiver in such litigation or arbitration, but, in its sole discretion, the Firm may agree to do so, with the understanding that any representation of the Receiver in such capacity will be the subject of a separate engagement letter, and, potentially, a different arrangement regarding fees and expenses than that set forth herein.  In the event that representation of the Receiver in this matter requires

Karl Barth, Esq.
September 9, 2015
Page 2



litigation or arbitration outside of the United States, the Receiver agrees that Gilbert LLP, should it decide not to undertake such a representation, may be permitted to withdraw from its representation of the Receiver.

Our Firm's representation of the Receiver does not, unless specifically provided otherwise in this engagement letter, include a representation of the interests of the individuals or entities that are shareholders, directors, or officers of a corporation, its parent, subsidiaries, or affiliates; partners of a partnership or joint venture; or members of a trade association or other organization. Nor does the Firm's representation include a representation of the Receiver in any capacity other than his official capacity.

**Relationship with Our Clients**

Gilbert LLP represents, and will continue to represent, numerous corporations, trusts, not-for-profit organizations, and individuals in insurance coverage and other matters, including in litigation and bankruptcy matters. The Firm and/or its members represent or have represented policyholders and other entities and individuals in numerous contexts, including representations regarding the application of insurance policies to securities claims, fraud claims, asbestos and other mass tort claims, and other types of claims. Although the Firm has not appeared as defense counsel in any underlying mass tort litigation, in some cases the Firm also provides general strategic advice to tort defendants on, among other things, how to defend and handle mass tort claims, with a focus on asbestos. The Firm also has been retained by individual tort claimants, including claimants in insurance coverage disputes, to provide legal advice with respect to insurance matters arising out of claims against asbestos defendants and in other contexts. The Firm also has represented class action plaintiffs and defendants in insurance and other litigation.

In particular, Gilbert LLP provides insurance-related representation to several asbestos trusts, including the Celotex Asbestos Settlement Trust, the Shook & Fletcher Asbestos Settlement Trust, the J.T. Thorpe Company Successor Trust, the Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust, the Combustion Engineering Asbestos PI Trust, the Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust, the Brauer Supply Company 524(g) Asbestos PI Trust, the Federal-Mogul Asbestos Personal Injury Trust, the ACandS Asbestos Settlement Trust, the Burns & Roe Asbestos Personal Injury Trust, the Hercules Chemical Company, Inc. Asbestos Trust, and the Christy Refractories Company LLC Asbestos Trust. The Firm may represent other asbestos trusts as other debtors, including those discussed below, emerge from bankruptcy.

Gilbert LLP also has served and will continue to serve as insurance counsel to other entities in connection with bankruptcy proceedings. The Firm currently serves as special insurance counsel to the Official Committee of Unsecured Creditors in the City Homes III, LLC, *et al.* bankruptcy, the Official Committee of Unsecured Creditors in the Rapid-American Corporation bankruptcy, and Charles M. Forman, Chapter 7 Trustee in the NSI, Inc. bankruptcy.

Karl Barth, Esq.
September 9, 2015
Page 3



## Conflicts of Interests

Gilbert LLP represents many other individuals and entities  In order for Gilbert LLP to make its legal services generally available, it is necessary that we seek the Receiver's consent to our representation of other clients, both current and future, who may have been CME's business competitors, the Receiver or the CME's adversaries in other litigation, contract parties with CME in other matters or otherwise adverse to the Receiver's interests. Because many of our clients interact with other clients in many different respects, we often are in a position to undertake new matters like this one only because another client has agreed to an advance waiver. **The waivers that we seek, however, do *not* allow us to assert claims or to file litigation against the Receiver while the Receiver is a client of the Firm (except possibly where the Receiver is a member of a class or large group), and even after the conclusion of our representation, would not permit us to be adverse to the Receiver on a substantially related matter.** It is agreed that all aspects of this agreement, including without limitation the waivers and consents reflected herein, will apply to any future engagements by the Receiver of Gilbert LLP.

Subject to the limitation that we will not assert a claim or file litigation against the Receiver while the Receiver is a client of the Firm, the Receiver consents to our representation of other clients who have business, financial, legal, litigation, competitive, or other interests directly or indirectly adverse to the Receiver, as long as the matter in which we represent them is not the matter in which we represent the Receiver or substantially related to it. This would permit us, for example, to represent an opposing party in an unrelated matter, to defend another client in a claim or suit brought against it, or to provide advice adverse to the Receiver's interests, but only on a substantially unrelated matter.

Gilbert LLP and its attorneys will maintain in strict confidence all of the confidences and secrets of all of their present and former clients, including the Receiver. The Receiver agrees that it will not have any right of access to confidences and secrets of other clients of the Firm.

## Fees and Expenses

This is a contingent fee agreement. Accordingly, you will not be required to pay any amount to Gilbert LLP unless you receive a monetary payment through settlement and/or judgment. Gilbert LLP will be compensated as follows:

### Attorneys' Fees

If the Receiver recovers money through judgment, settlement, or other means as a result of any work done by Gilbert LLP on this matter, then, in addition to reimbursing the Firm for costs and expenses as described below, the Receiver will pay the Firm a contingency fee of fifty percent (50%) of the net amount of any sum that the Receiver recovers (calculated after reducing the gross amount that the Receiver recovers by the amount of any costs and expenses reimbursed to Gilbert LLP, as provided below).

Karl Barth, Esq.
September 9, 2015
Page 4



*Costs and Expenses*

Gilbert LLP will advance and pay all costs and expenses related to this matter on a timely basis.  If the Receiver recovers money through judgment, settlement, or other means, the Receiver will reimburse the Firm for all costs and expenses from the gross amount received by it.  Such costs and expenses may include photocopying charges, courier and overnight delivery charges, travel expenses (including mileage, parking, airfare, lodging, meals, translation services, security, and ground transportation), costs incurred in computerized research, litigation support services, filing fees, witness fees, and the costs of any consultants, experts, investigators, court reporters, local counsel, or other third parties who we deem necessary to successfully pursue the Receiver's claims.

All of the costs and expenses listed above will be deducted from the gross amount that the Receiver recovers and shall be reimbursed to the Firm.

**Authority to Retain and/or Employ Other Attorneys and Professionals**

The Receiver hereby grants Gilbert LLP the authority to retain and/or employ other attorneys, law firms, and/or expert witnesses (as a cost to be advanced by the Firm) in order to assist the Firm in the efficient and diligent prosecution of this matter as it deems appropriate.  The Firm will consult with the Receiver if and when it deems it prudent to retain or employ such other attorneys and/or expert witnesses.

**Termination**

The Receiver has the right to terminate our relationship at any time.  In the event that the Receiver elects to terminate our representation, or if the Firm decides to withdraw from further representation of the Receiver, Gilbert LLP will be entitled to a fee based upon the hours expended by the Firm on this representation at the hourly rates normally charged by the involved personnel for the type of work rendered.  Notwithstanding the foregoing, if the Receiver receives a recovery with respect to the claims that are the subject of this representation within twelve (12) months after the termination of the Firm's representation, the Firm may elect to receive a fee that is based upon the amount of the contingent fee that the Firm would have been entitled to as a result of the Receiver's recovery under the above-described contingency fee arrangement if the Firm's representation had not been terminated.  In any event, the Receiver will reimburse the Firm for the full amount of all out-of-pocket expenses and disbursements incurred by the Firm in connection with this matter at the time of the termination, except to the extent that the Receiver has previously paid or reimbursed the Firm for such amounts.

Gilbert LLP similarly reserves the right to withdraw from representing the Receiver upon written notice in the event that (1) there is a material disagreement between the Receiver and the Firm regarding the appropriate strategy for handling this matter, (2) the Receiver fails to fulfill its obligations set forth in this letter, (3) the Firm concludes in its professional judgment that it would be unreasonable to continue with the representation or that the Receiver's claims should be settled and the Receiver will not consent to such settlement, (4) the Firm elects not to represent the

Karl Barth, Esq.
September 9, 2015
Page 5



Receiver in litigation or arbitration outside of the United States, or (5) such withdrawal is otherwise permitted by the applicable Rules of Professional Conduct. In the event of withdrawal by the Firm for the reasons set forth in (1), (2), (3), or (4) above, the Firm will be entitled to a fee based upon the hours expended by the Firm on this representation at the hourly rates normally charged by the involved personnel for the type of work rendered.

Upon termination of our representation, the Receiver's papers and property will be returned to you or such other person as the Receiver may designate. Our own files pertaining to the matter will be retained for five (5) years. The Firm's files may include, among other things, firm administrative records, time and expense reports, personnel and staffing materials, credit and accounting records, and a copy of internal lawyers' work product such as drafts notes, internal memoranda, and legal and factual research, including investigative reports, prepared by or for the internal use of lawyers on the matters.

Please indicate your agreement to the above by signing in the space provided below and returning an executed original to me by mail.

We are pleased to have this opportunity to represent you, and we look forward to working with you on this matter.

Sincerely,

Scott D. Gilbert
Partner

Agreed to and Accepted by:

Karl Barth, Esq.                                    9/16/15
only in his capacity as Receiver for        Date
China MediaExpress Holdings, Inc.